## SCHEDULE A

## PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN **LOS ANGELES** COUNTY, STATE OF **CALIFORNIA**, AND IS DESCRIBED AS FOLLOWS:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 116, OF TRACT NO. 7082, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 108 PAGE(S) 32 TO 36 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: █████████

**Property commonly known as: 12125 West Sunset Boulevard, Los Angeles, CA 90049.**

Page 27

14        LEGAL DESCRIPTION



**This page is part of your document - DO NOT DISCARD**

## 20180221844

Pages:
0029

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/07/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 126.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 126.00 |

**L E A D S H E E T**

**SEQ:**
**02**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

15                          EXHIBIT 1

Fidelity-Sherman Oaks

███████████

*PREPARED BY, AND AFTER RECORDING RETURN TO:*

LendingOne, LLC
c/o ISGN Fulfillment Agency, LLC
Attn: Team2
2330 Commerce Pk. Dr. NE, STE 2
Palm Bay, FL 32905

Exempt from tax per GC 27388.1 (a)
(2) recorded concurrently
"in connection with" a transfer subject
to the imposition of documentary transfer tax.

*Space Above for Recorder's Use*

### OPEN-END COMMERCIAL DEED OF TRUST,
### SECURITY AGREEMENT AND FIXTURE FILING

This OPEN-END COMMERCIAL DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING ("Deed of Trust") is entered into as of **February 28, 2018**, and KNOW ALL MEN BY THESE PRESENTS **OS Sunset LLC, a California limited liability company,** having an address of **427 North Canon Drive, Beverly Hills, CA 90210** ("Trustor"), in consideration of the debt and trust hereinafter mentioned does hereby GRANT, BARGAIN, SELL, TRANSFER, ASSIGN, and CONVEY and WARRANT in trust unto **Joshua Mogin, Esq.,** having an address of **Raines Feldman LLP, 9720 Wilshire Fifth, Beverly Hills, CA 90212** ("Trustee"), with Power of Sale, the following described property (all of which is sometimes referred to collectively herein as the "Property") for the benefit of LendingOne, LLC having its principal place of business at 901 Northwest 51st Street, Boca Raton, FL 33431 ("Beneficiary"):

(A)    All right, title and interest in and to those premises more commonly known as **12125 West Sunset Boulevard, Los Angeles, CA 90049,** which is more particularly described in Schedule A (the "Premises"), which is attached hereto and made a part hereof;

(B)    TOGETHER WITH (1) all buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Premises, and (2) all building materials, supplies and other property stored at or delivered to the Premises or any other location for incorporation into the

Page 1

improvements located or to be located on the Premises, and all fixtures, machinery, appliances, equipment, furniture and personal property of every nature whatsoever now or hereafter owned by the Trustor and located in or on, or attached to, and used or intended to be used in connection with, or with the operation of, or the occupancy of, the Premises, buildings, structures or other improvements, or in connection with any construction being conducted or which may be conducted thereon, and owned by Trustor, and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing, and all of the right, title and interest of Trustor in and to such personal property which, to the fullest extent permitted by law, shall be conclusively deemed fixtures and a part of the real property encumbered hereby (the "Improvements");

(C)    TOGETHER WITH (1) all estate, right, title and interest of Trustor, of whatever character, whether now owned or hereafter acquired, in and to (a) all streets, roads and public places, open or proposed, in front of or adjoining the Premises, and the land lying in the bed of such streets, roads and public places, and (b) all other sidewalks, alleys, ways, passages, strips and gores of land adjoining or used or intended to be used in connection with any of the property described in paragraphs (A) and (B) hereof; or any part thereof; and (2) all water courses, water rights, easements, rights-of-way and rights of use or passage, public or private, and all estates, interest, benefits, powers, rights (including, without limitation, any and all lateral support, drainage, slope, sewer, water, air, mineral, oil, gas and subsurface rights), privileges, licenses, profits, rents, royalties, tenements, hereditaments, reversions and subreversions, remainders and subremainders and appurtenances whatsoever in any way belonging, relating or appertaining to any of the property described in paragraphs (A) and (B) hereof, or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Trustor; and

(D)    TOGETHER WITH (a) all estate, right, title and interest of Trustor of, in and to all judgments, insurance proceeds, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the property described in paragraphs (A), (B) and (C) hereof or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the property described in paragraphs (A), (B) or (C) hereof or any part thereof, or to any rights appurtenant thereto, and all proceeds of any sales or other dispositions of the property described in paragraphs (A), (B) or (C) hereof, or any part thereof; and Beneficiary is hereby authorized to collect and receive said awards and proceeds and to give proper receipts and acquaintances therefor, and (if it so elects) to apply the same, after deducting therefrom any expenses incurred by Beneficiary in the collection and handling thereof, toward the payment of the indebtedness and other sums secured hereby, notwithstanding the fact that the amount owing thereon may not then be due and payable; and (b) all contract rights, general intangibles, governmental permits, licenses and approvals, actions and rights in action, including without limitation all rights to insurance proceeds and unearned premiums, arising from or relating to the property described in paragraphs (A), (B) and (C) above; and (c) all proceeds, products, replacements additions, substitutions, renewals and accessions of and to the property described in paragraphs (A), (B) and (C).

TO HAVE AND TO HOLD the Property, unto Trustee and Trustee's successors, substitutes, or assigns, in trust and for the uses and purposes herein set forth, forever, together with all rights, privileges, hereditaments, and appurtenances in anywise appertaining or belonging thereto, and Trustor, for Trustor and Trustor's successors, hereby agrees to warrant and forever defend, all and singular, the Property unto Trustee and Trustee's Successors or substitutes in this trust against the claim or claims of all persons claiming or to claim the same or any part thereof.

**THE CONDITION OF THIS DEED OF TRUST IS SUCH THAT:**

Page 2

WHEREAS, Trustor is indebted to Beneficiary by virtue of a commercial loan transaction (the "Loan") in the sum of **THREE MILLION SEVEN HUNDRED EIGHTY THOUSAND DOLLARS ($3,780,000.00)** as evidenced by that certain Commercial Promissory Note in the principal amount of **THREE MILLION SEVEN HUNDRED EIGHTY THOUSAND DOLLARS ($3,780,000.00)** (as same may be amended, restated, or modified from time to time, the "Note") dated as of the date of this Deed of Trust executed by Trustor and delivered to Beneficiary, with all amounts remaining unpaid thereon being finally due and payable on **March 1, 2019** (the "Maturity Date");

WHEREAS, the terms and repayment of such obligations of Trustor are set forth in the Note;

WHEREAS, to secure payment and performance of the indebtedness and obligations represented by the Note, Trustor is hereby executing this Deed of Trust in favor of the Beneficiary;

WHEREAS, Trustor represents and warrants that it has full power and authority to execute and deliver the Note, this Deed of Trust, and all other documents, agreements and instruments required of it by Beneficiary in connection with the making of the Loan (the Note, this Deed of Trust, and all such other documents, agreements and instruments executed and delivered by Trustor in connection with the Loan being sometimes collectively referred to herein as the "Loan Documents").

NOW, THEREFORE, Trustor hereby covenants and agrees with Beneficiary as follows:

## ARTICLE 1.   COVENANTS OF THE TRUSTOR

### 1.1    Performances of Loan Documents.

Trustor shall cause to be performed, observed and complied with all provisions hereof, of the Note and each of the Loan Documents, and will promptly pay to Beneficiary the principal, with interest thereon, and all other sums required to be paid by Trustor under the Note and pursuant to the provisions of this Deed of Trust and of the Loan Documents when payment shall become due (the entire principal amount of the Note, all accrued interest thereon and all obligations and indebtedness thereunder and hereunder and under all of the Loan Documents described being referred to herein as the "Indebtedness"). This Deed of Trust also encumbers all obligations with respect to all future advances and other obligations that Trustor may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Beneficiary, its agents, successors and/or assigns, when such future advance or obligation is evidenced by a writing which recites that it is secured by this Deed of Trust.

### 1.2    General Representation, Covenants and Warranties.

Trustor represents and covenants the following:

**1.2.1**    Trustor is now able to meet its debts as they mature, the fair market value of its assets exceeds its liabilities and no bankruptcy or insolvency case or proceeding is pending or contemplated by or against the Trustor;

**1.2.2**    All reports, statements and other data furnished by Trustor to Beneficiary in connection with the Loan are true, correct and complete in all material respects and do not omit to state any fact of circumstance necessary to make the statements contained therein not misleading;

**1.2.3**    This Deed of Trust, the Note and all other Loan Documents are legal, valid and binding obligations of Trustor enforceable in accordance with their respective terms and the execution and delivery thereof do not contravene any contract or agreement to which Trustor is a party or by which

Page 3

Trustor may be bound and do not contravene any law, order, decree, rule or regulation to which Trustor is subject;

**1.2.4**   There are no actions, suits or proceedings pending, or to the knowledge of Trustor threatened, against or affecting Trustor or any part of the Property;

**1.2.5**   All costs arising from construction of any improvements and the purchase of all equipment located on the Property that have been incurred prior to the date of this Deed of Trust have been paid;

**1.2.6**   The Property has frontage on, and direct access for, ingress and egress to the street(s) described in any survey submitted to Beneficiary;

**1.2.7**   Electric, sewer, water facilities and any other necessary utilities are, or will be, available in sufficient capacity to service the Property satisfactorily during the term of the Note, and any easements necessary to the furnishing of such utility service by Trustor have been or will be obtained and duly recorded (evidence satisfactory to Beneficiary that all utility services required for the use, occupancy and operations of the Property shall be provided to Beneficiary immediately upon Beneficiary's request);

**1.2.8**   There has not been, is not presently and will not in the future be any activity conducted by Trustor or any tenant at or upon any part of the Property that has given or will give rise to the imposition of a lien on any part of the Property;

**1.2.9**   Trustor is not in default under the terms of any instrument evidencing or securing any indebtedness of Trustor, and there has occurred no event which would, if uncured or uncorrected, constitute a default under any such instrument with the giving of notice, or the passage of time or both; and

**1.2.10**   Beneficiary has legal capacity to enter into the Loan and to execute and deliver the Loan Documents, and the Loan Documents have been duly and properly executed on behalf of Trustor.

**1.3     Compliance with Laws; Permits; Notice.**

Trustor covenants and warrants that the Property presently complies with and shall continue to comply with all applicable restrictive covenants, applicable zoning, wetlands and subdivision ordinances and building codes, all applicable health and environmental laws and regulations and all other applicable laws, statutes, rules, ordinances, codes, and regulations, and Trustor has not received any notice that Property is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations. If Trustor receives notice from any federal, state or other governmental body that it is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations, Trustor shall provide Beneficiary with a copy of such notice promptly. Trustor agrees to comply with all federal, state and municipal local laws, statutes, rules, ordinances, codes and regulations in connection with the construction and development of the Property. Trustor has or will obtain all licenses, permits, authorizations, consents and approvals necessary for the construction and development of the Property, and, to the extent the foregoing have been received, all such licenses, permits, authorizations, consents and approvals are in full force and effect and all appeal periods have expired. Unless required by applicable law or unless Beneficiary has otherwise agreed in writing, Trustor shall not allow changes in the nature of the occupancy for which the Premises were intended at the time this Deed of Trust was executed. Trustor shall not initiate or acquiesce in a change in the zoning classification of the Property without Beneficiary's prior written consent. Trustor warrants and represents that its use, and the use by any of its tenants, of the Property is in accordance and compliance with the terms and conditions of any and all rules, regulations, and laws that

Page 4

may be applicable to the Property, including, without limitation, all federal, state and local laws, ordinances, rules and regulations regarding hazardous and toxic materials and that Trustor shall maintain and continue such compliance and shall require and ensure its tenants' compliance with the same. Trustor shall maintain or shall cause their agent to maintain in its possession, available for the inspection of the Beneficiary, and shall deliver to the Beneficiary, upon three (3) business days' request, evidence of compliance with all such requirements. Trustor hereby indemnifies and holds Beneficiary free of and harmless from and against any and all claims, demands, damages or liabilities that Beneficiary may incur with regard thereto.

## 1.4    Taxes and Other Charges.

### 1.4.1    Impositions.

Subject to the provisions of Section 1.4, Trustor shall pay, at least five (5) days before the date due, all real estate taxes, personal property taxes, assessments, water and sewer rates and charges, license fees, all charges that may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (each, an "Imposition" and collectively, the "Impositions"), of every kind and nature whatsoever, general and special, ordinary and extraordinary, foreseen and unforeseen, which shall be assessed, levied, confirmed, imposed or become a lien upon or against the Property or any part thereof, of which shall become payable with respect thereto. Trustor shall deliver to Beneficiary, within twenty (20) days after the due date of each payment in connection with the Impositions or any assessment for local improvements (each, an "Assessment" and collectively, the "Assessments"), the original or a true photostatic copy of the official receipt evidencing such payment or other proof of payment satisfactory to Beneficiary.

### 1.4.2    Insurance.

**1.4.2.1** Trustor shall keep all buildings erected on or to be erected on the Property insured against loss by fire and such other hazards as the Beneficiary may require and Trustor shall obtain and maintain insurance with respect to other insurable risks and coverage relating to the Property including, without limitation, fire builder's risk, worker's compensation, physical damages, loss of rentals or business interruption, earthquake (if applicable), and liability insurance, all such insurance to be in such sums and upon such terms and conditions as Beneficiary reasonably may require, with loss proceeds by the terms of such policies made payable to Beneficiary as its interest may appear. Trustor covenants that all insurance premiums shall be paid not later than fifteen (15) days prior to the date on which such policy could be cancelled for non-payment. If any portion of the Property is in an area identified by any federal governmental authority as having special flood hazards, and flood insurance is available, a flood insurance policy meeting the current guidelines of the Federal Insurance Administration shall be in effect with a generally acceptable insurance carrier, in an amount representing coverage not less than the least of (1) the outstanding principal balance of the Loan, (2) the full insurable value of the Property, and (3) the maximum amount of insurance available under the Flood Disaster Protection Act of 1973, as amended. All such insurance policies shall contain a standard Beneficiary clause naming Beneficiary and its successors and assigns as their interests may appear as beneficiary, and may not be reduced, terminated, or canceled without thirty (30) days' prior written notice to Beneficiary.

**1.4.2.2** Such insurance companies shall be duly qualified as such under the laws of the states in which the Property is located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, and companies whose claims paying ability is rated in the two highest rating categories by A.M. Best with respect to hazard and flood insurance. Such insurance shall be in amounts not less than the greater of: (i) the outstanding principal

Page 5

balance of the Loan, or (ii) the amount necessary to avoid the operation of any co-insurance provisions with respect to the Premises.

   1.4.2.3  All such policies shall provide for a minimum of thirty (30) days prior written cancellation notice to Beneficiary. Beneficiary, upon its request to Trustor, shall have custody of all such policies and all other polices that may be procured insuring said Property, the same to be delivered, to Beneficiary at its office and all renewal policies to be delivered and premiums paid to Beneficiary at its office at least twenty (20) days before the expiration of the old policies, and Trustor agrees that upon failure to maintain the insurance as above stipulated or to deliver said renewal policies as aforesaid, or the pay the premiums therefor, Beneficiary may, without obligation to do so, procure such insurance and pay the premiums therefor and all sums so expended shall immediately be paid by Trustor and unless so paid, shall be deemed part of the debt secured hereby and shall bear interest at the rate set forth in the Note, and thereupon the entire principal sum unpaid, including such sums as have been paid for premiums of insurance as aforesaid, and any and all other sums which shall be payable hereunder shall become due and payable forthwith at the option of Beneficiary, anything herein contained to the contrary notwithstanding. In case of loss and payment by any insurance company, the amount of insurance money received shall be applied either to the indebtedness secured hereby, or in rebuilding and restoring the damaged property, as Beneficiary may elect.

