

## THEIS
Law Group, PC

**VIA EMAIL TO ERIC@EBLAWFIRM.US AND FIRST-CLASS MAIL**

September 11, 2020

Eric Bensamochan, Esq.
Bensamochan Firm, Inc.
30851 Agoura Rd. Suite 114
Agoura Hills CA 91301

Re:    **Termination; Demand to Cease and Desist** re: OS Susnet LLC

Dear Mr. Bensamochan:

This office represents Danny Siag and Osnath Siag. We are in receipt of an email message from you to Mr. Siag dated August 7, 2020 regarding OS Susnet LLC ("OS Susnet"). We have also become aware that your office has filed a bankruptcy petition, *In Re OS Susnet*, CACB Case No. 2:20-bk-16399-BR (the "Bankruptcy Case"), purporting to represent OS Susnet.

Contrary to the assertions in your August 7 email message and elsewhere, Mr. Erza Ouzeri is not a manager of OS Susnet. Rather, Mr. and Ms. Siag are the only managers. (See the operating Agreement for OS Susnet, attached as Exhibit 1, hereinafter the "Agreement," at p.15.) Per paragraph 4.1 of the Agreement, control over the affairs of OS Susnet is vested solely in the Board of Managers, which consists solely of Mr. and Ms. Siag.

Your August 7 email alleges: "*pursuant to the last statement of information filed with the California Secretary of State, Mr. Ozeri is a member and manager, duly authorized to make decisions on behalf of the LLC. In fact, he is the majority member.*" There are several false statements and incorrect legal conclusions in those two sentences, which I will now correct.

Mr. Bensamochan, September 11, 2020
Page 2 of 3

First of all, the Statement of Information does not determine the executive control of an LLC. Rather, "any matter relating to the activities of the [manager-managed] limited liability company is decided *exclusively by the managers*." Corps.C. § 17704.07 (c)(1), emph. added. Additionally, as explained above, paragraph 4.1(A)'s vestment of executive control exclusively in the Board of Managers means that Mr. Ozeri is not "authorized to make decisions on behalf of the LLC," because he is not on the Board.

Moreover, Mr. Ozeri is not "a member and manager," as you write. The header of Section D of OS Susnet's 2019 Statement of Information (copy attached, marked Exhibit 2) reads "manager(s) or member(s)," i.e. it is disjunctive, so that any individuals listed in that section could be *either* of those (and Mr. Ozeri is only a *member*). And finally, Mr. Ozeri is not "the majority member," but rather owns only 50%. (See attached meeting minutes dated February 18, 2011, attached and marked Exhibit 3.) Mr. Ozeri has no authority to bind OS Susnet or take any actions on its behalf.

To the extent that Mr. Ozeri or any other person has purported to hire you on behalf of OS Susnet, your services are hereby terminated, as confirmed by the attached letter from Danny Siag (Exhibit 4 hereto). **You are directed to immediately cease and desist taking any and all actions, including filings in the Bankruptcy Case, that purport to be on behalf of OS Susnet.** If you continue to represent to any person that Mr. Ozeri has any executive control over OS Susnet in any capacity, including any representation that he is a "manager" or that he is the "majority member," you will be making a demonstrably false statement.

Finally, OS Susnet directs you to sign, date, and return the attached substitution of attorney document (Exhibit 5 hereto) forthwith, naming attorney Bahram Madaen as counsel of record in the Bankruptcy Case.

Please advise ASAP as to whether your office also represents Mr. Ozeri, or if you know of any such representation by counsel. Unless we hear from you immediately, we believe him to be unrepresented by counsel and will directly communicate with him.

Please respond by no later than September 15, 2020, and unequivocally confirm that your office will comply with this letter and return the executed substitution of attorney document by mail or email.

Yours very truly,

Bryan K. Theis, Esq.
Attorney for Danny and Osnath Siag

Mr. Bensamochan, September 11, 2020
Page 3 of 3

*Enclosures, marked as Exhibits 1-5:*

*(1) Operating Agreement for OS Susnet (15 pages incl. Exhibits A, B);*

*(2) 2019 Statement of Information for OS Susnet (2 pages);*

*(3) Meeting Minutes, OS Susnet dated February 18, 2011 (4 pages);*

*(4) September 11, 2020 letter from Danny Siag (1 page);*

*(5) Substitution of Attorney form for Bankruptcy Case (3 pages)*

**Operating Agreement**

**OS Susnet LLC,**
**a California Limited Liability Company**

THIS OPERATING AGREEMENT of OS Susnet LLC (the "Company") is entered into as of the date set forth on the signature page of this Agreement by each of the Members listed on Exhibit A of this Agreement.