   1.4.2.4  Trustor has not engaged in and shall not engaged in any act or omission that would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including, without limitation, no unlawful fee, commission, kickback, or other unlawful compensation or value of any kind has been or will be received, retained, or realized by any attorney, firm, or other person, and no such unlawful items have been received, retained, or realized by Trustor.

   1.4.2.5  No action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable special hazard insurance policy or bankruptcy bond, irrespective of the cause of such failure of coverage.

  **1.4.3** **Deposits for Impositions, Assessments and Insurance.**

   1.4.3.1  Unless this requirement is waived in writing by Beneficiary, or as otherwise provided in this Section, Trustor shall deposit with Beneficiary on the day monthly installments of principal or interest, or both, are due under the Note (or on another day designated in writing by Beneficiary), until the Indebtedness is paid in full, an additional amount estimated by Beneficiary to be sufficient to accumulate with Beneficiary the entire sum required to pay, when due, the items marked "COLLECT" below, plus, at Beneficiary's discretion, a contingency reserve of up to one-sixth of such estimate. Beneficiary will not initially require Trustor to make IAI Deposits (defined below) with respect to any items marked "DEFERRED" below:

    **DEFERRED** – Impositions;
    **DEFERRED** – Assessments; and
    **DEFERRED** – Insurance premiums in connection with the Property or other insurance
       premiums required by Beneficiary under Section 1.4.2.

  The amounts deposited under the preceding sentence are collectively referred to in this Deed of Trust as the "IAI Deposits." The obligations of Borrower for which the IAI Deposits are required include the Impositions, Assessments and property insurance premiums or other insurance premiums required by Beneficiary under Section 1.4.2, and shall at times hereunder be referred to each as an "IAS" and

                      Page 6

LOS ANGELES,CA       Page 7 of 29      Printed on 12/20/2019 2:40:23 AM
Document: TD 2018.221844

21

collectively as, the "IAIs". The amount of the IAI Deposits shall be sufficient to enable Beneficiary to pay each IAI before the last date upon which such payment may be made without any penalty or interest charge being added. Beneficiary shall maintain records indicating how much of the monthly IAI Deposits and how much of the aggregate IAI Deposits held by Beneficiary are held for the purpose of paying the IAIs.

1.4.3.2 IAI Deposits shall be held by Beneficiary or in a bank, credit union or other financial institution designated by Beneficiary. Beneficiary shall apply the IAI Deposits to pay IAIs so long as no Event of Default has occurred and is continuing. Unless applicable law requires, Beneficiary shall not be required to pay Trustor any interest, earnings or profits on the IAI Deposits. As additional security for all of Trustor's obligations under this Deed of Trust and the other Loan Documents, Trustor hereby pledges and grants to Beneficiary a security interest in the IAI Deposits and all proceeds of, and all interest and dividends on, the IAI Deposits. Any amounts deposited with Beneficiary under this Section 1.4.3 shall not be trust funds, nor shall they operate to reduce the Indebtedness, unless applied by Beneficiary for that purpose under Section 1.4.3.5.

1.4.3.3 If Beneficiary receives a bill or invoice for an IAI, Beneficiary shall pay the IAI from the IAI Deposits held by Beneficiary. Beneficiary shall have no obligation to pay any IAI to the extent it exceeds IAI Deposits then held by Beneficiary. Beneficiary may pay an IAI according to any bill, statement or estimate from the appropriate public office or insurance company without inquiring into the accuracy of the bill, statement or estimate or into the validity of the IAI.

1.4.3.4 If at any time the amount of the IAI Deposits held by Beneficiary for payment of a specific IAI exceeds the amount reasonably deemed necessary by Beneficiary, plus at Beneficiary's discretion, a contingency reserve of up to one-sixth of such estimate, the excess shall be credited against future installments of IAI Deposits. If at any time the amount of the IAI Deposits held by Beneficiary for payment of a specific IAI is less than the amount reasonably estimated by Beneficiary to be necessary, plus, at Beneficiary's discretion, a contingency reserve of up to one-sixth of such estimate, Trustor shall pay to Beneficiary the amount of the deficiency within fifteen (15) days after notice from Beneficiary.

1.4.3.5 If an Event of Default has occurred and is continuing, Beneficiary may apply any IAI Deposits, in any amounts and in any order as Beneficiary determines, in Beneficiary's discretion, to pay any IAIs or as a credit against the Indebtedness. Upon payment in full of the Indebtedness, Beneficiary shall refund to Trustor any IAI Deposits held by Beneficiary.

1.4.3.6 If Beneficiary does not collect an IAI Deposit with respect to an IAI either marked "DEFERRED" in Section 1.4.3.1 or pursuant to a separate written waiver by Beneficiary, then Trustor must provide Beneficiary with proof of payment as set forth in Section 1.4 of each such IAI for which Beneficiary does not require collection of IAI Deposits. As more fully set forth in Section 1.4.3.8, Beneficiary may revoke its deferral or waiver and require Trustor to deposit with Beneficiary any or all of the IAI Deposits listed in Section 1.4.3, regardless of whether any such item is marked "DEFERRED" in such Section, upon notice to Trustor, (i) if Trustor does not timely pay any of the IAIs as required by this Deed of Trust, (ii) if Trustor fails to provide timely proof to Beneficiary of such payment as required by this Deed of Trust, or (iii) at any time from and after the occurrence of an Event of Default or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

1.4.3.7 In the event of a transfer prohibited by or requiring Beneficiary's approval under Section 1.7, Beneficiary's waiver or deferral of the collection of any IAI Deposit in this Section 1.4.3 may be modified or rendered void by Beneficiary at Beneficiary's sole option and discretion by notice to Trustor and the transferee(s) as a condition of Beneficiary's approval of such transfer.

Page 7

1.4.3.8 Notwithstanding anything to the contrary contained in any of the Loan Documents, upon demand by Beneficiary, after failure by Trustor to pay any of the IAIs, Trustor shall deposit with Beneficiary on the first day of each month an amount equal to one twelfth (1/12th) of the sum of: (i) the aggregate annual payments for the Impositions; (ii) the annual insurance premiums on the policies of insurance required to be obtained and kept in force by Trustor under this Deed of Trust; and (iii) all other periodic charges (other than interest and principal under the Note) arising out of the ownership of the Property of any portion thereof that are or with notice or the passage of time or both will become a lien against the Property or any part thereof ((i), (ii), and (iii), collectively, the "Annual Payments"). Such sums will not bear interest and are subject to adjustment or additional payments in order to assure Beneficiary that it will have the full amount of any payment on hand at least one (1) month prior to its due date. Beneficiary shall hold said sums in escrow to pay said Annual Payments in the manner and to the extent permitted by law when the same become due and payable. Notwithstanding anything herein to the contrary, however, such deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Beneficiary. If the total payments made by Trustor to Beneficiary on account of said Annual Payments up to the time when the same become due and payable shall exceed the amount of payment for said Annual Payments actually made by Beneficiary, such excess shall be credited by Beneficiary against the next payment or payments due from Trustor to Beneficiary on account of said Annual Payments. If, however, said payments made by Trustor shall not be sufficient to pay said Annual Payments when the same become due and payable, Trustor agrees to promptly pay to Beneficiary the amount necessary to make up any deficiency. In case of default in the performance of any of the agreements or provisions contained in the Note, Beneficiary may, at its option, at any time after such default, apply the balance remaining of the sums accumulated, as a credit against the principal or interest of the Deed of Trust Indebtedness, or both.

### 1.4.4 Late Charge.

Beneficiary may collect a late charge equal to ten percent (10%) on any payment or installment due or required to be paid pursuant to the terms of this Deed of Trust, the Note or any other instrument, document, or agreement executed and/or delivered in connection herewith that is not paid within five (5) days of the due date thereof, other than the final entire balance due as set forth in Section 1.5 of the Note, including unpaid principal, accrued interest, and together with all other sums due hereunder or thereunder, which if not paid in full on or before the Maturity Date, Beneficiary may collect a late charge equal to one percent (1%) of such total amount.

### 1.4.5 Proof of Payment.

Upon request of Beneficiary, Trustor shall deliver to Beneficiary, within twenty (20) days after the due date of any payment required in this Section 1.4, proof of payment satisfactory to Beneficiary.

### 1.5 Condemnation.

Beneficiary shall be entitled to all compensation awards, damages, claims, rights of action and proceeds of, or on account of, any damage or taking through condemnation, eminent domain or the like, and Beneficiary is hereby authorized, at its option, to commence, appear in and prosecute in its own or Trustor's name any action or proceeding relating to any such condemnation, taking or the like and to settle or compromise any claim in connection therewith.

### 1.6 Care of Property; Demolition and Alternation.

Trustor shall maintain the Property in good condition and repair, shall not commit or suffer any waste of the Property, and shall comply with or cause to be complied with, all statutes, laws, rules,

Page 8

ordinances and requirements of any governmental authority relating to the Property; and Trustor shall promptly repair, restore, replace or rebuild any part of the Property now or hereafter subject to the lien of this Deed of Trust that may be damaged or destroyed by any casualty whatsoever or which may be affected by any proceeding of the character referred to in Section 1.5. Trustor shall complete and pay for, within a reasonable time and in strict accordance with the related Construction Loan Agreement, if applicable, any structure in the process of construction on the Property at any time during the term of the Loan; and Trustor shall not initiate, join in, or consent to any change in any private restrictive covenants, or private restrictions, limiting or defining the uses that may be made of the Property or any part thereof, without the prior written consent of Beneficiary. Trustor agrees that, other than in connection with the related Plans and Specifications (as defined in the related Construction Loan Agreement), if applicable, no building or other property now or hereafter covered by the lien of this Deed of Trust shall be removed, demolished, or materially altered, without the prior written consent of Beneficiary, except that Trustor shall have the right, without such consent, to remove and dispose of, free from the lien of this Deed of Trust, such equipment as from time to time may become worn out or obsolete, provided that simultaneously with or prior to such removal any such equipment shall be replaced with other equipment of value at least equal to that of the replaced equipment and free from any title retention or security agreement or other encumbrance, and by such removal and replacement Trustor shall be deemed to have subjected such equipment to the lien of this Deed of Trust.

**1.7    Transfer and Encumbrance of Property.**

**1.7.1**    Trustor, other than as to a Permitted Transfer, shall not sell, convey, transfer, suffer any type of change in title or ownership, assign or further encumber any interest in any part of the Property, without the prior written consent of Beneficiary, Any such sale, conveyance, transfer, pledge, lease, assignment or encumbrance made without Beneficiary's prior written consent shall be null and void and shall constitute a default hereunder. Trustor shall not, without the prior written consent of Beneficiary, permit any further assignment of the rents, royalties, issues, revenues, income, profits or other benefits from the Property, or any part thereof, and any such assignment without the prior written consent of Beneficiary shall be null and void and shall constitute a default hereunder. Trustor agrees that in the event the ownership of the Property or any part thereof is permitted by Beneficiary to be vested in a person other than Trustor, Beneficiary may, without notice to Trustor, deal in any way with such successor or successors in interest with reference to this Deed of Trust and the Note and other sums hereby secured without in any way vitiating or discharging Trustor's liability hereunder or upon the Note and other sums hereby secured. No Sale of the Property and no forbearance to any person with respect to this Deed of Trust and no extension to any person of the time of payment of the Note and other sums hereby secured given by Beneficiary shall operate to release, discharge, modify, change or affect the original liability of Trustor either in whole or in part. Trustor shall have the right to enter into, extend, renew, terminate or otherwise amend leases encumbering the Property in the ordinary course of business.

**1.7.2**    If Trustor, other than as to a Permitted Transfer, shall sell, convey, assign or transfer all or any part of the Property or any interest therein or any beneficial interest in Trustor, or any of Mortgagor's underlying membership interests, shares of capital stock, partnership interests or any other type of equity interests, whether voting or non-voting (collectively, "Equity Interests"), without Beneficiary's prior written consent, Beneficiary may, at Beneficiary's option, without demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Trustor and all other parties obligated in any manner on the Indebtedness, declare the Indebtedness to be immediately due and payable, which option may be exercised at any time following such sale, conveyance, assignment or transfer, and upon such declaration the entire unpaid balance of the Indebtedness shall be immediately due and payable.

**1.7.3    Permitted Transfers.**

Page 9

The restrictions contained in Sections 1.7.1 and 1.7.2 above shall not apply to any sale, conveyance, assignment or transfer of any beneficial interest in Trustor or any of Trustor's underlying Equity Interests (each, a "Permitted Transfer") (a) by will or by the laws of descent and distribution, or (b) that does not constitute a Change in Control Transaction. A "Change in Control Transaction" shall mean (a) the sale, transfer, or other disposition of all or an amount equivalent to forty-nine percent (49%) or more of Trustor's, or its underlying Equity Interests', assets as determined on a consolidated basis, or (b) the consummation of a merger or consolidation of Trustor with or into another entity or any other corporate reorganization or acquisition, if more than forty-nine percent (49%) of the combined voting power of the continuing or surviving entity's Equity Interests outstanding immediately after such merger, consolidation or such other reorganization is owned by persons/entities who were not Equity Interest holders of Trustor immediately prior to such merger, consolidation or other reorganization, which for the avoidance of doubt, shall also include, the acquisition or other transfer of the Equity Interests of Trustor to any person/entity who was not an Equity Interest holder of such Equity Interests immediately prior to such acquisition or transfer, other than as permitted in clause 1.7.3.(a) above.

    **1.7.4** Trustor shall keep the Property free from mechanics' liens, materialmen's liens and encumbrances. If any prohibited lien or encumbrance is filed against the Property, Trustor shall (a) immediately notify Beneficiary of same and (b) cause the same to be removed and discharged of record within thirty (30) days after the date of filing thereof.

    **1.7.5** Trustor shall obtain, upon request by Beneficiary, from all persons hereafter having or acquiring any interest in or encumbrance on the Property or the said equipment or accessions, a writing duly acknowledged, and stating the nature and extent of such interest or encumbrance and that the same is subordinate to this Deed of Trust and no offsets or defenses exist in favor thereof against this Deed of Trust or the Note hereby secured, and deliver such writing to Beneficiary.

**1.8**    **Further Assurance.**

    **1.8.1** At any time and from time to time upon Beneficiary's request, Trustor shall make, execute/re-execute and deliver, or cause to be made, executed/re-executed and delivered, to Beneficiary and, where appropriate, shall cause to be recorded or filed, and from time to time thereafter to be re-recorded and refiled, at such time and in such offices and places as shall be deemed desirable by Beneficiary, any and all such further deeds of trust, instruments or further assurance, certificates and such other documents, and perform such other acts and things as Beneficiary may consider necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve, the obligations of Trustor under the Note and this Deed of Trust, of lien of this Deed of Trust as a lien upon all of the Property, and unto all and every person or persons deriving any estate, right, title or interest under this Deed of Trust. Upon any failure by Trustor to do so, Beneficiary may make, execute, record, file, re-record or refile any and all such deeds of trust, instruments, certificates and documents for and in the name of Trustor, and Trustor hereby irrevocably appoints Beneficiary the agent and attorney-in-fact of Trustor to do so.

    **1.8.2** In the event of any miscalculation, misapplication or error in payment or collections of monies at closing, Trustor agree to correct the same upon request.

    **1.8.3** Each request by Beneficiary pursuant to Section 1.8 shall receive full cooperation and compliance by Beneficiary by execution or re-execution (as the case may be) and delivery at Beneficiary's office located in Boca Raton, Florida or such other location within the State of Delaware as Beneficiary may designate within seven (7) days of Beneficiary's making such request.