A.    The Members have formed the Company as a California limited liability company under the California Revised Uniform Limited Liability Company Act. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized under the laws of the state of California. The Members hereby adopt and approve the articles of organization of the Company filed with the California Secretary of State.

B.    The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

## ARTICLE 1: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article 1 or elsewhere in this Agreement and if not so specified, have the meanings set forth in the California Revised Uniform Limited Liability Company Act.

"Agreement" means this Operating Agreement of the Company, as may be amended from time to time.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of income and gain, (2) decreased by such Member's share of losses and deductions, (3) decreased by any distributions made by the Company to such Member, and (4) otherwise adjusted as required in accordance with applicable tax laws.

"Capital Contribution" means, with respect to any Member, the total value of (1) cash and the fair market value of property other than cash and (2) services that are contributed and/or agreed to be contributed to the Company by such Member, as listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement.

"Exhibit" means a document attached to this Agreement labeled as "Exhibit A," "Exhibit B," and so forth, as such document may be amended, updated, or replaced from time to time according to the terms of this Agreement.

"Manager" means each Person who has authority to manage the business and affairs of the Company pursuant to this Agreement; such Persons are listed on Exhibit B, as may be updated from time to time according to the terms of this Agreement. A Manager may be, but is not required to be, a Member.

"Member" means each Person who acquires Membership Interest pursuant to this Agreement. The Members are listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement. Each Member has the rights and obligations specified in this Agreement.

"Membership Interest" means the entire ownership interest of a Member in the Company at any particular time, including the right to any and all benefits to which a Member may be entitled as provided in this Agreement and under the California Revised Uniform Limited Liability Company Act, together with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

"Ownership Interest" means the Percentage Interest or Units, as applicable, based on the manner in which relative ownership of the Company is divided.

"Percentage Interest" means the percentage of ownership in the Company that, with respect to each Member, entitles the Member to a Membership Interest and is expressed as either:

A.      If ownership in the Company is expressed in terms of percentage, the percentage set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement; or

B.      If ownership in the Company is expressed in Units, the ratio, expressed as a percentage, of:

(1)     the number of Units owned by the Member (expressed as "MU" in the equation below) divided by

(2)     the total number of Units owned by all of the Members of the Company (expressed as "TU" in the equation below).

Percentage Interest = $\dfrac{MU}{TU}$

"Person" means an individual (natural person), partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

"Units" mean, if ownership in the Company is expressed in Units, units of ownership in the Company, that, with respect to each Member, entitles the Member to a Membership Interest which, if applicable, is expressed as the number of Units set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement.

## ARTICLE 2: CAPITAL CONTRIBUTIONS, ADDITIONAL MEMBERS, CAPITAL ACCOUNTS AND LIMITED LIABILITY

2.1 **Initial Capital Contributions**. The names of all Members and each of their respective addresses, initial Capital Contributions, and Ownership Interests must be set forth on Exhibit A. Each Member has made or agrees to make the initial Capital Contribution set forth next to such Member's name on Exhibit A to become a Member of the Company.

2.2 **Subsequent Capital Contributions**. Members are not obligated to make additional Capital Contributions unless unanimously agreed by all the Members. If subsequent Capital Contributions are unanimously agreed by all the Members in a consent in writing, the Members may make such additional Capital Contributions on a pro rata basis in accordance with each Member's respective Percentage Interest or as otherwise unanimously agreed by the Members.

2.3  **Additional Members.**

A.      With the exception of a transfer of interest (1) governed by Article 7 of this Agreement or (2) otherwise expressly authorized by this Agreement, additional Persons may become Members of the Company and be issued additional Ownership Interests only if approved by and on terms determined by a unanimous written agreement signed by all of the existing Members.