Page 10

**1.9     Uniform Commercial Code Security Agreement and Fixture Filing.**

This Deed of Trust is intended to be a security agreement and fixture filing that is to be filed for record in the real estate records pursuant to the Uniform Commercial Code in effect from time to time in the **State of California** for any of the goods specified above in this Deed of Trust as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code and Trustor hereby agrees to execute and deliver any additional financing statements covering said goods from time to time and in such form as Beneficiary may require to perfect a security interest with respect to said goods. Trustor shall pay all costs of filing such financing statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements that Beneficiary may reasonable require. Without the prior written consent of Beneficiary, Trustor shall not create or suffer to be created, pursuant to the Uniform Commercial Code, any other security interest in said goods, including replacements and additions thereto. Upon Trustor's breach of any covenant or agreement of Trustor contained in this Deed of Trust, including the covenants to pay when due all sums secured by this Deed of Trust, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code and, at Beneficiary's option, may also invoke the remedies permitted by applicable law as to such goods.

AS IT IS RELATED HERETO:

DEBTOR IS:          **OS Susnet LLC**
                    **427 North Canon Drive,**
                    **Beverly Hills, CA 90210**

SECURED PARTY IS:   LendingOne, LLC
                    901 Northwest 51st Street,
                    Boca Raton, FL 33431

Trustor represents, covenants, and warrants that as of the date hereof as follows: Trustor's full, correct, and exact legal name is set forth immediately above in this Section 1.9. Trustor is an organization of the type and incorporated in, organized, or formed under the laws of the state specified in the introductory paragraph to this Deed of Trust. In the event of any change in name or identify of Trustor, Trustor hereby authorizes Beneficiary to file such Uniform Commercial Code forms as are necessary to maintain the priority of Beneficiary's lien upon the Property which may be deemed personal property or fixtures, including future replacement thereof, which serves as collateral under this Deed of Trust.

**1.10     Lease Covenants.**

Each and every covenant on the part of Trustor contained in any assignment of lessor's interest in leases or any assignment of rents, royalties, issues, revenues, profits, income or other benefits made collateral hereto is made an obligation of Trustor hereunder as if fully set forth herein.

**1.11     After-Acquired Property.**

To the extent permitted by and subject to applicable law, the lien of this Deed of Trust will automatically attach, without further act, to all after-acquired property located in, on, or attached to, or used, or intended to be used, in connection with, or with the renovation of, the Property or any part thereof; provided, however, that, upon request of Beneficiary, Trustor shall execute and deliver such instrument or instruments as shall reasonably be requested by Beneficiary to confirm such lien, and Trustor hereby appoints Beneficiary its attorney-in-fact to execute all such instruments, which power is coupled with an interest and is irrevocable.

Page 11

26

Branch :FZL User :TZ01    Case 2:20-bk-16399-BR    Doc 21-1    Comments: Filed 09/14/20    Entered 09/14/20 15:31:41    Station Id :D2PR Desc

Exhibits    Page 14 of 68

### 1.12    Expenses.

Unless otherwise agreed in writing, Trustor will pay when due and payable all origination fees, application fees, underwriting fees, document preparation and title review fees, appraisal fees, recording fees, taxes, brokerage fees and commissions, abstract fees, title policy fees, escrow fees, attorney's fees, court costs, fees of inspecting architect(s) and engineers(s) and all other costs and expenses of every character assessed by Beneficiary against Trustor, have been incurred or which may hereafter be incurred by Beneficiary in connection with: (a) the preparation and execution of the Loan Documents; (b) the closing and funding of the Loan; (c) in the event of Event of Default occurs hereunder or under the Note or any other Loan Documents, all costs, fees and expenses, including, without limitation, all reasonable attorney's fees in connection with the enforcement under the Note or foreclosure under this Deed of Trust, preparation for enforcement of this Deed of Trust or any other Loan Documents, whether or not suit or other action is actually commenced or undertaken; (d) enforcement of this Deed of Trust or any other Loan Documents; (e) court or administrative proceedings of any kind of which Beneficiary may be a party, either as plaintiff or defendant, by reason of this Deed of Trust, the Note, or any other Loan Documents; (f) preparation for and actions taken in connection with Beneficiary's taking possession of the Property; (g) negotiations with Trustor, its beneficiary, or any of its agents in connection with the existence or cure of any Event of Default or default, (h) any proposal for refinancing by Trustor or any other person or entity of the debt secured hereby; (i) the transfer of the Property in lieu of foreclosure; (j) inspection of the Property pursuant to Section 1.15; (k) the approval by Beneficiary of actions taken or proposed to be taken by Trustor, its beneficiary, or other person or entity which approval is required by the terms of this Deed of Trust or any other Loan Documents; and (l) for all other fees due and owing by Trustor to Beneficiary in connection with the Loan. Trustor will, upon demand by Beneficiary, reimburse Beneficiary for any takeout, for all such expenses that have been incurred or shall be incurred by either of them; and will indemnify and holds harmless Beneficiary from and against, and reimburse it for, the same and for all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses (including, without limitation, attorney's fees) that may be imposed upon, asserted against, or incurred or paid by it by reason of, on account of or in connection with any bodily injury or death or property damage occurring in or upon or in the vicinity of the Property through any cause whatsoever or asserted against it on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Property, or with this Deed of Trust or the Indebtedness.

### 1.13    Beneficiary's Performance of Defaults.

If Trustor defaults in the payment of any tax, Assessment, encumbrance or other Imposition or IAI, in its obligation to furnish insurance hereunder, or in the performance or observance of any other covenant, condition, agreement or term in this Deed of Trust, the Note or in any other Loan Documents, Beneficiary may, without obligation to do so, to preserve its interest in the Property, perform or observe the same, and all payments made (whether such payments are regular or accelerated payments) and costs and expenses incurred or paid by Beneficiary in connection therewith shall become due and payable immediately. The amounts so incurred or paid by Beneficiary, together with interest thereon at the default rate, as provided in the Note, from the date incurred until paid by Trustor, shall be added to the Indebtedness and secured by the lien of this Deed of Trust to the extent permitted by law. Beneficiary is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted covenant, condition, agreement or term, without thereby becoming liable to Trustor or any person in possession holding under Trustor.

### 1.14    Financial Statements, Books and Records.

Page 12

Trustor will furnish to Beneficiary, within thirty (30) days after a request therefor, a detailed statement in writing, covering the period of time specified in such request, showing all income derived from the operation of the Property, and all disbursements made in connection therewith, and containing a list of the names of all tenants and occupants of the Property, the portion or portions of the Property occupied by each such tenant and occupant, the rent and other charges payable under the terms of their leases or other agreements and the period covered by such leases or other agreements.

**1.15   Inspection.**

Beneficiary, and any persons authorized by Beneficiary, shall have the right, at Beneficiary's option, to enter and inspect the Premises at any reasonable time during the term of the Loan in conformance with applicable law, including, but not limited to, providing any required notice to current tenants residing on the Premises. Trustor shall pay any professional fees and expenses, which may be incurred by Beneficiary in connection with such inspection.

**1.16   Loan to Value Covenant.**

If at any one or more time(s) during the term of the Note, the then aggregate outstanding and committed principal amount of the Note, plus accrued interest and fees thereon, plus all amounts outstanding under any debts secured by prior liens on the Property, is greater than eighty percent (80%) of the value of the Property, as determined by Beneficiary based upon Beneficiary's review of any appraisal and such other factors as Beneficiary may deem appropriate, then Trustor shall within thirty (30) days following request by Beneficiary, prepay the Note by an amount sufficient to cause the then outstanding principal amount of the Note, plus accrued interest and fees thereon, to be reduced to an amount equal to or less than eighty percent (80%) of the value of the Property. The inability of Trustor to reduce the principal balance of the Note within thirty (30) days following request by Beneficiary shall be, at Beneficiary's option, an Event of Default, hereunder.

**1.17   Waiver of Homestead.**

Trustor waives all rights to a homestead exemption in the Property.

**1.18   Environmental Indemnity.**

   **1.18.1   Definitions.**

Unless otherwise defined in this Deed of Trust, capitalized terms used in Section 1.18 shall have the meaning ascribed to them as follows:

   **1.18.1.1   "Environmental Law"** shall mean all laws relating to hazardous waste, chemical substances or mixtures or hazardous, toxic or dangerous substances or conditions or relating to the interaction of the use or ownership of property and the environment, whether such law is: (i) criminal or civil, (ii) federal, state or local, (iii) statutory, common law or administrative regulation, (iv) currently in effect or enacted in the future.
   **1.18.1.2   "Hazardous Material"** shall mean any pollutants, hazardous or toxic substances or contaminated materials, including but not limited to, oil and oil products, asbestos, asbestos containing materials, urea formaldehyde foam insulation, polychlorinated biphenyls, flammables, explosives, radioactive materials, laboratory wastes, biohazardous wastes, chemicals, compounds or any other materials and substances (including materials, substances or things which are composed of or which have as constituents any of the foregoing substances), which are or may be subject to regulation under, or

Page 13

**28**

the Release of which or exposure to which is prohibited or limited by, or regulated under, any Environmental Law.

      **1.18.1.3 "Release"** shall mean any spilling, leaking, migrating, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment of any Hazardous Material.

      **1.18.2 Indemnification.**

Notwithstanding anything herein to the contrary, Trustor absolutely and unconditionally agrees to defend, indemnify, and hold harmless Beneficiary, and its employees, agents, trustees, attorneys, officers, directors and shareholders, from and against any and all claims, demands, penalties, causes of action, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, known or unknown, foreseen or unforeseen, contingent or otherwise, incurred by Beneficiary, its employees, agents, trustees, attorneys, officers or directors (including, without limitation, counsel and consultant fees and expenses, investigation and laboratory fees and expenses, court costs, and litigation expenses) arising out of, or in any way related to: (i) any breach by the Trustor of any of the provisions of this Deed of Trust or any other Loan Documents; any Release or threat thereof of any Hazardous Material that is at, in, on, under, around, from or affecting the Property, including, without limitation, any violation of any Environmental Law or any damage or injury resulting from any Hazardous Material to or affecting the Property or the soil, water, air, vegetation, buildings, personal property, persons or animals located on the Property or on any other property or otherwise, whether occurring during or prior to Trustor's ownership of the Property; (ii) any personal injury (including wrongful death) and property damages (real or personal) arising out of or related to any such Hazardous Material; (iii) any lawsuit brought or threatened, settlement reached, or order or directive of or by any state or federal governmental agency or authority, including but not limited to the United States of America Environmental Protection Agency and any state counterpart environmental protection agency, relating to such Hazardous Material; and (iv) any remedial action undertaken by Beneficiary in connection with any of the foregoing.

**1.19    Future Advances.**

This Deed of Trust is given to secure not only existing Indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of the Beneficiary, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Deed of Trust, but such secured Indebtedness shall not exceed at any time the maximum principal sum equal to ten (10) times the amount originally secured, plus interest thereon, and any disbursements made for the payment of taxes, levies, or insurance on the Premises, with interest on such disbursements. Any such future advances, whether obligatory or to be made at the option of the Beneficiary, or otherwise, may be made either prior to or after the due date of the Note or any other Note secured by this Deed of Trust. This Deed of Trust is given for the specific purpose of securing any and all Indebtedness of Trustor to Beneficiary (but in no event shall the secured Indebtedness exceed at any time the maximum principal amount set forth above in this paragraph, plus interest thereon, and any disbursements made for the payment of taxes, levies, or insurance on the Premises, with interest on such disbursements) in whatever manner such Indebtedness may be evidenced or represented, until this Deed of Trust is satisfied of record. All covenants and agreements contained in this Deed of Trust shall be applicable to all future advances made by Beneficiary to Trustor under this future advance clause. Beneficiary shall be under no obligation to make, or cause to be made, any such future advance, and all such future advances shall be at the sole and absolute discretion of Beneficiary.

**ARTICLE 2.  DEFAULTS**

Page 14

The term "Event of Default" or "default" wherever used in this Deed of Trust, shall mean any one or more of the following events:

**2.1**    Failure by Trustor to pay any installment of principal and/or interest under the Note within five (5) days after the same becomes due and payable;

**2.2**    Failure by Trustor to observe or perform, or upon any default (and failure to timely cure) in any other covenants, agreements or provisions herein, in the Note, or in any other Loan Documents;

**2.3**    Failure by Trustor to pay any Imposition, Assessment or other utility charges on or lien against the Property;

**2.4**    Failure by Trustor to keep in force the insurance required in this Deed of Trust;

**2.5**    Failure by Trustor to either deliver the policies of insurance described in this Deed of Trust or to pay the premiums for such insurance as provided herein;

**2.6**    Failure by Trustor to pay any installment, which may not then be due or delinquent, of any Assessment for local improvements for which an official bill has been issued by the appropriate authorities and that may now or hereafter affect the Property, and may be or become payable in installments;

**2.7**    Failure by Trustor to pay any other IAI against the Property required to be under this Deed of Trust;

**2.8**    The actual or threatened waste, removal or demolition of, or material alteration to, any part of the Property, except as permitted herein;

**2.9**    The vesting of title, or any sale, conveyance, transfer, assignment or further encumbrance in any manner whatsoever of any interest in the Property, or any part thereof, in or to anyone other than the present owner, or any change in title or ownership of the Property, or any part thereof, without the prior written consent of Beneficiary;

**2.10**    All or a material portion of the Property being taken through condemnation, eminent domain, or any other taking such that Beneficiary has reason to believe that the remaining portion of the Property is insufficient to satisfy the outstanding balance of the Note, or the value of the Property being impaired by condemnation, eminent domain or any other taking, (which term when used herein shall include, but not be limited to, any damage or taking by any governmental authority or any other authority authorized by the laws of any state or the United States of America to so damage or take, and any transfer by private sale in lieu thereof), either temporarily for a period in excess of thirty (30) days, or permanently;

**2.11**    Any sale, conveyance, assignment or transfer of any beneficial interest in Trustor or any of Trustor's underlying Equity Interests that does not constitute a Permitted Transfer, or the dissolution of Trustor or the death of any guarantor of the Note ("Guarantor");

**2.12**    Any representation or warranty of Trustor or any Guarantor made herein or in any such guaranty or in any certificate, report, financial statement, or other instrument furnished in connection with the making of the Note, the Deed of Trust or any such guaranty, shall prove false or misleading in any material respect;

Page 15

**2.13**    Trustor makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in bankruptcy, or conservator appointed for it or for substantially all or any of its assets;

**2.14**    Trustor files, or becomes the subject of, a petition in bankruptcy, or upon the commencement of any proceeding or action under any bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting Trustor; provided however, that Trustor shall have sixty (60) days from the filing of any involuntary petition in bankruptcy to have the same discharged and dismissed;

**2.15**    The Property becomes subject to (1) any tax lien which is superior to the lien of the Deed of Trust, other than a lien for local real estate taxes and assessments not due and payable or (2) any mechanic's, materialman's, or other lien that is, or is asserted to be, superior to the lien of the Deed of Trust and such lien shall remain undischarged for thirty (30) days;

**2.16**    Trustor fails to promptly cure within a reasonable time any violations of laws or ordinances affecting or that may be interpreted to affect the Property;

**2.17**    In the event of any material adverse change in the financial condition of Trustor; or

**2.18**    Any of the aforementioned events occur with respect to any Guarantor.

## ARTICLE 3.  **REMEDIES**

In the event that an Event of Default or default shall have occurred, the remedies available to Beneficiary include, but are not limited to, any and all rights and remedies available hereunder, any and all rights and remedies available at law, in equity or by statue. Without limiting the foregoing, the rights and remedies available to Beneficiary shall include, but not be limited to, any one or more of the following, all of which Beneficiary may cause Trustee to carry out in accordance with applicable law:

**3.1**    **Acceleration of Maturity.**

If an Event of Default shall have occurred, Beneficiary may, at its option, declare, upon thirty (30) days written demand and notice, all of the outstanding Indebtedness to be due and payable immediately, and upon such declaration such Indebtedness shall immediately become and be due and payable without any further demand or notice, unless the applicable notice requirements of the State of **California**, County of **Los Angeles** or other municipality provides otherwise. If Beneficiary shall be required under such applicable state, county or other municipal law to provide certain notice to Trustor prior to acceleration of the outstanding Indebtedness, then Beneficiary shall provide such notice to Trustor in the manner and substance in conformance with all such applicable law. If Beneficiary provides such notice to Trustor and if the default is not cured on or before the date specified in the notice, then Beneficiary, at its option, may require immediate payment in full of all sums secured by this Mortgage without further demand, may invoke the power of sale and any other remedies set forth herein and permitted by applicable state, county or other municipal law. Beneficiary shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Article 3, including, but not limited to, reasonable attorney's fees and costs of title evidence.