B.      Before a Person may be admitted as a Member of the Company, that Person must sign and deliver to the Company the documents and instruments, in the form and containing the information required by the Company, that the Managers deem necessary or desirable. Membership Interests of new Members will be allocated according to the terms of this Agreement.

2.4  **Capital Accounts.** Individual Capital Accounts must be maintained for each Member, unless (a) there is only one Member of the Company and (b) the Company is exempt according to applicable tax laws. Capital Accounts must be maintained in accordance with all applicable tax laws.

2.5  **Interest.** No interest will be paid by the Company or otherwise on Capital Contributions or on the balance of a Member's Capital Account.

2.6  **Limited Liability; No Authority.** A Member will not be bound by, or be personally liable for, the expenses, liabilities, debts, contracts, or obligations of the Company, except as otherwise provided in this Agreement or as required by the California Revised Uniform Limited Liability Company Act. Unless expressly provided in this Agreement, no Member, acting alone, has any authority to undertake or assume any obligation, debt, or responsibility, or otherwise act on behalf of, the Company or any other Member.

ARTICLE 3: ALLOCATIONS AND DISTRIBUTIONS

3.1  **Allocations.** Unless otherwise agreed to by the unanimous consent of the Members any income, gain, loss, deduction, or credit of the Company will be allocated for accounting and tax purposes on a pro rata basis in proportion to the respective Percentage Interest held by each Member and in compliance with applicable tax laws.

3.2  **Distributions**. The Company will have the right to make distributions of cash and property to the Members on a pro rata basis in proportion to the respective Percentage Interest held by each Member. The timing and amount of distributions will be determined by the Managers in accordance with the California Revised Uniform Limited Liability Company Act.

3.3  **Limitations on Distributions**. The Company must not make a distribution to a Member if, after giving effect to the distribution:

A.      The Company would be unable to pay its debts as they become due in the usual course of business; or

B.      The fair value of the Company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of Members, if any, whose preferential rights are superior to those of the Members receiving the distribution.

ARTICLE 4: MANAGEMENT

4.1  **Management**.

A.      **Generally**. Subject to the terms of this Agreement and the California Revised Uniform Limited Liability Company Act, the business and affairs of the Company will be managed by the Board of Managers, as further described below. The Members initially nominate and elect the Person(s) set forth on Exhibit B to serve as the Manager(s) of the Company. The Managers will act under the direction of the Members and may be elected or removed at any time, for any reason or no reason, by the Members holding a majority of the Voting Interest of the Company. Exhibit B must be amended to reflect any changes in Managers.

B.      **Approval and Action**. Unless greater or other authorization is required pursuant to this Agreement or under the California Revised Uniform Limited Liability Company Act for the Company to engage in an activity or transaction, all activities or transactions must be approved by a majority of Managers, to constitute the act of the Company or serve to bind the Company, but if the Managers cannot reach a majority vote, the dispute will be submitted to the Members to be resolved by the affirmative vote of the Members holding at least a majority of the Voting Interest of the Company. With such approval, the signature of any Managers authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so

-5-

approved. Without such approval, no Managers acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to so bind the Company.

    C.    **Certain Decisions Requiring Greater Authorization**. Notwithstanding clause B above, the following matters require unanimous approval of the Members in a consent in writing to constitute an act of the Company:

    (i)    A material change in the purposes or the nature of the Company's business;

    (ii)    With the exception of a transfer of interest governed by Article 7 of this Agreement, the admission of a new Member or a change in any Member's Membership Interest, Ownership Interest, Percentage Interest, or Voting Interest in any manner other than in accordance with this Agreement;

    (iii)    A merger or conversion under the California Revised Uniform Limited Liability Company Act;

    (iv)    Any other act outside the ordinary course of the Company's activities;

    (v)    The sale, lease, exchange, or other disposition of all, or substantially all, of the Company's property, with or without goodwill, outside the ordinary course of the Company's activities; and

    (vi)    The amendment of this Agreement.

    4.2  **Meetings of Managers**. Regular meetings of the Managers are not required but may be held at such time and place as the Managers deem necessary or desirable for the reasonable management of the Company. Meetings may take place in person, by conference call, or by any other means permitted under the California Revised Uniform Limited Liability Company Act. In addition, Company actions requiring a vote may be carried out without a meeting if all of the Managers consent in writing to approve the action.