**3.2**    **Beneficiary's Right to Enter and Take Possession.**

If an Event of Default shall have occurred, Trustor, upon demand on Beneficiary, shall forthwith surrender to Beneficiary the actual possession of the Property and Beneficiary itself, or by such officers or agents as it may appoint, may enter and take possession of the Property, collect and receive the rents and

Page 16

Branch :FZL User :TZ01    Case 2:20-bk-16399-BR    Doc 21-1    Comment:   Filed 09/14/20    Entered 09/14/20 15:31:41    Station Id :D2PR    Desc

Exhibits    Page 19 of 68

income therefrom, and to apply so much of said rents and income as may be required in the necessary expenses of running said Premises, including reasonable attorney's fees, management agent's fees, and if Beneficiary manages the Premises with its own employees, an amount equal to the customary management agent's fees charged for similar property in the area where the Premises are located, and to apply the balance of said rents and income to the payment of the amounts due upon said Note, or in payment of taxes assessed against the Premises, or both. And for this purpose, and in case of such default, the Trustor hereby assigns, transfers, and sets over to the Beneficiary the rents and income accruing from said Premises. Nothing contained in the foregoing provisions shall impair or affect any right or remedy that the Beneficiary might now or hereafter have, were it not for such provisions, but the rights herein given shall be in addition to any others which Beneficiary may have hereunder.

**3.3    Receiver.**

If an Event of Default shall have occurred, Beneficiary, to the extent permitted by law and without regard to the value or occupancy of the security, shall be entitled to apply for the appointment of a receiver of the rents and profit of the Property without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Property as security for the amounts due Beneficiary, or the solvency of any person or limited liability company liable for the payment of such amounts.

**3.4    Waiver of Appraisement, Valuation, Stay, Exemption, and Redemption Laws, etc.; Marshaling.**

Trustor agrees to the full extent permitted by law that after an Event of Default neither Trustor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, exemption, moratorium, or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed of Trust, and Trustor, for itself all who may at any time claim through or under it, hereby waives, to the full extent that it may lawfully so do, any and all right to have the assets comprising the Property marshaled upon any foreclosure hereof.

**3.5    Suits to Protect the Property.**

Beneficiary shall have the power and authority to institute and maintain any suits and proceedings as Beneficiary may deem advisable in order to (a) prevent any impairment of the Property, (b) foreclose this Deed of Trust, (c) preserve and protect its interest in the Property, and (d) to restrain the enforcement of, or compliance with, any legislation or other governmental enactment, rule, or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to Beneficiary's interest.

**3.6    Proofs of Claim.**

In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial case or proceedings affecting Trustor, its creditors or its property, Beneficiary, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claims allowed in such case or proceeding for the entire Indebtedness at the date of institution of such case or proceeding, and for any additional amounts that may become due and payable by Trustor after such date.

**3.7    Application of Monies by Beneficiary.**

Page 17

After the occurrence of an Event of Default, any monies collected or received by Beneficiary shall be applied in such priority as Beneficiary may determine in its sole and absolute discretion, to such matters including, but not limited to, the payment of compensation, expenses and disbursements of the agents, attorneys and other representatives of Beneficiary, to IAI Deposits and any other deposits for Impositions and insurance and insurance premiums due, to the cost of insurance, Impositions, Assessments, other IAIs and other charges and to the payment of the Indebtedness.

**3.8    No Waiver.**

Notwithstanding any course of dealing or course of performance, neither failure nor delay on the part of Beneficiary to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.

**3.9    No Waiver of One Default to Affect Another.**

No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon. If Beneficiary (a) grants forbearance or an extension of time for the payment of any of the Indebtedness; (b) takes other or additional security for the payment thereof; (c) waives or does not exercise any right granted in the Note, this Deed of Trust of any other of the Loan Documents; (d) releases any part of the Property from the lien of this Deed of Trust or any other Loan Documents or releases or any party liable under the Note; (e) consents to the filing of any map, plat or replat of the Premises; (f) consents to the granting of any easement on the Premises; or (g) makes or consents to any agreement changing the terms of this Deed of Trust or subordinating the lien or any charge hereof, no such act or omission shall release, discharge, modify, change or affect the original liability under this Deed of Trust of otherwise of Trustor, or any subsequent purchaser of the Property or any part thereof or any maker, co-singer, endorser, surety or guarantor. No such act or omission shall preclude Beneficiary from exercising any right, power of privilege herein granted or intended to the granted in case of any Event of Default then existing or of any subsequent Event of Default nor, except as otherwise expressly provided in an instrument or instruments executed by Beneficiary, shall the lien of this Deed of Trust be altered thereby.

**3.10    Remedies Cumulative.**

No right, power or remedy conferred upon or reserved to Beneficiary by the Note, this Deed of Trust or any other Loan Documents is exclusive of any other right, power and remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note or any other Loan Documents, or now or hereafter existing at law, in equity or by statute.

**3.11    Discontinuance of Proceedings.**    If Beneficiary shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Beneficiary shall have the unqualified right to do so and, in such an event, Trustor and Beneficiary shall be restored to their former positions with respect to the Indebtedness, the Loan Documents, the Property and otherwise, and the rights, remedies, recourses and powers of Beneficiary shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Beneficiary thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

**3.12    Interest after Event of Default; Default Rate.**

Page 18

If an Event of Default shall have occurred, all sums outstanding and unpaid under the Note and this Deed of Trust shall, at Beneficiary's option, bear interest at the default rate set forth in the Note.

**3.13    Trustee's Sale.**

If any Event of Default occurs, Beneficiary is authorized and empowered, without further notice, to execute or cause Trustee to execute a written notice of default and of election to cause the Property to be sold as required by the law or as otherwise provided herein, and the Trustee shall file such notice for record in each county wherein the Property or any part thereof is situated. After such filing, Trustee may lawfully foreclose and shall foreclose the lien of this Deed of Trust, and sell and dispose of the Property in masse or in separate parcels (as Beneficiary may elect) and all the right, title, and interest of Trustor therein, at a public auction at any place then authorized by law as may be specified in the notice of such sale, for the price permitted by law ("Trustee's Sale"), legally required public notice having previously been given of the time and place of such sale. Trustee, without demand on Trustor, shall sell the Property on the date and at the time and place designated in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which such Property, if consisting of several known lots or parcels, shall be sold), at public auction to the highest bidder, the purpose price payable in lawful money of the United States at the time of sale. The person conducting the sale may, for any cause he deems expedient in accordance with applicable law, postpone the sale from time to time until it shall be completed and, in every case, notice of postponement shall be given as required by law. Trustee shall execute and deliver to purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Beneficiary, may bid at the sale. Trustee shall apply the proceeds of the sale to payment of (1) the costs and expenses of exercising the power of sale and of the sale, including the payment of Trustee's and Beneficiary's attorney's fees; (2) cost of any evidence of title procured in connection with such sale; (3) all sums expended under the terms hereof, not then repaid, with accrued interest as provided herein from date of expenditure; (4) all other sums then secured hereby; and (5) the remainder, if any, to the person or persons legally entitled thereto, or the Trustee, in its discretion, may deposit the balance of such proceeds with the County Clerk of the county in which the sale took place.

**3.14    Attorney's Fees.**

If this Deed of Trust is foreclosed by Trustee, Trustee shall allow a reasonable amount of attorney's fees for services rendered in the supervision of such foreclosure proceedings as a part of the cost of foreclosure. If the foreclosure proceedings are made through court proceedings, attorney's fees in an amount determined by the court to be reasonable shall be taxed by the court as a part of the cost of such foreclosure proceedings.

**3.15    Concerning the Trustee.**

Page 19

34

**3.15.1**  With the approval of Beneficiary, Trustee shall have the right to take any and all of the following actions: (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Beneficiary) upon any matters arising hereunder, including the preparation, execution and interpretation of the Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence or bad faith), and (iv) any and all other lawful action that Beneficiary may instruct Trustee to take to protect or enforce Beneficiary's rights hereunder.

**3.15.2**  Except for gross negligence or willful misconduct, Trustee shall not be personally liable for any act or omission or error of judgment in connection with the Loan or in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.

**3.15.3**  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered. Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties. All monies received by Trustee shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the extend required by law), and Trustee shall not be liable for interest thereon. Trustor shall indemnify Trustee against all liability and expenses which Trustee may incur in the performance of Trustee's duties hereunder.

## 3.16  Substitute Trustee.

Beneficiary may appoint a substitute Trustee (a) if Trustee herein named or may substitute Trustee shall die, resign, or fail, refuse or be unable, for any reason, to make any such sale or to perform any of the trusts herein declared; or (b) at the option of Beneficiary from time to time as often and whenever Beneficiary prefers and with or without any reason or cause. Each appointment shall be in writing, but without the necessity of recordation, notice to Trustor, or any other action of formality. Each substitute Trustee so appointed shall thereupon by such appointment become Trustee and succeed to all the estates, titles, rights, powers, trusts and duties of predecessor Trustee. Any such appointment may be executed by Beneficiary or any authorized representative of Beneficiary, and such appointment shall be presumed conclusively to have been executed with due and proper authority. Without limiting the generality of the foregoing, if Beneficiary is a corporation, bank or association, of any type or character, such appointment may be executed in its behalf by any officer of Beneficiary and shall be presumed conclusively to have been executed with due and proper authority without necessity of proof of any action by the board of directors or any superior officer. Wherever herein the word "Trustee" is used, the same shall mean the duly appointed trustee or substitute trustee hereunder at the time of question. Trustee may resign by written notice to Beneficiary.

## 3.17  Perfection of Appointment.

Page 20

Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

**3.18    Succession Instruments.**

Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Beneficiary or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

**ARTICLE 4.    MISCELLANEOUS PROVISIONS**

**4.1    Heirs, Successors and Assigns Included in Parties.**

Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Deed of Trust, by or on behalf of Trustor or Beneficiary shall bind and inure to the benefit of their respective heirs, successors and assigns, whether so expressed or not.

**4.2    Addresses for Notices, etc.**

**4.2.1**    Any notice, report, demand or other instrument authorized or required to be given or furnished under this Deed of Trust shall be in writing, signed by the party giving or making the same, and shall be sent by certified mail, return receipt requested, as follows:

|  |  |
|---|---|
| **TRUSTOR:** | **OS Susnet LLC**<br>**427 North Canon Drive,**<br>**Beverly Hills, CA 90210** |
| **Copies to:** | |
| **BENEFICIARY:** | LendingOne, LLC<br>901 Northwest 51st Street,<br>Boca Raton, FL 33431<br>Attention: Legal |
| **TRUSTEE:** | **Joshua Mogin, Esq.**<br>**Raines Feldman LLP**<br>**9720 Wilshire Fifth**<br>**Beverly Hills, CA 90212** |

Page 21

**4.2.2**    Either party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other party, but no such notice of change shall be effective unless and until received by such other party.

**4.3    Headings.**

The headings of the articles, sections, paragraphs and subdivisions of this Deed of Trust are convenience of reference only, are not to be considered a part hereof and shall not limit or expand or otherwise affect any of the terms hereof.

**4.4    Provisions Subject to Applicable Laws; Severability.**

All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any law and are intended to be limited to the extent necessary so that they will not render this Deed of Trust invalid or unenforceable. In the event that any of the covenants agreements, terms or provisions contained in the Note, or in this Deed of Trust or in any other Loan Documents shall be deemed invalid, illegal or unenforceable in any respect by a court with appropriate jurisdiction, the validity of the remaining covenants, agreements, terms or provisions contained herein or in the Note or in any other Loan Documents shall be in no way affected, prejudiced or disturbed thereby.

**4.5    Modification.**

This Deed of Trust, the Note, and all other Indebtedness are subject to modification; provided, however, neither this Deed of Trust, nor any term hereof, may be changed, waived, discharged or terminated orally or by any action or inaction, and solely may be made by an instrument in writing signed by the parties hereto.

**4.6    Governing Law.**

THIS DEED OF TRUST IS MADE BY TRUSTOR AND ACCEPTED BY BENEFICIARY IN THE STATE OF **CALIFORNIA**. THE LAW OF THE STATE OF **CALIFORNIA** SHALL GOVERN THE VALIDITY AND ENFORCEMENT OF ALL LOAN DOCUMENTS, AND THE DEBT OR OBLIGATIONS ARISING HEREUNDER (NOTWITHSTANDING ANY CONFLICT OF LAW PROVISIONS).

**4.7    Prejudgment Remedies.**

TRUSTOR HEREBY REPRESENTS, COVENANTS, AND AGREES THAT THE PROCEEDS OF THE LOAN SECURED BY THIS DEED OF TRUST, AND EVIDENCED BY THE NOTE AND COSTRUCTION LOAN AGREEMENT, IF APPLICABLE, SHALL BE USED FOR GENERAL COMMERCIAL PURPOSES AND THAT SUCH LOAN IS A "COMMERCIAL TRANSACTION" AS DEFINED BY THE STATUTES OF THE STATE OF **CALIFORNIA**. TRUSTOR HEREBY WAIVES SUCH RIGHTS AS IT MAY HAVE TO NOTICE AND/OR HEARING UNDER ANY APPLICABLE FEDERAL OR STATE LAWS PERTAINING TO THE EXERCISE BY BENEFICIARY OF SUCH RIGHTS AS BENEFICIARY MAY HAVE INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO SEEK PREJUDGMENT REMEDIES AND/OR TO DEPRIVE TRUSTOR OF OR AFFECT THE USE OF OR POSSESSION OR ENJOYMENT OF TRUSTOR'S PROPERTY PRIOR TO THE RENDITION OF A FINAL JUDGMENT AGAINST TRUSTOR. TRUSTOR FURTHER WAIVES ANY RIGHT IT MAY HAVE TO REQUIRE THE BENEFICIARY TO PROVIDE A BOND OR OTHER SECURITY AS A PRECONDITION TO OR IN CONNECTION WITH ANY PREJUDGMENT REMEDY SOUGHT BY BENEFICIARY, AND WAIVES ANY OBJECTION TO THE ISSUANCE OF SUCH

Page 22

PREJUDGMENT REMEDY BASED ON ANY OFFSETS, CLAIMS, DEFENSES, OR COUNTERCLAIMS TO ANY ACTION BROUGHT BY BENEFICIARY. FURTHER, TRUSTOR HEREBY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISAL, HOMESTEAD, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS.

**4.8    Effects of Changes and Laws Regarding Taxation.**

In the event of an enactment of any law deducting from the value of the Property any Deed of Trust lien thereon, or imposing upon Beneficiary the payment of any or part of the Impositions, charges, or Assessments previously paid by Trustor pursuant to this Deed of Trust, or change in the law relating to the taxation of Deed of Trusts, debts secured by Deed of Trust or Beneficiary's interest in the Property so as to impose new incidents of taxes of Beneficiary, then Trustor shall pay such Impositions or Assessments or shall reimburse Beneficiary therefor; provided that, however, if in the opinion of counsel to Beneficiary such payment cannot lawfully be made by Trustor, then Beneficiary may, at Beneficiary's option, declare, upon thirty (30) days prior written demand and notice to Trustor, all of the sums secured by this Deed of Trust to be immediately due and payable without prior notice to Trustor, and Beneficiary may invoke any remedies permitted by applicable law.