    4.3  **Officers**. The Managers are authorized to appoint one or more officers from time to time. The officers will have the titles, the authority, exercise the powers, and perform the duties that the Managers determine from time to time. Each officer will continue to perform and hold office until such time as (a) the officer's successor is

chosen and appointed by the Managers; or (b) the officer is dismissed or terminated by the Managers, which termination will be subject to applicable law and, if an effective employment agreement exists between the officer and the Company, the employment agreement. Subject to applicable law and the employment agreement (if any), each officer will serve at the direction of Managers, and may be terminated, at any time and for any reason, by the Managers.

## ARTICLE 5: ACCOUNTS AND ACCOUNTING

5.1 **Accounts**. The Company must maintain complete accounting records of the Company's business, including a full and accurate record of each Company transaction. The records must be kept at the Company's principal executive office and must be open to inspection and copying by Members during normal business hours upon reasonable notice by the Members wishing to inspect or copy the records or their authorized representatives, for purposes reasonably related to the Membership Interest of such Members. The costs of inspection and copying will be borne by the respective Member.

5.2 **Records**. The Managers will keep or cause the Company to keep the following business records.

(i)     An up to date list of the Members, each of their respective full legal names, last known business or residence address, Capital Contributions, the amount and terms of any agreed upon future Capital Contributions, and Ownership Interests, and Voting Interests;

(ii)    A copy of the Company's federal, state, and local tax information and income tax returns and reports, if any, for the six most recent taxable years;

(iii)   A copy of the articles of organization of the Company, as may be amended from time to time ("Articles of Organization"); and

(iv)    An original signed copy, which may include counterpart signatures, of this Agreement, and any amendments to this Agreement, signed by all then-current Members.

5.3 **Income Tax Returns.** Within 45 days after the end of each taxable year, the Company will use its best efforts to send each of the Members all information necessary for the Members to complete their federal and state tax information, returns, and reports and a copy of the Company's federal, state, and local tax information or income tax returns and reports for such year.

5.4 **Subchapter S Election**. The Company may, upon unanimous consent of the Members, elect to be treated for income tax purposes as an S Corporation. This designation may be changed as permitted under the Internal Revenue Code Section 1362(d) and applicable Regulations.

5.5 **Tax Matters Member**. Anytime the Company is required to designate or select a tax matters partner pursuant to Section 6231(a)(7) of the Internal Revenue Code and any regulations issued by the Internal Revenue Service, the Members must designate one of the Members as the tax matters partner of the Company and keep such designation in effect at all times.

5.6 **Banking**. All funds of the Company must be deposited in one or more bank accounts in the name of the Company with one or more recognized financial institutions. The Managers are authorized to establish such accounts and complete, sign, and deliver any banking resolutions reasonably required by the respective financial institutions in order to establish an account.

## ARTICLE 6: MEMBERSHIP – VOTING AND MEETINGS

6.1 **Members and Voting Rights**. The Members have the right and power to vote on all matters with respect to which the Articles of Organization, this Agreement, or the California Revised Uniform Limited Liability Company Act requires or permits. Unless otherwise stated in this Agreement (for example, in Section 4.1(c)) or required under the California Revised Uniform Limited Liability Company Act, the vote of the Members holding at least a majority of the Voting Interest of the Company is required to approve or carry out an action.

6.2 **Meetings of Members**. Annual, regular, or special meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company. Meetings may be called by any Member or Members, holding 10% or more of the Percentage Interests, for the purpose of addressing any matters on which the Members may vote. A written notice setting forth the date, time, and location of a meeting must be sent at least ten (10) days but no more than sixty (60) days before the date of the meeting to each

-8-

Member entitled to vote at the meeting. A Member may waive notice of a meeting by sending a signed waiver to the Company's principal executive office or as otherwise provided in the California Revised Uniform Limited Liability Company Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the California Revised Uniform Limited Liability Company Act, including by conference call or similar communications equipment. Any action that could be taken at a meeting may be approved by a consent in writing that describes the action to be taken and is signed by Members holding the minimum Voting Interest required to approve the action. If any action is taken without a meeting and without unanimous written consent of the Members, notice of such action must be sent to each Member that did not consent to the action.