**4.9    Purpose of Loan.**

Trustor represents and warrants that the proceeds from this Loan are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Trustor acknowledges that Beneficiary has made this Loan to Trustor in reliance upon the above representation. Said representation will survive the closing and repayment of the Loan.

**4.10    Duplicate Originals.**

This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

**4.11    Usury Laws.**

This Deed of Trust, the Note, and the other Loan Documents are subject to the express condition that at no time shall Trustor be obligated or required to pay interest on the debt at a rate that could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate permitted by applicable law. If, by the terms of this Deed of Trust, the Note, or any other Loan Documents, Trustor is at any time required or obligated to pay interest on the debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

**4.12    Construction.**

This Deed of Trust and the Note shall be construed without regard to any presumption or other rule requiring construction against the party causing this Deed of Trust and the Note to be drafted.

**4.13    Sale of Loan Documents.**

Page 23

Beneficiary shall have the right to do any or all of the following at any time without prior notice to or the consent of Trustor or Guarantor: (a) to sell, transfer, pledge or assign any or all of Loan Documents, or any or all servicing rights with respect thereto; (b) to sell, transfer, pledge or assign participations in the Loan Documents ("Participations"); and (c) to issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"). Beneficiary is authorized to forward or disclose to each purchaser, transferee, assignee, servicer, participant, or investor in such Participations or Securities (collectively, the "Investor") or any Rating Agency rating such Securities, each prospective Investor, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Beneficiary now has or may hereafter acquire relating to the Loan and to Trustor or any Guarantor as Beneficiary determines to be necessary or desirable. Upon Beneficiary's request, Trustor shall reasonably cooperate with Beneficiary in connection with any of the transactions contemplated by this Section. Notwithstanding anything to the contrary contained in this Mortgage or any of the other Loan Documents, from and after the date of any sale, transfer or assignment of the Note and other Loan Documents by Beneficiary, any cross-default provision contained herein or in any other loan Documents shall terminate and shall be of no further force or effect.

**4.14    Release and Reconveyance.**

If all of Trustor's obligations under the Loan Documents are paid in full in accordance with the terms of the Loan Documents and all amounts due under the Deed of Trust and accompanying Loan Documents are paid in full, no Default then exists hereunder and no Event of Default then exists under any other Loan Document, and if Trustor shall well and truly perform all of Trustor's covenants contained herein, then this conveyance shall become null and void and be released, Beneficiary or Trustee shall cancel this Deed of Trust, the Property shall be reconveyed to Trustor, at Trustor's request and expense. If Trustee is requested to release this Deed of Trust, all notes evidencing debt secured by this Deed of Trust shall be surrendered to Trustee. Trustor shall pay any recordation costs. Beneficiary may charge Trustor a fee for releasing this Deed of Trust, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**4.15    Entire Agreement.**

This Deed of Trust, together with the other Loan Documents executed in connection herewith, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof and supersedes all prior proposals, negotiations, agreements, and understandings relating to such subject matter. In entering into this Deed of Trust, Trustor acknowledge that it is not relying on any representation, warranty, covenant, promise, assurance, or other statement of any kind made by Beneficiary or by any employee or agent of Beneficiary.

**4.16    Post-Closing Compliance.**

Trustor agrees, at the request of Beneficiary, to fully cooperate and adjust for clerical errors, omissions, mistakes, or corrections required on this Deed of Trust or any other Loan Documents if deemed necessary or desirable in the sole discretion of Beneficiary. Trustor does hereby so agree and covenant in order to ensure that this Deed of Trust and all other the Loan Documents will conform and be acceptable in the instance of enforcement, transfer, sale or conveyance by Beneficiary or its interest in and to said Loan documentation.

**4.17    State Specific Provisions.**

Page 24

### 4.17.1  Dwellings.

No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

### 4.17.2  Civil Code.

Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

### 4.17.3  Supplemental Environmental Provisions.

In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Beneficiary's or Trustee's rights and remedies under this Deed of Trust, Beneficiary may, following the applicable notice and cure period, (i) elect to exercise its rights under California Code of Civil Procedure Section 726.5(a) to waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law. Beneficiary shall have the right as stated herein to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

### 4.17.4  Border Zone.

To Trustor's knowledge, Trustor represents to Beneficiary that, as of the date hereof, the Property has not been designated as "border zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. ("Border Zone Property") and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property to be designated as Border Zone Property.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*
*(Signature Page Follows)*

Page 25

40

**NOW, THEREFORE,** if the Note and any Indebtedness, secured by this Deed of Trust shall be well and truly paid according to their tenor and if all the terms, covenants, conditions, and agreements of Trustor contained herein and in the Note and Loan Documents, shall be fully and faithfully performed, observed, and complied with, then this Deed of Trust deed shall be void, but shall otherwise remain in full force and effect.

**IN WITNESS WHEREOF,** this Deed of Trust has been duly executed by Trustor as of the date first above written.

TRUSTOR:

**OS Susnet LLC,**
**a California limited liability company**

By: _____ (seal)
    Name: Danny Siag
    Title: **Manager**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF California )
COUNTY OF Los Angeles )

    On 2/28/18 , 2018 before me, the undersigned, personally appeared **Danny Siag,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his/her capacity as **Manager** of **OS Susnet LLC, a California limited liability company,** and that his/her signature on the instrument, the individual, or the person or entity on behalf of which the individual acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

*(NOTARY SEAL)*

PELE NICOLE KEITH
Notary Public – California
Los Angeles County
Commission # 2223956
My Comm. Expires Dec 2, 2021

Notary Public Signature
Printed Name: Pele Nicole Keith

Page 26

ESCROW NO.: ███████    TITLE ORDER NO. ███████

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of  Los Angeles _____

On   2/28/2018 _____ before me,    Pele Nicole Keith _____,

A Notary Public personally appeared _____

_____ Danny Siag _____

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

PELE NICOLE KEITH
Notary Public – California
Los Angeles County
Commission # 2223966
My Comm. Expires Dec 2, 2021

(Seal)

42

## SCHEDULE A

## PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN **LOS ANGELES** COUNTY, STATE OF **CALIFORNIA**, AND IS DESCRIBED AS FOLLOWS:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 116, OF TRACT NO. 7082, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 108 PAGE(S) 32 TO 36 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: ███████████

**Property commonly known as: 12125 West Sunset Boulevard, Los Angeles, CA 90049.**

Page 27

43



**This page is part of your document - DO NOT DISCARD**

## 20180221845

**Pages:**
**0010**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/07/18 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 62.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 62.00 |

**L E A D S H E E T**

**SEQ:**
**03**

**SECURE - 8:00AM**

**THIS FORM IS NOT TO BE DUPLICATED**

Fidelity Sherman Oaks

*PREPARED BY, AND AFTER RECORDING*
*RETURN TO:*

LendingOne, LLC
c/o ISGN Fulfillment Agency, LLC
Attn: Team2
2330 Commerce Pk. Dr. NE, STE 2
Palm Bay, FL 32905

Exempt from fee per GC 27388.1 (a)
(2) recorded concurrently
"in connection with" a transfer subject
to the imposition of documentary transfer tax

*Space Above for Recorder's Use*

## ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT ("Assignment") made effective as of **February 28, 2018** by **OS Susnet LLC, a California limited liability company,** having an address of **427 North Canon Drive, Beverly Hills, CA 90210** ("Assignor") in favor of LendingOne, LLC having its principal place of business at 901 Northwest 51st Street, Boca Raton, FL 33431 ("Assignee").

## RECITALS:

A.    This Agreement is made in connection with a loan in the principal sum of up to **THREE MILLION SEVEN HUNDRED EIGHTY THOUSAND DOLLARS ($3,780,000.00)** (the "Loan") made by Assignee to Assignor, as evidenced by that certain Commercial Promissory Note, dated the date hereof, made by Assignor to Assignee (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Note").

B.    The Note is secured by that certain **Open-End Commercial Deed of Trust, Security Agreement and Fixture Filing**, dated the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Security Instrument") made by Assignor for the benefit of Assignee. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Security Instrument.

Page 1

Branch :FTL,User :TZ01                    Comment:                                              Station Id :D2PR

C.    As defined in the Note and Security Instrument, the Maturity Date of Loan is **March 1, 2019.**

D.    Assignor desires to further secure the payment of the Indebtedness and the performance of all of its Obligations under the Note, the Security Instrument and the other Loan Documents.

E.    This Assignment is given pursuant to the Note, and payment, fulfillment, and performance by Assignor of its obligations thereunder and under the other Loan Documents is secured hereby, and each and every term and provision of the Note and the Security Instrument, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Assignment.

NOW THEREFORE, in consideration of the making of the Loan by Assignee and the covenants, agreements, representations and warranties set forth in this Agreement:

See Exhibit "A"

### AGREEMENT:

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

**1.    Assignment.**

1.1.    Assignor unconditionally assigns to Assignee all of Assignor's right, title and interest in and to: (a) all rents, revenues, liquidated damages following defaults under the Leases, issues, profits, income and proceeds due or to become due from tenants of the project located on the real property more commonly known as **12125 West Sunset Boulevard, Los Angeles, CA 90049,** which is more particularly described on the attached Exhibit A (the real property and project, collectively, the "Property"), including rentals and all other payments of any kind under the Leases for using, leasing, licensing, possessing, operating from, rendering in, selling or otherwise enjoying the Property (collectively, the "Rents"); (b) all of Assignor's claims and rights (the "Bankruptcy Claims") to the payment of damages arising from any rejection by a lessee of any Lease under the United States Bankruptcy Code (the "Bankruptcy Code"); and (c) any and all other rights of Assignor in and to the items set forth in subsections (a) through (b) above, and all amendments, modifications, replacements, renewals, proceeds and substitutions thereof. This Agreement is an absolute assignment to Assignee and not an assignment as security for the performance of the obligations under the Loan Documents (defined below), or any other Indebtedness, and such absolute assignment is presently and immediately effective. Notwithstanding the foregoing, the absolute assignment contained herein shall not itself reduce the obligations owing to Assignee under the Loan Documents unless and until Assignee actually receives the Rents and such Rents are applied by Assignee to such obligations pursuant to Section 4 below.

1.2.    For purposes of this Agreement, "Leases" means all leases, subleases, occupancy agreements, licenses, concessions, rental contracts and other agreements (written or oral) now or hereafter existing relating to the use or occupancy of the Property, together with all guarantees, letters of credit and other credit support, modifications, extensions and renewals thereof (whether before or after the filing by or against Assignor of any petition of relief under the Bankruptcy Code) and all related security and other deposits. Assignee grants to Assignor a revocable license to operate and manage the Property and to collect the Rents. Assignor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Assignee for use in the payment of such sums. During the existence of an Event of Default, the license granted to Assignor herein shall be automatically revoked and Assignee shall immediately be entitled to possession of all Rents, whether or not Assignee

Page 2

enters upon or takes control of the Property. Assignee is hereby granted and assigned by Assignor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Assignee in its discretion shall deem proper. It is further the intent of Assignor and Assignee that the Rents hereby absolutely assigned are no longer, during the term of the Security Instrument, property of Assignor or property of any estate of Assignor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Assignor.

**2.    Rights of Assignee.**

2.1.    During an Event of Default, Assignee shall have the right, power and authority in accordance with applicable law to: (a) notify any person that all Rents are to be paid directly to Assignee, whether or not Assignee has commenced or completed foreclosure or taken possession of the Property; (b) settle, compromise, release, extend the time of payment of, and make allowances, adjustments and discounts of any Rents; (c) enforce payment of Rents, prosecute any action or proceeding, and defend against any claim with respect to Rents; (d) enter upon, take possession of and operate the Property; (e) lease all or any part of the Property; and/or (f) perform any and all obligations of Assignor under the Leases and exercise any and all rights of Assignor therein contained to the full extent of Assignor's rights and obligations thereunder, with or without the bringing of any action or the appointment of a receiver.

2.2.    At Assignee's request during an Event of Default, Assignor shall deliver a copy of this Agreement to each tenant under a Lease and to each manager and managing agent or operator of the Property. Assignor irrevocably directs any tenant, manager, managing agent, or operator of the Property, without any requirement for notice to or consent by Assignor, to comply with all demands of Assignee under this Agreement and to turn over to Assignee on demand all Rents which it receives. Assignee grants to Assignor a revocable license to operate and manage the Property and to collect the Rents. Assignor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Assignee for use in the payment of such sums. During an Event of Default, the license granted to Assignor herein shall be automatically revoked and Assignee shall immediately be entitled to possession of all Rents, whether or not Assignee enters upon or takes control of the Property. If the Event of Default is cured, as determined by Assignee in its sole and absolute discretion, the license granted to Assignor shall be reinstated. Assignee is hereby granted and assigned by Assignor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Assignee in its discretion shall deem proper. It is further the intent of Assignor and Assignee that the Rents hereby absolutely assigned are no longer, during the term of the Security Instrument, property of Assignor or property of any estate of Assignor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Assignor.

**3.    No Obligation or Liability.** Notwithstanding Assignee's rights hereunder, Assignee shall not be obligated to perform, and Assignee does not undertake to perform, any obligation, duty or liability with respect to the Leases, Rents or Property on account of this Agreement. Assignee shall have no responsibility on account of this Agreement for the control, care, maintenance or repair of the Property, for any waste committed on the Property, for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property, except to the extent caused by the gross negligence, intentional or willful misconduct, fraud, by Assignee. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after an Event of Default or from any other act or omission of Assignee in managing the Property after an Event of Default (other than for gross negligence, intentional or willful misconduct, or fraud by Assignee its

Page 3

47

employees and agents). Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" or "debtor in possession" in the absence of the taking of actual possession of the Property by Assignee. Neither the acceptance by Assignee of this Agreement, nor the granting of any other right, power, privilege or authority in this Assignment, nor the exercise of any of the aforesaid, will at any time thereafter, obligate Assignee (a) to appear in or defend any action or proceeding relating to the Leases, the Rents or the remainder of the Property, (b) to take any action hereunder, (c) to expend any money or incur any expenses or perform or discharge any obligation, duty or liability with respect to any Lease, (d) to assume any obligation or responsibility for any deposits which are not physically delivered to Assignee or (e) to assume any obligation or responsibility for any injury or damage to person or property sustained in or about the Property. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

4.    **Right to Apply Rents.**  At any time an Event of Default by Assignor exists, Assignee shall have the right, but not the obligation, to use and apply any Rents received by Assignee pursuant to the terms hereof in such order and such manner as Assignee may determine for:

    4.1.    Enforcement or Defense. The payment of costs and expenses of enforcing or defending the terms of this Agreement or the rights of Assignee hereunder, and collecting any Rents;

    4.2.    Loan Payments. Interest, principal or other amounts payable pursuant to the Note, Security Instrument and all other Loan Documents; and

    4.3.    Operating Expenses. Payment of costs and expenses of the operation and maintenance of the Property, including (i) rentals and other charges payable by Assignor under any ground lease or other agreement affecting the Property; (ii) electricity, telephone, water and other utility costs, taxes, assessments, water charges and sewer rents and other utility and governmental charges levied, assessed or imposed against the Property; (iii) insurance premiums; (iv) costs and expenses with respect to any litigation affecting the Property, the Leases or the Rents; (v) wages and salaries of employees, commissions of agents and attorneys' fees and expenses; and (vi) all other carrying costs, fees, charges, reserves, and expenses whatsoever relating to the Property.

    After the payment of all such costs and expenses and after Assignee has established such reserves as it, in its sole and absolute discretion, deems necessary for the proper management of the Property, Assignee shall apply all remaining Rents received by it to the reduction of the Loan.