## ARTICLE 7: WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

7.1 **Withdrawal**. Members may withdraw from the Company prior to the dissolution and winding up of the Company (a) by transferring or assigning all of their respective Membership Interests pursuant to Section 7.2 below, or (b) if all of the Members unanimously agree in a written consent. Subject to the provisions of Article 3, a Member that withdraws pursuant to this Section 7.1 will be entitled to a distribution from the Company in an amount equal to such Member's Capital Account, which must be paid by the Company to such Member within ninety (90) days of the withdrawal date unless otherwise agreed in writing.

7.2 **Restrictions on Transfer; Admission of Transferee**. A Member may transfer Membership Interests to any other Person without the consent of any other Member. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A Person that acquires Membership Interests in accordance with this Section 7.2 will be admitted as a Member of the Company only after the requirements of Section 2.3(b) are complied with in full.

## ARTICLE 8: DISSOLUTION

8.1 **Dissolution.** The Company will be dissolved upon the first to occur of the following events:

> (i)     The vote of the Members holding at least a majority of the Voting Interest of the Company to dissolve the Company;

(ii)     Entry of a decree of judicial dissolution under Section 17707.01 of the California Revised Uniform Limited Liability Company Act;

(iii)    The sale or transfer of all or substantially all of the Company's assets;

(iv)     A merger or consolidation of the Company with one or more entities in which the Company is not the surviving entity; or

(v)      The Company has no members during 90 consecutive days, except on the death of a natural person who is the sole member of the Company, the status of the member, including Membership Interest, may pass to the heirs, successors, and assigns of the member by will or applicable law.

8.2  **No Automatic Dissolution Upon Certain Events**. Unless otherwise set forth in this Agreement or required by applicable law, the death, incapacity, disassociation, bankruptcy, or withdrawal of a Member will not automatically cause a dissolution of the Company.

## ARTICLE 9: INDEMNIFICATION

9.1  **Indemnification**. The Company has the power to defend, indemnify, and hold harmless any Person who was or is a party, or who is threatened to be made a party, to any Proceeding (as that term is defined below) by reason of the fact that such Person was or is a Member, Manager, officer, employee, representative, or other agent of the Company, or was or is serving at the request of the Company as a director, Manager, Governor, officer, employee, representative or other agent of another limited liability company, corporation, partnership, joint venture, trust, or other enterprise (each such Person is referred to as a "Company Agent"), against Expenses (as that term is defined below), judgments, fines, settlements, and other amounts (collectively, "Damages") to the maximum extent now or hereafter permitted under California law. "Proceeding," as used in this Article 9, means any threatened, pending, or completed action, proceeding, individual claim or matter within a proceeding, whether civil, criminal, administrative, or investigative. "Expenses," as used in this Article 9, includes, without limitation, court costs, reasonable attorney and expert fees, and any expenses incurred relating to establishing a right to indemnification, if any, under this Article 9.

9.2 **Mandatory.** The Company must defend, indemnify and hold harmless a Company Agent in connection with a Proceeding in which such Company Agent is involved if, and to the extent, California law requires that a limited liability company indemnify a Company Agent in connection with a Proceeding.

9.3 **Expenses Paid by the Company Prior to Final Disposition**. Expenses of each Company Agent indemnified or held harmless under this Agreement that are actually and reasonably incurred in connection with the defense or settlement of a Proceeding may be paid by the Company in advance of the final disposition of a Proceeding if authorized by a vote of the Members that are not seeking indemnification holding a majority of the Voting Interests (excluding the Voting Interest of the Company Agent seeking indemnification) or a majority of the Managers that are not seeking indemnification, as the case may be. Before the Company makes any such payment of Expenses, the Company Agent seeking indemnification must deliver a written undertaking to the Company stating that such Company Agent will repay the applicable Expenses to the Company unless it is ultimately determined that the Company Agent is entitled or required to be indemnified and held harmless by the Company (as set forth in Sections 9.1 or 9.2 above or as otherwise required by applicable law).