5.    **No Waiver.** The exercise or nonexercise by Assignee of the rights granted in this Agreement or the collection and application of Rents by Assignee or its agent shall not be a waiver of any default by Assignor under this Agreement or any other Loan Document. No action or failure to act by Assignee with respect to any obligations of Assignor under the Loan Documents, or any security or guaranty given for the payment or performance thereof, shall in any manner affect, impair or prejudice any of Assignee's rights and privileges under this Agreement, or discharge, release or modify any of Assignor's duties or obligations hereunder.

6.    **Term.** This Agreement shall continue in full force and effect until (a) all amounts due under the Loan Documents are paid in full, and (b) all other obligations of Assignor under the Loan Documents are fully satisfied.

7.    **Appointment.**  Assignor irrevocably appoints Assignee its true and lawful attorney-in-fact, which appointment is coupled with an interest, to exercise any or all of the rights or powers described herein with the same force and effect as if exercised by Assignor, and Assignor ratifies and confirms any

Page 4

and all acts done or omitted to be done by Assignee, its agents, servants, employees or attorneys in, to or about the Property.

**8.    Liability of Assignee.** Assignee shall not in any way be liable to Assignor for any action or inaction of Assignee, its employees or agents under this Agreement (other than for gross negligence, intentional or willful misconduct, or fraud by Assignee, its employees and agents).

**9.    Indemnification.** Assignor shall indemnify, defend and hold harmless Assignee from and against all liability, loss, damage, cost or expense which it may incur under this Agreement or under any of the Leases, including any claim against Assignee by reason of any alleged obligation, undertaking, action, or inaction on its part to perform or discharge any terms, covenants or conditions of the Leases or with respect to Rents, and including reasonable attorneys' fees and expenses, INCLUDING LIABILITY, LOSS, DAMAGE, COST OR EXPENSE ARISING OR ALLEGED TO HAVE ARISEN FROM ASSIGNEE'S NEGLIGENCE OR STRICT LIABILITY, but excluding any claim arising from Assignee's gross negligence, intentional or willful misconduct, or fraud. Any amount covered by this indemnity shall be payable on demand, and shall bear interest from the date of demand until the same is paid by Assignor to Assignee at a rate equal to the Default Rate (as defined in the Note).

**10.    Modification.** This Agreement may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of such change is sought.

**11.    Bankruptcy.**

11.1.    Upon or at any time after the occurrence of an Event of Default, Assignee shall have the right to proceed in its own name or in the name of Assignor in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Assignor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

11.2.    If there shall be filed by or against Assignor a petition under the Bankruptcy Code, and Assignor, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Assignor shall give Assignee not less than ten (10) days' prior notice of the date on which Assignor shall apply to the bankruptcy court for authority to reject the Lease. Assignee shall have the right, but not the obligation, to serve upon Assignor within such ten-day period a notice stating that (i) Assignee demands that Assignor assume and assign the Lease to Assignee pursuant to Section 365 of the Bankruptcy Code and (ii) Assignee covenants to cure or provide adequate assurance of future performance under the Lease. If Assignee serves upon Assignor the notice described in the preceding sentence, Assignor shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Assignee of the covenant provided for in clause (ii) of the preceding sentence.

**12.    Authority.** Assignor represents and warrants that it has full power and authority to execute and deliver this Agreement and the execution and delivery of this Agreement has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Assignor or the Property.

**13.    Headings.** The headings and captions of various paragraphs of this Agreement are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Page 5

14.    **Notices.** Any notice required or permitted to be given under this Agreement shall be (a) in writing, (b) sent in the manner set forth in the Security Instrument, and (c) effective in accordance with the terms of the Security Instrument.

15.    **Successors and Assigns.** This Agreement shall inure to the benefit of Assignee and its successors and assigns and shall be binding on Assignor and its successors and assigns.

16.    **Severability.**    If any provision of this Agreement or application thereof to any person or circumstance shall to any extent be invalid, the remainder of this Agreement or the application of such provision to persons, entities, or circumstances other than those as to which it is held invalid, shall not be affected thereby and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

17.    **Further Assurances.** Assignor shall execute and deliver to Assignee all instruments and do such further acts and things as Assignee may reasonably request which may be necessary or desirable to effect the purposes of this Agreement.

18.    **Governing Law.** This Agreement shall be construed in accordance with, and governed by, the laws of the **California.**

19.    **Jurisdiction.** AT ASSIGNEE'S ELECTION, TO BE ENTERED IN ITS SOLE DISCRETION, ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BORROWER OR ASSIGNEE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN **CALIFORNIA**, AND ASSIGNOR WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

20.    **Amendments.** This Agreement may not be altered, amended, waived, or modified in any way whatsoever except by a writing duly executed by the party to be charged therewith.

21.    **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute one document.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*
*(Signature Page Follows)*

Page 6

IN WITNESS WHEREOF, this Assignment has been duly executed by Assignor as of the date first above written.

ASSIGNOR HEREBY ACKNOWLEDGES THAT IT HAS RECEIVED A TRUE COPY OF THIS ASSIGNMENT WITHOUT CHARGE.

ASSIGNOR:

OS Susnet LLC,
a California limited liability company

By: _____ (seal)
Name: **Danny Siag**
Title: **Manager**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF California )
COUNTY OF Los Angeles )

On 2/28/18 , **2018** before me, the undersigned, personally appeared **Danny Siag**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his/her capacity as **Manager of OS Susnet LLC, a California limited liability company**, and that his/her signature on the instrument, the individual, or the person or entity on behalf of which the individual acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

*(NOTARY SEAL)*

PELE NICOLE KEITH
Notary Public – California
Los Angeles County
Commission # 2223956
My Comm. Expires Dec 2, 2021

Notary Public Signature
Printed Name: Pele Nicole Keith

Page 7

ESCROW NO.: ███████    TITLE ORDER NO.: ████████

## ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California

County of  Los Angeles

On   2/28/2018   before me,    Pele Nicole Keith

A Notary Public personally appeared

Danny Siag

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

PELE NICOLE KEITH
Notary Public – California
Los Angeles County
Commission # 2223656
My Comm. Expires Dec 2, 2021

Signature

(Seal)

## EXHIBIT A

## PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN **LOS ANGELES** COUNTY, STATE OF **CALIFORNIA**, AND IS DESCRIBED AS FOLLOWS:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 116, OF TRACT NO. 7082, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 108 PAGE(S) 32 TO 36 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: ███████████

**Property commonly known as: 12125 West Sunset Boulevard, Los Angeles, CA 90049.**

Page 8



**This page is part of your document - DO NOT DISCARD**

# 20190079984

**Pages:**
**0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/28/19 AT 10:50AM**

| | |
|---|---|
| FEES: | 49.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 199.00 |

**L E A D S H E E T**

**SEQ:**
**01**

SECURE - Daily

**THIS FORM IS NOT TO BE DUPLICATED**

*PREPARED BY, AND AFTER RECORDING*
*RETURN TO:*  #█████████  ██████████

LendingOne, LLC
c/o ISGN Fulfillment Agency, LLC
Attn: Team2                                                                          APN:████████████
2330 Commerce Pk. Dr. NE, STE 2
Palm Bay, FL 32905

*Space Above for Recorder's Use*

### ASSIGNMENT OF OPEN-END COMMERCIAL DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING, AND OTHER LOAN DOCUMENTS

THIS ASSIGNMENT OF OPEN-END COMMERCIAL DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING, AND OTHER AND OTHER LOAN DOCUMENTS ("Assignment") is made effective as of _March 15_, 2018 ("Effective Date"), by LendingOne, LLC ("Assignor").

A.      Concurrently herewith, Assignor has conveyed to Tourak Repo Seller I Trust, a Delaware Statutory Trust ("Assignee"), all of Assignor's rights, title and interest in, to and under that certain commercial loan ("Commercial Loan") made by Assignor to **OS Susnet, LLC** ("Borrower").

B.      In connection with the conveyance of the Commercial Loan by Assignor to Assignee, Assignor desires to assign to Assignee and Assignee desires to assume from Assignor all of Assignor's rights, title and interest in, to and under: (i) that certain Commercial Promissory Note dated **February 28, 2018** executed by Borrower in the original principal amount of **$3,780,000.00** ("Note"); and (ii) that certain Open-End Commercial Deed of Trust, Security Agreement and Fixture Filing dated **February 28, 2018** executed by Borrower, as mortgagor (or trustor or grantor, if applicable), in favor of Assignor, as the originator and initial Mortgagee (or Beneficiary or Grantee, if applicable), and recorded in the Official Records of **Los Angeles** County, **California**, on _March 7_, 2018 as Document No. _20180221844_ ("Security Instrument") regarding the real property as more particularly described on Schedule A attached hereto and incorporated by this reference. The Note, Security Instrument and any

Page 1

Branch :FZL User :TZ01    Case 2:20-bk-16399-BR    Doc 21-1    Comment:    Filed 09/14/20    Entered 09/14/20 15:31:41    Desc    Station Id :D2PR

Exhibits    Page 43 of 68

other document assigned in connection herewith shall be collectively referred to herein as the "Assigned Loan Documents."

C.    Assignor has simultaneously herewith endorsed the Note to Assignee and the parties desire that the other Assigned Loan Documents and all other documents relating to or evidencing the Commercial Loan be assigned by Assignor and assumed by Assignee.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

1.    Assignor hereby absolutely, irrevocably and unconditionally sells, assigns, transfers, sets over, conveys and endorses to Assignee, all of Assignor's right, title and interest in and to the Assigned Loan Documents, including, without limitation, all lien rights or other rights or interests in and to the property encumbered by the Deed of Trust, all sums of money due and to become due thereunder and all accrued interest or other charges thereon.    Assignor hereby further absolutely, irrevocably and unconditionally sells, assigns, transfers, sets over, conveys and endorses to Assignee, all of Assignor's right, title and interest in and to any and all claims, rights and causes of action, whether in tort or contract, whether known or unknown that Assignor may have against the Borrower and/or any third parties in connection with the Commercial Loan, the Assigned Loan Documents and/or the collateral for the Commercial Loan.

2.    THIS ASSIGNMENT IS MADE WITHOUT RECOURSE OR WARRANTY OF ANY KIND BY ASSIGNOR, AND ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER WITH RESPECT TO THE NOTE, THE OBLIGATIONS EVIDENCED BY THE NOTE, THE ASSIGNED LOAN DOCUMENTS OR THE UNDERLYING COLLATERAL.

3.    This Assignment shall be binding upon and inure to the benefit of Assignee, Assignor and their respective successors and assigns.

4.    This Assignment shall be governed by and construed in accordance with the laws of the State of **California**.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*
*(Signature Page Follows)*

Page 2

**IN WITNESS WHEREOF**, this Assignment has been duly executed by Assignor as of the date first above written.

**ASSIGNOR:**

LendingOne, LLC

By: _____ (seal)
**Print Name: Madhav Kandlapalli**
**Title: Authorized Signer**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

STATE OF <u>FLORIDA</u>              )
COUNTY OF <u>BREVARD</u>          )

On _____ March 15 _____, 2018 before me, the undersigned, personally appeared Madhav Kandlapalli, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his/her capacity as Authorized Signer of LendingOne, LLC, and that his/her signature on the instrument, the individual, or the person or entity on behalf of which the individual acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

*(NOTARY SEAL)*

_____
Notary Public Signature
Printed Name: DeNeane Jeanette Guidone

DENEANE JEANETTE GUIDONE
Notary Public - State of Florida
Commission # GG 060433
My Comm. Expires Jan 27, 2021
Bonded through National Notary Assn.

Page 3

## SCHEDULE A

### PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN **LOS ANGELES** COUNTY, STATE OF **CALIFORNIA**, AND IS DESCRIBED AS FOLLOWS:

The land referred to herein below is situated in the City of Los Angeles, County of Los Angeles, State of California, and more particularly described as follows:

Lot 116 of Tract No. 7082 in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 108, Pages 32-36, inclusive, of Maps in the Office of the County Recorder of said County.

APN: ███████

**Property commonly known as: 12125 West Sunset Boulevard, Los Angeles, CA 90049.**

Page 4

EXECUTION COPY

## AMENDMENT NO. 1 TO
## THE AMENDED AND RESTATED TRUST AGREEMENT

Amendment No. 1 to the Amended and Restated Trust Agreement, dated as of December 14, 2017 (this "Amendment"), by and among Toorak Capital Partners Repo Seller I LLC, as depositor ("Repo Seller I"), Toorak Capital Partners LLC, as administrator ("Toorak"), Cortland Capital Market Services LLC, as tax administrator ("Cortland"), and Wilmington Savings Fund Society, FSB, as certificate trustee, Delaware trustee and collateral trustee (the "Trustee"), and consented to by Deutsche Bank AG Cayman Islands Branch (the "Buyer").

## RECITALS

Repo Seller I, Toorak, Cortland and the Trustee are parties to that certain Amended and Restated Trust Agreement, dated as of August 23, 2016 (the "Existing Trust Agreement"; and as subsequently amended by this Amendment, and as may be further amended, supplemented and otherwise modified from time to time, the "Trust Agreement"). Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Existing Trust Agreement.

As of the date hereof, Repo Seller I is the sole Owner under the Trust Agreement.

Repo Seller I, Toorak, Cortland and the Trustee (the "Parties") have agreed, subject to the terms and conditions of this Amendment, that the Existing Trust Agreement be amended to change the name of the Trust set forth in the Trust Agreement to Victoria Capital Trust.

Accordingly, the Parties hereby agree, in consideration of the mutual promises and mutual obligations set forth herein, that the Existing Trust Agreement is hereby amended as follows:

SECTION 1.    Amendments.    Effective as of the date hereof (the "Amendment Effective Date"), the Existing Trust Agreement is hereby amended by replacing all references to "Toorak Repo Seller I Trust" with "Victoria Capital Trust" in the Existing Trust Agreement and each Exhibit attached thereto.

SECTION 2.    Conditions Precedent.    This Amendment shall become effective on the Amendment Effective Date, subject to the satisfaction of the following conditions precedent:

Delivered Documents.  On the Amendment Effective Date, the Trustee shall have received this Amendment, executed and delivered by duly authorized officers, as applicable, of the Parties.

SECTION 3.    Ratification of Agreement.  As amended by this Amendment, the Existing Trust Agreement is in all respects ratified and confirmed and the Existing Trust Agreement as so modified by this Amendment shall be read, taken, and construed as one and the same instrument.

EXHIBIT 3

SECTION 4.    Limited Effect.

(a)    Except as expressly amended and modified by this Amendment, the Trust Agreement shall continue to be, and shall remain, in full force and effect in accordance with its terms.

(b)    Effective as of the date hereof, each of Toorak Repo Seller I Trust, Series 2016-Q3, Toorak Repo Seller I Trust, Series 2016-Q4, Toorak Repo Seller I Trust, Series 2017-Q1, Toorak Repo Seller I Trust, Series 2017-Q2, Toorak Repo Seller I Trust, Series 2017-Q3 and Toorak Repo Seller I Trust, Series 2017-Q4, shall hereinafter be referred to as Victoria Capital Trust, Series 2016-Q3, Victoria Capital Trust, Series 2016-Q4, Victoria Capital Trust, Series 2017-Q1, Victoria Capital Trust, Series 2017-Q2, Victoria Capital Trust, Series 2017-Q3 and Victoria Capital Trust, Series 2017-Q4, respectively.

(c)    Notwithstanding the change to the name of the Trust and each Series pursuant to the terms of this Amendment, (i) each Series and (ii) the Certificates issued pursuant to the terms of the Existing Trust Agreement will continue to be validly issued and entitled to the benefits of the Trust Agreement.