## ARTICLE 10: GENERAL PROVISIONS

10.1 **Notice**. (a) Any notices (including requests, demands, or other communications) to be sent by one party to another party in connection with this Agreement must be in writing and delivered personally, by reputable overnight courier, or by certified mail (or equivalent service offered by the postal service from time to time) to the following addresses or as otherwise notified in accordance with this Section: (i) if to the Company, notices must be sent to the Company's principal executive office; and (ii) if to a Member, notices must be sent to the Member's last known address for notice on record. (b) Any party to this Agreement may change its notice address by sending written notice of such change to the Company in the manner specified above. Notice will be deemed to have been duly given as follows: (i) upon delivery, if delivered personally or by reputable overnight carrier or (ii) five days after the date of posting if sent by certified mail.

10.2 **Entire Agreement; Amendment**. This Agreement along with the Articles of Organization (together, the "Organizational Documents"), constitute the entire agreement among the Members and replace and supersede all prior written and oral understandings and agreements with respect to the subject matter of this Agreement, except as otherwise required by the California Revised Uniform Limited Liability

Company Act. There are no representations, agreements, arrangements, or undertakings, oral or written, between or among the Members relating to the subject matter of this Agreement that are not fully expressed in the Organizational Documents. This Agreement may not be modified or amended in any respect, except in a writing signed by all of the Members, except as otherwise required or permitted by the California Revised Uniform Limited Liability Company Act.

10.3  **Governing Law; Severability**. This Agreement will be construed and enforced in accordance with the laws of the state of California. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining provisions of this Agreement (including without limitation, all portions of any provisions containing any such unenforceable provision that are not themselves unenforceable) will not in any way be affected or impaired thereby, and (ii) to the fullest extent possible, the unenforceable provision will be deemed modified and replaced by a provision that approximates the intent and economic effect of the unenforceable provision and the Agreement will be deemed amended accordingly.

10.4  **Further Action**. Each Member agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

10.5  **No Third Party Beneficiary**. This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and no other Person or entity will have or acquire any right by virtue of this Agreement. This Agreement will be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

10.6  **Incorporation by Reference**. The recitals and each appendix, exhibit, schedule, and other document attached to or referred to in this Agreement are hereby incorporated into this Agreement by reference.

10.7  **Counterparts**. This Agreement may be executed in any number of counterparts with the same effect as if all of the Members signed the same copy. All counterparts will be construed together and will constitute one agreement.

*[Remainder Intentionally Left Blank.]*

**IN WITNESS WHEREOF**, the parties have executed or caused to be executed this Operating Agreement and do each hereby represent and warrant that their respective signatory, whose signature appears below, has been and is, on the date of this Agreement, duly authorized to execute this Agreement.

Dated: _/-/5+/8_

_____

Signature of Osnath Siag

-13-

EXHIBIT A
**MEMBERS**

The Members of the Company and their respective addresses, Capital Contributions, and Ownership Interests are set forth below. The Members agree to keep this Exhibit A current and updated in accordance with the terms of this Agreement, including, but not limited to, Sections 2.1, 2.3, 2.4, 7.1, 7.2, and 10.1.

| Members | Capital Contribution | Percentage Interest |
|---|---|---|
| Osnath Siag<br>Address:<br>427 N. Canon Dr. #202<br>Beverly Hills, California 90210 | | 100% |

## EXHIBIT B
## MANAGERS

Manager(s) of the Company are set forth below.

Danny Siag
Osnath Siag

**Secretary of State**
**Statement of Information**
(Limited Liability Company)

LLC-12

19-B99263

**FILED**

In the office of the Secretary of State
of the State of California

**MAY 22, 2019**

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee – $20.00**

**Copy Fees –** First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**This Space For Office Use Only**

**1. Limited Liability Company Name** (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.)

OS SUSNET LLC

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 201800210398 | CALIFORNIA |

**4. Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>427 N Canon Dr. #202 | Beverly Hills | CA | 90210 |
| b. Mailing Address of LLC, **if different than item 4a**<br>427 N Canon Dr. #202 | Beverly Hills | CA | 90210 |
| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box<br>427 N Canon Dr. #202 | Beverly Hills | CA | 90210 |

**5. Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Ossi | | Siag | |

b. Entity Name - Do not complete Item 5a

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 427 N Canon Dr. #202 | Beverly Hills | CA | 90210 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Ossi | | Siag | |

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 427 N Canon Dr. #202 | Beverly Hills | CA | 90210 |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent Corporation.