SECTION 5.    Certificate of Trust.    Upon the effectiveness of this Amendment, the Trustee is hereby authorized and directed to execute and file with the Secretary of State of the State of Delaware, a Certificate of Amendment to the Certificate of Trust of the Trust, in the form attached hereto as Exhibit A, in order to effect the change of the name of the Trust to "Victoria Capital Trust".

SECTION 6.    Separate Counterparts and Facsimile.    This Amendment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.    The parties agree that this Amendment, any documents to be delivered pursuant to this Amendment and any notices hereunder may be transmitted between them by email and/or facsimile. The parties intend that faxed signatures and electronically imaged signatures such as PDF files shall constitute original signatures and are binding on all parties.

SECTION 7.    GOVERNING LAW; WAIVER OF JURY TRIAL.    THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS; PROVIDED, HOWEVER, THAT THERE SHALL NOT BE APPLICABLE TO THE PARTIES HEREUNDER OR THIS AMENDMENT ANY PROVISION OF THE LAWS (COMMON OR STATUTORY) OF THE STATE OF DELAWARE PERTAINING TO TRUSTS (OTHER THAN THE STATUTORY TRUST STATUTE) THAT RELATE TO OR REGULATE, IN A MANNER INCONSISTENT WITH THE TERMS HEREOF, (A) THE FILING WITH ANY COURT OR GOVERNMENTAL BODY OR AGENCY OF TRUSTEE ACCOUNTS OR SCHEDULES OF TRUSTEE FEES AND CHARGES, (B) AFFIRMATIVE

REQUIREMENTS TO POST BONDS FOR TRUSTEES, OFFICERS, AGENTS OR EMPLOYEES OF A TRUST, (C) THE NECESSITY FOR OBTAINING COURT OR OTHER GOVERNMENTAL APPROVAL CONCERNING THE ACQUISITION, HOLDING OR DISPOSITION OF REAL OR PERSONAL PROPERTY, (D) FEES OR OTHER SUMS PAYABLE TO TRUSTEES, OFFICERS, AGENTS OR EMPLOYEES OF A TRUST, (E) THE ALLOCATION OF RECEIPTS AND EXPENDITURES TO INCOME OR PRINCIPAL, (F) RESTRICTIONS OR LIMITATIONS ON THE PERMISSIBLE NATURE, AMOUNT OR CONCENTRATION OF TRUST INVESTMENTS OR REQUIREMENTS RELATING TO THE TITLING, STORAGE OR OTHER MANNER OF HOLDING OR INVESTING TRUST ASSETS OR (G) THE ESTABLISHMENT OF FIDUCIARY OR OTHER STANDARDS OF RESPONSIBILITY OR LIMITATIONS ON THE ACTS OR POWERS OF TRUSTEES THAT ARE INCONSISTENT WITH THE LIMITATIONS OR AUTHORITIES AND POWERS OF THE TRUSTEES HEREUNDER AS SET FORTH OR REFERENCED IN THIS AMENDMENT.  SECTION 3540 OF TITLE 12 OF THE DELAWARE CODE SHALL NOT APPLY TO THE TRUST.

EACH PARTY HERETO IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AMENDMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

EACH PARTY HERETO AGREES THAT ANY SUIT, ACTION OR PROCEEDING SEEKING TO ENFORCE ANY PROVISION OF, OR BASED ON ANY MATTER ARISING OUT OF OR IN CONNECTION WITH, THIS AMENDMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE BROUGHT IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE, COUNTY OF NEW CASTLE OR IF SUCH COURT DOES NOT HAVE JURISDICTION OVER THE SUBJECT MATTER OF SUCH PROCEEDING OR IF SUCH JURISDICTION IS NOT AVAILABLE, IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE, AND EACH OF THE PARTIES HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THOSE COURTS (AND OF THE APPROPRIATE APPELLATE COURTS THEREFROM) IN ANY SUIT, ACTION OR PROCEEDING AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUIT, ACTION OR PROCEEDING IN ANY OF THOSE COURTS OR THAT ANY SUIT, ACTION OR PROCEEDING WHICH IS BROUGHT IN ANY OF THOSE COURTS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  EACH OF THE PARTIES HERETO UNCONDITIONALLY AGREES THAT, TO THE EXTENT SUCH PARTY IS NOT OTHERWISE SUBJECT TO SERVICE OF PROCESS IN THE STATE OF DELAWARE, TO APPOINT AND MAINTAIN AN AGENT IN THE STATE OF DELAWARE AS SUCH PARTY'S AGENT FOR ACCEPTANCE OF LEGAL PROCESS. PROCESS IN ANY SUIT, ACTION OR PROCEEDING MAY BE SERVED ON ANY PARTY ANYWHERE IN THE WORLD, WHETHER WITHIN OR WITHOUT THE JURISDICTION OF ANY OF THE NAMED COURTS AND SUCH SERVICE SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HAVE THE SAME LEGAL FORCE AND EFFECT AS IF SERVED UPON SUCH PARTY WITHIN THE STATE OF DELAWARE.

-3-

[SIGNATURE PAGES FOLLOW]

**TOORAK CAPITAL PARTNERS REPO
SELLER I LLC**, as Depositor

By: _____
Name: John Beacham
Title:   Authorized Signatory


**TOORAK CAPITAL PARTNERS LLC**,
as Administrator

By: _____
Name: John Beacham
Title:   Authorized Signatory

*Amendment No. 1 to Amended and Restated Trust Agreement (Toorak-DB Repo Facility)*

63

**WILMINGTON SAVINGS FUND SOCIETY,
FSB,** as Certificate Trustee

By: _____
Name:
Title:        Mary Emily Pagano
              Trust Officer


**WILMINGTON SAVINGS FUND SOCIETY,
FSB,** as Delaware Trustee

By: _____
Name:        Mary Emily Pagano
Title:            Trust Officer


**WILMINGTON SAVINGS FUND SOCIETY,
FSB,** as Collateral Trustee

By: _____
Name:
Title:        Mary Emily Pagano
              Trust Officer


*Amendment No. 1 to Amended and Restated Trust Agreement (Toorak-DB Repo Facility)*

**CORTLAND CAPITAL MARKET SERVICES
LLC,** as Tax Administrator

By: _____
Name:  Emily Ergang Pappas
Title:   Associate Counsel

Consented to and agreed by:

**DEUTSCHE BANK AG, CAYMAN ISLANDS
BRANCH,** as Buyer

By: _____
Name: Mark Ginsberg
         Director
Title:

By: _____
Name: MENAHEM NAMER
Title:    DIRECTOR

*Amendment No. 1 to Amended and Restated Trust Agreement (Toorak-DB Repo Facility)*

Exhibit A

## FORM OF CERTIFICATE OF AMENDMENT TO
## CERTIFICATE OF TRUST
## OF
## TOORAK REPO SELLER I TRUST

THIS Certificate of Amendment to the Certificate of Trust of Toorak Repo Seller I Trust (the "Trust") is being duly executed and filed on behalf of the Trust by the undersigned, as trustee, to change the name of a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 *et seq.*) (as amended from time to time, the "Act").

1.      Name of Statutory Trust.   The name of the statutory trust amended hereby is Toorak Repo Seller I Trust.

2.      Amendment to Certificate.   The Certificate of Trust of the Trust is hereby amended as follows:

Paragraph 1 of the Certificate of Trust is amended to read as follows: "Name. The name of the statutory trust formed hereby is Victoria Capital Trust."

3.      Effective Date.   This Certificate of Amendment to the Certificate of Trust shall be effective upon filing.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with Section 3811(a)(2) of the Act.

Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Delaware Trustee

By:_____
Name:
Title:

A-1

67

Certified to be a true and correct
copy of document
on file at Canon Hills Closings
_____
Canon Hills Closings

## COMMERCIAL PROMISSORY NOTE

This COMMERCIAL PROMISSORY NOTE ("Note") is entered into as of **February 28, 2018,** and FOR VALUE RECEIVED, the undersigned, **OS Susnet LLC, a California limited liability company,** having an address of **427 North Canon Drive, Beverly Hills, CA 90210** ("Maker"), promises to pay to the order of LendingOne, LLC at its principal place of business at 901 Northwest 51st Street, Boca Raton, FL 33431 ("Lender"), or at such other place as the holder hereof may designate, the principal sum of **THREE MILLION SEVEN HUNDRED EIGHTY THOUSAND DOLLARS ($3,780,000.00)** with interest on said unpaid balance computed from the date or dates of advance made to Borrower pursuant to this Note and, if applicable, that certain Construction Loan Agreement ("Loan Agreement") of even date herewith made between Maker and Lender, together with all taxes assessed upon this Note and together with any costs, expenses, and reasonable attorney's fees incurred in the collection of this Note or in protecting, maintaining, or enforcing its security interest or any mortgage, deed of trust or other instrument securing this Note or upon any litigation or controversy affecting this Note or the security given therefor, including, without limitation, proceedings under the United States Bankruptcy Code. Capitalized terms not defined herein shall have the respective meaning ascribed to them as set forth in the Security Instrument (as defined below).

1.    **Payments.** Principal and interest hereunder shall be payable as follows:

    1.1.    From the date hereof, interest on the outstanding unpaid principal balance of the Note shall accrue at the fixed rate of **NINE AND TWENTY-FIVE HUNDREDTHS PERCENT (9.25%)** per annum (the "Interest Rate"), for the period beginning on and including the date hereof to and excluding the Maturity Date, and shall be payable at the closing of the Loan.

    1.2.    Interest on this Note shall remain effective until an Event of Default and shall be calculated daily on the basis of a 365-day calendar year.

    1.3.    Maker shall pay to Lender upon closing prepaid interest in an amount equal to the earned interest from the date of this Note through and including the last date of the current calendar month as set forth on the related HUD-1 Settlement Statement / Closing Disclosure dated of even date herewith.

    1.4.    Beginning on **April 1, 2018** and continuing on the 1st day of each and every month thereafter through and including the payment due on **March 1, 2019** ("Maturity Date"), Maker shall make payments of interest only, in arrears, on the outstanding principal balance of the Note at the Interest Rate. In the event Maker fails to make a payment within five (5) days of the date such payment becomes due, Lender shall have the option, exercisable in its sole discretion, to require interest payments to be paid weekly, in arrears, on the Wednesday of each week during the term of the Loan.

    1.5.    Interest Reserves.    The amount of **ONE HUNDRED TWENTY THOUSAND DOLLARS ($120,000.00)** shall be disbursed by Lender on behalf of Borrower and simultaneously paid by Borrower to Lender upon closing ("Interest Reserves"), which shall be credited against monthly interest payments due under the terms of this Note, as such interest payments become due on the first day of each and every month commencing on **April 1, 2018,** and continuing until the Interest Reserves are fully depleted. Thereafter, Borrower shall pay to Lender the remaining monthly interest payments as further set forth herein.

EXHIBIT 4

**1.6.** If not sooner paid, the entire balance due, principal, accrued interest, and together with all other sums due hereunder, shall be due and payable in full on the Maturity Date. It is understood and agreed by Maker that if sufficient prepayments of principal have not been made, a balloon payment of the entire remaining principal balance will be due on the Maturity Date.

**1.7.** All payments received will be credited first to late charges and costs hereunder, then to interest accrued at the applicable interest rate set forth herein, with the balance on account of principal, unless otherwise determined by Lender in its sole discretion.

**2.** **Security.** This Note is secured by a first priority **Open-End Commercial Deed of Trust, Security Agreement and Fixture Filing** (the "Security Instrument") on that certain piece or parcel of real property commonly known as **12125 West Sunset Boulevard, Los Angeles, CA 90049** being more specifically described on Schedule A of said Security Instrument.

**3.** **Default.** If any of the following events occur (each, an "Event of Default"), Lender may declare the entire outstanding principal balance hereof, together with any other amounts that Maker owes to Lender, to be immediately due and payable:

**3.1.** Maker fails to pay any installment of principal and/or interest or any other charges due under this Note within five (5) days after the same becomes due and payable;

**3.2.** Maker defaults (and fails to timely cure, as applicable) in any other obligations, liabilities, or indebtedness with Lender (whether now existing or hereafter arising) including, without limitation, Maker's default under the Security Instrument or Loan Agreement;

**3.3.** Maker, without Lender's prior written consent, sells or otherwise disposes of all or substantially all of its property, assets, or business, or if Maker ceases any of its business operations, dissolves, or commences reorganization;

**3.4.** Maker makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in bankruptcy, or conservator appointed for it or for substantially all or any of its assets;

**3.5.** Maker files or becomes the subject of a petition in bankruptcy or upon the commencement of any proceeding or action under any bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting Maker, provided, however, that Maker shall have sixty (60) days from the filing of any involuntary petition in bankruptcy to have the same discharged and dismissed;

**3.6.** Upon the failure by Maker to observe or perform, or upon default (and failure to timely cure) in, any covenants, agreements, or provisions in the Security Instrument, any other Loan Document or in any other instrument, document, or agreement, executed and/or delivered in connection herewith or therewith;

**3.7.** Any representation or statement made herein or any other representation or statement made or furnished to Lender by Maker was materially incorrect or misleading at the time it was made or furnished;

**3.8.** In the event of any material adverse change in the financial condition of Maker or any Guarantor of the Loan; or

**3.9.**    Upon the death of any Guarantor of the Loan.

**4.    Default Rate.** After the occurrence of an Event of Default, interest will accrue at the lesser of (i) **THIRTY-FIVE PERCENT (35.00%)** per annum or (ii) the Maximum Rate (as defined in Section 5) allowed by applicable law. Interest will continue to accrue at the Default Rate after judgment until the Note is paid in full.

**5.    Maximum Rate.** Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid or agreed to be paid hereunder exceed the highest lawful rate permitted under applicable usury law (the "Maximum Rate") and the payment obligations of Maker under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the maturity of the unpaid principal balance hereof or otherwise, the aggregate amounts paid on this Note shall include amounts which by law are deemed interest and that would exceed the Maximum Rate, Maker stipulates that payment and collection of such excess amounts shall have been and will be deemed to have been the result of a mistake on the part of both Maker and the holder of this Note, and the party receiving such excess payments shall promptly credit such excess (to the extent only of such payments in excess of Maximum Rate) against the unpaid principal balance hereof and any portion of such excess payments not capable of being so credited shall be refunded to Maker.

**6.    Prepayment.** Provided that Maker is not in default hereunder, Maker may prepay all or any portion of the unpaid principal balance of this Note at any time. All prepayment shall be applied first to any costs or charges due hereunder, then to interest due and owing hereunder, and then to principal then outstanding, in inverse order of maturity, unless Lender determines otherwise in its sole discretion.

**7.    Late Charge.** It is further agreed that the holder hereof may collect a late charge equal to ten percent (10%) of any payment required hereunder or required under any security agreement, mortgage, deed of trust, or any other instrument, document, or agreement executed and/or delivered in connection herewith that is not paid within five (5) calendar days of the due date thereof, other than the final entire balance due as set forth in Section 1.5 above, including unpaid principal, accrued interest, and together with all other sums due hereunder, which if not paid in full on or before the Maturity Date, Lender may collect a late charge equal to one percent (1%) of such total amount. This late charge is to cover the extra expenses involved in handling delinquent payments and is not to be construed to cover other costs and attorney's fees incurred in any action to collect this Note or to foreclose the Security Instrument securing the same. This provision shall not affect or limit the holder's rights or remedies with respect to any Event of Default.

**8.    Lien/Set Off.** Maker hereby gives the holder hereof a lien and right of set off for all of Maker's liabilities to the holder hereof or Lender upon and against all deposits, credits, and other property of Maker now or hereafter in the possession or control of the holder hereof, or in transit to it, excepting however, funds held in trust by Maker. All payments shall be made in lawful currency of the United States of America in immediately available funds, without abatement, counterclaim, or set-off, and free and clear of, and without any deduction or withholding for, any taxes or other matters.