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b

**7. Type of Business**

a. Describe the type of business or services of the Limited Liability Company

Development

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Ossi | | Siag | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 427 N Canon Dr. #202 | Beverly Hills | CA | 90210 |

**9. The Information contained herein, including any attachments, is true and correct.**

| 05/22/2019 | Ossi Siag | CEO | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

LLC-12 (REV 01/2017)   Page 1 of 2   2017 California Secretary of State
www.sos.ca.gov/business/be

| **Attachment to**<br>**Statement of Information**<br>(Limited Liability Company) | **LLC-12A**<br>**Attachment** | 19-B99263 |
|---|---|---|

**A.  Limited Liability Company Name**

OS SUSNET LLC

This Space For Office Use Only

| **B.  12-Digit Secretary of State File Number** | **C.  State or Place of Organization** (only if formed outside of California) |
|---|---|
| 201800210398 | CALIFORNIA |

**D.  List of Additional Manager(s) or Member(s) -** If the manager/member is an individual, enter the individual's name and address.  If the manager/member is an entity, enter the entity's name and address.  Note:  The LLC cannot serve as its own manager or member.

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Ezra | | Ozeri | |
| Entity Name | | | |
| **Address** 23042 Park Sorrento | **City (no abbreviations)** Calabasas | **State** CA | **Zip Code** 91302 |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| Address | City (no abbreviations) | State | Zip Code |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| Address | City (no abbreviations) | State | Zip Code |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| Address | City (no abbreviations) | State | Zip Code |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| Address | City (no abbreviations) | State | Zip Code |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| Address | City (no abbreviations) | State | Zip Code |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |
| Address | City (no abbreviations) | State | Zip Code |

## MINUTES OF THE ANNUAL MEETING OF MEMBERS
## OF

OS SusheL LLC

The annual Meeting of Members of the above named Limited Liability Company was held on the date and time and at the place set forth in the written waiver of notice signed by all the members, fixing such time and place, and prefixed to the minutes of this meeting.

There were present at the meeting all of the members of the above named Limited Liability Company.

Danny Siag
Ossi Siag

The meeting was called to order by _Danny Siag_ it was moved, seconded and unanimously carried that _Danny Siag_ act as Chairman and that _Ossi Siag_ act as Secretary.

The Chairman then stated that all of the members were present.

The managing member presented his/hers annual report and, after discussion, the report was accepted and ordered filed with the Secretary.

**CAPITAL CONTRIBUTION OF MEMBERS AND ADDRESSES OF MEMBERS
AND MANAGERS AS OF** _Os Sasaol LLC_

Member's Name: _EZRA OZeri_
Member's Address
Member's Capital Contribution: $ _775,000_ (ex: equipment and supplies)
Member's Percentage Interest _50 %_

Member's Name: _Danny Siag_
Member's Address:
Member's Capital Contribution $ _76,000_ (ex: services and cash)
Member's Percentage Interest: _49 %_

Member's Name: _Ossi Sias_
Member's Address
Member's Capital Contribution: $ _0.a_ (ex: equipment and supplies)
Member's Percentage Interest _1 %_

Member's Name:
Member's Address
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest

Member's Name:
Member's Address
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest

Member's Name:
Member's Address
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest

Member's Name:
Member's Address
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest

Manager's Name: _Danny Siag_
Manager's Address _427 N. Canon Dr #201_
_Beuly Hill CA 90210_

The Chairman noted that it was in order to consider electing managing members for the ensuing year. Upon nominations duly made and seconded, the following were unanimously elected managing members of the Limited Liability Company, to serve for the ensuing year and until their successors are elected and qualified:

Managing Member: *Danny Siag*

Secretary: *Ossi Siag*

Treasurer: *Ezra Ozeri*

There being no further business to come before the meeting, upon duly made, seconded and unanimously carried, it was adjourned.