**9.    Commercial Purpose of Loan; Use of Loan Proceeds.** Maker represents and warrants that the proceeds of this Note are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Maker acknowledges that Lender is making the Loan to Maker in reliance upon the above representation by Maker. The above representation by Maker will survive the closing of the Loan and repayment of amounts due to Lender hereunder.

**10.    Other Obligations.** To the extent that the outstanding balance of this Note is reduced or paid in full by reason of any payment to Lender by an accommodation of Maker, endorser, or Guarantor, and all or any part of such payment is rescinded, avoided, or recovered from Lender for any reason whatsoever, including, without limitation, any proceedings in connection with the insolvency, bankruptcy, or reorganization of the accommodation maker, endorser, or Guarantor, the amount of such rescinded, avoided, or returned payment shall be added to or, in the event this Note has been previously paid in full, shall revive the principal balance of this Note upon which interest may be charged at the applicable rate set forth in this Note and shall be considered part of the outstanding balance of this Note and all terms and provisions herein shall thereafter apply to the same.

**11.    Waiver.** MAKER (AND EACH AND EVERY ENDORSER, GUARANTOR, AND SURETY OF THIS NOTE) ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION, AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVES THE RIGHT TO NOTICE AND HEARING, and further waives diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest and notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agrees that the time for payment of this Note may be changed and extended as provided in said mortgage, deed of trust, or any security agreement, without impairing Maker's liability thereon, and further consents to the release of all or any part of the security for the payment hereof, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of the holder hereof in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as waiver in the event of any subsequent default. MAKER FURTHER WAIVES TRIAL BY JURY AND ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY, AND ONLY AFTER CONSIDERATION OF THE RAMIFICATIONS OF THE WAIVER BY ITS ATTORNEY.

**12.    Binding Effect.** This Note shall be binding on Maker, its successors and assigns and shall inure to the benefit of Lender, any holder hereof, its successors and assigns.

**13.    Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of **California**, without reference to conflicts of laws principals thereof.

**14.    Jurisdiction.** AT LENDER'S ELECTION, TO BE ENTERED IN ITS SOLE DISCRETION, ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BORROWER OR LENDER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN **CALIFORNIA**, AND BORROWER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

**15.    Joint and Several.** Should this Note be signed by more than one Maker, references in this Note to Maker in the singular shall include the plural and all obligations herein contained shall be joint and several of each signer hereof.

**16.    Rights Cumulative.** The rights and remedies of Lender shall be cumulative and not in the alternative, and shall include all rights and remedies granted herein, in any document referred to herein or executed, and/or delivered in connection herewith, and under all applicable laws, and the exercise of any one or more of them will not be a waiver of any other.

Page 4

17.    **Severability.**  If any term, clause, or provision hereof shall be adjudged to be invalid or unenforceable by a court of appropriate jurisdiction, the validity and enforceability of the remainder shall not affected thereby and each such term, clause, or provision shall be valid and enforceable to the fullest extent permitted by law.

Page 5

**IN WITNESS WHEREOF,** this Promissory Note has been duly executed by Maker as of the date first above written.

**MAKER:**

**OS Susnet LLC,**
**a California limited liability company**

By: _____ (seal)

   Name: Danny Siag
   Title: **Manager**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

STATE OF *California* )
COUNTY OF *Los Angeles* )

On *2/28*, **2018** before me, the undersigned, personally appeared **Danny Siag**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his/her capacity as **Manager** of **OS Susnet LLC, a California limited liability company,** and that his/her signature on the instrument, the individual, or the person or entity on behalf of which the individual acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

*(NOTARY SEAL)*

Notary Public Signature: _____

Printed Name: *Pele Nicole Keith*

PELE NICOLE KEITH
Notary Public – California
Los Angeles County
Commission # 2223955
My Comm. Expires Dec 2, 2021

## ALLONGE

THIS ALLONGE ("Allonge") is made effective as of _____ March 15 _____, **2018** by LendingOne, LLC ("Seller"), and is attached to and made part of the following instrument:

That certain Commercial Promissory Note signed by **OS Susnet, LLC**, dated **February 28, 2018**, in the original principal amount of **$3,780,000.00**, regarding that certain real property commonly known as **12125 Sunset Boulevard, Los Angeles, CA 90049** as more particularly described on Schedule A attached to that certain Mortgage, Deed of Trust or Deed to Secure Debt dated of even date herewith and incorporated herein by this reference.

For the purpose of annexing thereto the following endorsement:

Pay to the order of _____ TOORAK Repo Seller I Trust, a Delaware Statutory Trust _____, its successors and assigns, WITHOUT REPRESENTATION, WARRANTY OR RECOURSE OF ANY NATURE WHATSOEVER, WHETHER EXPRESSED OR IMPLIED.

### SELLER:

**LendingOne, LLC,**

By: _____

Print Name: Madhav Kandlapalli

Title: Authorized Signer

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

STATE OF <u>FLORIDA</u>                )

COUNTY OF <u>BREVARD</u>           )

On _____ March 15 _____, 2018 before me, the undersigned, personally appeared Madhav Kandlapalli, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Authorized Signer of LendingOne, LLC, and that his signature on the instrument, the individual, or the person or entity on behalf of which the individual acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

*(NOTARY SEAL)*

> DENEANE JEANETTE GUIDONE
> Notary Public - State of Florida
> Commission # GG 060433
> My Comm. Expires Jan 27, 2021
> Bonded through National Notary Assn.

Notary Public Signature

Printed Name: DeNeane Jeanette Guidone

Page 1

**Fill in this information to identify the case:**

Debtor name: **OS Susnet, LLC**

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number (if known): **2:20-bk-16399-BR**

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property
12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:    Cash and cash equivalents**

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.
☑ Yes Fill in the information below.

**All cash or cash equivalents owned or controlled by the debtor**

Current value of debtor's interest

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **One West Bank with account ending in 1032** | **Checking** | ▇▇ | **$5,406.31** |

4. **Other cash equivalents** *(Identify all)*

| | | |
|---|---|---|
| 4.1. | **Post-petition withdrawal in favor of The Blvd. Agency, Inc.** | **$10,000.00** |

5. **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

**$15,406.31**

**Part 2:    Deposits and Prepayments**

6. Does the debtor have any deposits or prepayments?

☑ No. Go to Part 3.
☐ Yes Fill in the information below.

**Part 3:    Accounts receivable**

10. Does the debtor have any accounts receivable?

☑ No. Go to Part 4.
☐ Yes Fill in the information below.

**Part 4:    Investments**

75                EXHIBIT 5

| Debtor | **OS Susnet, LLC** | Case number *(If known)* **2:20-bk-16399-BR** |
|---|---|---|
| | Name | |

**13. Does the debtor own any investments?**

■ No. Go to Part 5.
□ Yes Fill in the information below.

| **Part 5:** | **Inventory, excluding agriculture assets** |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
□ Yes Fill in the information below.

| **Part 6:** | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.
□ Yes Fill in the information below.

| **Part 7:** | **Office furniture, fixtures, and equipment; and collectibles** |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No. Go to Part 8.
□ Yes Fill in the information below.

| **Part 8:** | **Machinery, equipment, and vehicles** |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No. Go to Part 9.
□ Yes Fill in the information below.

| **Part 9:** | **Real property** |
|---|---|

**54. Does the debtor own or lease any real property?**

□ No. Go to Part 10.
■ Yes Fill in the information below.

55.    Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1. **Single Family Residence 12125 West Sunset Blvd., Los Angeles, CA 90049** | Fee simple | $0.00 | Expert | $6,850,000.00 |

56.    **Total of Part 9.**
Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
Copy the total to line 88.

| | **$6,850,000.00** |
|---|---|

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 2

| Debtor | **OS Susnet, LLC** | Case number *(If known)* **2:20-bk-16399-BR** |
|--------|--------------------|-----------------------------------------------|
|        | Name               |                                               |

57.    **Is a depreciation schedule available for any of the property listed in Part 9?**
    ■ No
    ☐ Yes

58.    **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
    ■ No
    ☐ Yes

**Part 10:    Intangibles and intellectual property**

**59. Does the debtor have any interests in intangibles or intellectual property?**

    ■ No. Go to Part 11.
    ☐ Yes Fill in the information below.

**Part 11:    All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

    ■ No. Go to Part 12.
    ☐ Yes Fill in the information below.

---

Official Form 206A/B        Schedule A/B Assets - Real and Personal Property        page 3

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

Debtor   **OS Susnet, LLC**                                                    Case number *(If known)*  **2:20-bk-16399-BR**
_____
Name

| | | |
|---|---|---|
| **Part 12:**   Summary | | |

In Part 12 copy all of the totals from the earlier parts of the form

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80.  **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $15,406.31 | |
| 81.  **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82.  **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83.  **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84.  **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85.  **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86.  **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87.  **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88.  **Real property.** *Copy line 56, Part 9*....................................> | | $6,850,000.00 |
| 89.  **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90.  **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91.  **Total.** Add lines 80 through 90 for each column | $15,406.31  + 91b. | $6,850,000.00 |
| 92.  **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $6,865,406.31 |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                 Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name  **OS Susnet, LLC**

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)  **2:20-bk-16399-BR**

☐ Check if this is an
amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

**2.** List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br><br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.1  Cohen Financial**<br>Creditor's Name<br><br>**4601 College Blvd., Suite 300**<br>**Leawood, KS 66211**<br>Creditor's mailing address<br><br><br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br>**03/07/2018**<br>**Last 4 digits of account number**<br>**3604**<br>**Do multiple creditors have an interest in the same property?**<br>☐ No<br><br>■ Yes. Specify each creditor, including this creditor and its relative priority.<br>**1. Cohen Financial**<br>**2. Ezra Ozeri**<br>**3. OSB Investment, LLC**<br>**4. The Blvd. Agency, Inc.**<br>**5. Mega Holding Group, LLC** | Describe debtor's property that is subject to a lien<br>**Single Family Residence**<br>**12125 West Sunset Blvd., Los Angeles, CA 90049**<br><br>Describe the lien<br>**Deed of Trust**<br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>■ No<br>☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$3,780,000.00** | **$6,850,000.00** |
| **2.2  Ezra Ozeri**<br>Creditor's Name<br><br>**23042 Park Sorrento**<br>**Calabasas, CA 91302**<br>Creditor's mailing address<br><br><br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br>**02/28/2018** | Describe debtor's property that is subject to a lien<br>**Single Family Residence**<br>**12125 West Sunset Blvd., Los Angeles, CA 90049**<br><br>Describe the lien<br>**Deed of Trust**<br>Is the creditor an insider or related party?<br>☐ No<br>■ Yes<br>Is anyone else liable on this claim?<br>■ No<br>☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H) | **$775,000.00** | **$6,850,000.00** |

Official Form 206D              Schedule D: Creditors Who Have Claims Secured by Property                            page 1 of 3

| Debtor | **OS Susnet, LLC** | | Case number *(if known)* | **2:20-bk-16399-BR** |
|---|---|---|---|---|
| | Name | | | |

**Last 4 digits of account number**
**OS Susnet, LLC**

| | | **As of the petition filing date, the claim is:** |
|---|---|---|
| **Do multiple creditors have an interest in the same property?** | | Check all that apply |
| ☐ No | | ☐ Contingent |
| ■ Yes. Specify each creditor, including this creditor and its relative priority. | | ☐ Unliquidated |
| **Specified on line 2.1** | | ☐ Disputed |

---

| 2.3 | **Mega Holding Group, LLC** | **Describe debtor's property that is subject to a lien** | **$1,000,000.00** | **$6,850,000.00** |
|---|---|---|---|---|
| | Creditor's Name | **Single Family Residence** | | |
| | **8950 W Olympic Blvd. # 528** | **12125 West Sunset Blvd., Los Angeles, CA 90049** | | |
| | **Beverly Hills, CA 90211** | | | |
| | Creditor's mailing address | **Describe the lien** | | |
| | | **Deed of Trust** | | |
| | | **Is the creditor an insider or related party?** | | |
| | | ☐ No | | |
| | Creditor's email address, if known | ■ Yes | | |
| | | **Is anyone else liable on this claim?** | | |
| | **Date debt was incurred** | ■ No | | |
| | **02/14/2020** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Last 4 digits of account number** | | | |
| | **OS Susnet LLC** | | | |

| | | **As of the petition filing date, the claim is:** |
|---|---|---|
| **Do multiple creditors have an interest in the same property?** | | Check all that apply |
| ☐ No | | ☐ Contingent |
| ■ Yes. Specify each creditor, including this creditor and its relative priority. | | ☐ Unliquidated |
| **Specified on line 2.1** | | ■ Disputed |

---

| 2.4 | **OSB Investment, LLC** | **Describe debtor's property that is subject to a lien** | **$477,361.73** | **$6,850,000.00** |
|---|---|---|---|---|
| | Creditor's Name | **Single Family Residence** | | |
| | **8950 W Olympic Blvd., #528** | **12125 West Sunset Blvd., Los Angeles, CA 90049** | | |
| | **Beverly Hills, CA 90210** | | | |
| | Creditor's mailing address | **Describe the lien** | | |
| | | **Line of Credit** | | |
| | | **Is the creditor an insider or related party?** | | |
| | | ☐ No | | |
| | Creditor's email address, if known | ■ Yes | | |
| | | **Is anyone else liable on this claim?** | | |
| | **Date debt was incurred** | ■ No | | |
| | **03/01/2018** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | **Last 4 digits of account number** | | | |
| | **OS Sunset, LLC** | | | |

| | | **As of the petition filing date, the claim is:** |
|---|---|---|
| **Do multiple creditors have an interest in the same property?** | | Check all that apply |
| ☐ No | | ☐ Contingent |
| ■ Yes. Specify each creditor, including this creditor and its relative priority. | | ☐ Unliquidated |
| **Specified on line 2.1** | | ■ Disputed |

---

| 2.5 | **The Blvd. Agency, Inc.** | **Describe debtor's property that is subject to a lien** | **$262,560.00** | **$6,850,000.00** |
|---|---|---|---|---|
| | Creditor's Name | **Single Family Residence** | | |
| | **8950 W. Olympic Blvd. # 528** | **12125 West Sunset Blvd., Los Angeles, CA 90049** | | |
| | **Beverly Hills, CA 90210** | | | |
| | Creditor's mailing address | **Describe the lien** | | |

---

Official Form 206D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 3

| Debtor | OS Susnet, LLC | | Case number (if known) | 2:20-bk-16399-BR |
|---|---|---|---|---|
| | Name | | | |

**Line of Credit**

**Is the creditor an insider or related party?**

☐ No

■ Yes

**Is anyone else liable on this claim?**

Creditor's email address, if known

**Date debt was incurred**

**03/01/2018**

**Last 4 digits of account number**

**OS Sunset, LLC**

☐ No

☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Do multiple creditors have an interest in the same property?**

☐ No

■ Yes. Specify each creditor, including this creditor and its relative priority.

**Specified on line 2.1**

**As of the petition filing date, the claim is:**

Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

---

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.

| $6,294,921.73 |
|---|

**Part 2:** List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **Danny Siag**<br>**Agent for Service of Process**<br>**8950 W Olympic Blvd. # 528**<br>**Beverly Hills, CA 90211** | Line **2.4** | |
| **Danny Siag - Manager and**<br>**Agent for Service of Process**<br>**8950 W Olympic Blvd. # 528**<br>**Beverly Hills, CA 90211** | Line **2.5** | |
| **Danny Siag - Manager and**<br>**Agent for Service of Process**<br>**8950 W Olympic Blvd. # 528**<br>**Beverly Hills, CA 90211** | Line **2.3** | |
| **Quality Loan Service Corpoaration**<br>**2763 Camino Del Rio South**<br>**San Diego, CA 92108** | Line **2.1** | **51NJ** |