_____
                    Secretary

Members:

*Danny Siag*
*Ossi Siag*
*Ezra Ozeri*

_____
_____
_____
_____

## WAIVER OF NOTICE OF ANNUAL MEETING OF MEMBERS
### OF

OS Susuit LLC

We, the undersigned, being all of the members of the above named Limited Liability Company, hereby agree and consent that the annual meeting of the members of the Limited Liability Company be held on the date and time and at the place designated hereunder, and do hereby waive all notice whatsoever of such meeting and of any adjournment or adjournments thereof.

We do further agree and consent that any and all lawful business may be transacted at such meeting or at any adjournment or adjournments thereof, the members present may deem as advisable thereat.  Any business transacted at such meeting or at any adjournment or adjournments thereof shall be as valid and legal and of the same force and effect as if such meeting or adjourned meeting were held after notice.

Place of Meeting:  427 N. Canon Dr #202 Beverly Hills

Date of Meeting:  2-28-14

Time of Meeting:  3:30p

Dated:  2-28-10

_____
Member

_____
Member

_____
Member

September 11, 2020

To Whom It May Concern:

I, Danny Siag, manager of OS Susnet LLC, hereby confirm the following:

    (1) Bryan K. Theis is my attorney for purposes of the attached letter of today's date and
        related correspondence.

    (2) OS Susnet LLC hereby terminates attorney Eric Bensamochan and Bensamochan Firm,
        Inc. from any and all contracts for all purposes.  Mr. Bensamochan is to substitute
        himself out of any and all pending litigation matters on behalf of OS Susnet LLC,
        including but not limited to the pending bankruptcy case, and to deliver all client
        property to attorney Bahram Madaen.

Sincerely,

Danny Siag

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Bahram Madaen, Esq. (CSB No. 230123) Law Office of Madaen 16787 Beach Blvd. Suite 777 Huntington Beach CA 92647 Tel: (818) 908-2618 Fax: (818) 908-2619 | |

*Attorney for:* Debtor OS Susnet LLC

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re: | CASE NO.: 2:20-bk-16399-BR |
|---|---|
| OS SUSNET, LLC | ADVERSARY NO.: *(if applicable)* |
| | CHAPTER: 7 |
| Debtor(s). | |
| Plaintiff(s), | **SUBSTITUTION OF ATTORNEY** |
| vs. | **[LBR 2091-1(b)]** |
| Defendant(s). | |

1. The name(s) of the party(ies) making this Substitution of Attorney *(specify)*:

   Debtor OS SUSNET, LLC

2. The name, address, telephone number, and email address of the new attorney are *(specify)*:

   Bahram Madaen, Esq. (CSB No. 230123), Law Office of Madaen
   16787 Beach Blvd. Suite 777, Huntington Beach CA 92647
   Email address: ssiroos@hotmail.com
   Tel.: Tel: (818) 908-2618

3. New attorney hereby appears in the following matters:   ☒ the bankruptcy case   ☐ the adversary proceeding

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  The new attorney is substituted as attorney of record in place instead of the present attorney. *(Specify name of present attorney)*:

Eric Bensamochan, Esq.

Date: 09/11/2020

_____
Signature of party

OS Susnet, LLC by Danny Siag, manager
_____
Printed name of party

_____
Signature of *third* party (if applicable)

_____
Printed name of *third* party (if applicable)

_____
Signature of *second* party (if applicable)

_____
Printed name of *second* party (if applicable)

_____
Signature of *fourth* party (if applicable)

_____
Printed name of *fourth* party (if applicable)

I consent to the above substitution.

Date: _____

_____
Signature of present attorney

Eric Bensamochan, Esq.
_____
Printed name of present attorney

I am duly admitted to practice in this district.  The above substitution is accepted.

Date: 09/11/2020

_____
Signature of new attorney

Bahram Madaen, Esq.
_____
Printed name of new attorney

## IMPORTANT NOTICE

Filing of this Substitution of Attorney form does not replace the need to be employed pursuant to the Bankruptcy Code. See LBR 2014-1 regarding the requirements and procedures for making an application to employ an attorney.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2014*                         Page 2                         **F 2091-1.SUBSTITUTION.ATTY**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy of the foregoing document entitled: **SUBSTITUTION OF ATTORNEY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:



☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.



☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.



☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


_____     _____     _____
*Date*                    *Printed Name*                                      *Signature*

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2014*                                   Page 3                                   **F 2091-1.SUBSTITUTION.ATTY**