1   David M. Goodrich
       *dgoodrich@wgllp.com*
2   650 Town Center Drive. Suite 600
    Costa Mesa, CA 92626
3   Telephone: (714) 966-1000

4

5   Chapter 7 Trustee

6

7                    **UNITED STATES BANKRUPTCY COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9                         **LOS ANGELES DIVISION**

10

11  In re:                              Case No.  2:20-bk-16308-BR

12  OS SUSNET, LLC,
                                        Chapter 7
13
                                        **APPLICATION BY CHAPTER 7 TRUSTEE**
14          Debtor.                      **TO EMPLOY HILTON & HYLAND AS**
                                        **REAL ESTATE BROKER TO MARKET**
15                                       **AND SELL REAL PROPERTY;**
                                        **DECLARTION OF DAVID M. GOODRICH;**
16                                       **STATEMENT OF DISINTERESTEDNESS**
                                        **IN SUPPORT THEREOF**
17
                                        [12125 W. Sunset Blvd., Los Angeles, CA 90049]
18
                                        **[11 U.S.C. §§ 327(a) and 328(a); Fed. R.**
19                                       **Bankr. P. 2014; Loc. Bankr. R. 2014-1(b)]**

20
                                        [No Hearing Required Unless Requested
21

22  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE;**

23  **THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTOR, ITS COUNSEL, IF**

24  **ANY, AND ALL OTHER INTERESTED PARTIES:**

25

26

27

28

David M. Goodrich, the duly appointed, qualified, and acting chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of OS Susnet, LLC ("Debtor"), requests authority to employ Hilton & Hyland, ("Broker") to act as the Estate's real estate broker in this case for the purpose of marketing and selling residential real property located at 12125 W. Sunset Blvd, Los Angeles, California 90049 ("Property").

This Application is brought in accordance with 11 U.S.C. §§ 327(a) and 328(a), Federal Rule of Bankruptcy Procedure 2014, and Local Bankruptcy Rule 2014-1(b), and is made on the grounds that the Broker does not hold or represent an interest adverse to the Estate, and the Broker is disinterested as required by 11 U.S.C. §327(a).

The resume of Jeff Hyland ("Agent"), the agent for the Broker who will be primarily responsible for marketing the Property for sale, is attached hereto as **Exhibit 1**.  The Trustee desires to employ the Broker on the terms and conditions stated in the Listing Agreement and Addendum (collectively "Listing Agreement") attached hereto as **Exhibit 2**.

This Application is based on the attached Memorandum of Points and Authorities, the Declaration of David M. Goodrich, the Statement of Disinterestedness, and the exhibits attached hereto.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order:

1. Authorizing the Trustee to employ the Broker as the Estate's real estate broker, on the terms and conditions set forth in this Application pursuant to the Listing Agreement, including, but not limited to, those terms relating to compensation for the Broker, under the standards set forth in 11 U.S.C. §327(a) at the expense of the estate, without the necessity of a separate fee application; and

2. Granting such other relief as the Court deems just and proper.

Dated:  December 23, 2020                    /s/ David M. Goodrich
                                             David M. Goodrich
                                             Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

**A.**    **Background Facts**

The Debtor filed a Chapter 7 petition on July 15, 2020.  *See* Docket No. 1.[1]  Thereafter, David M. Goodrich was appointed as the Chapter 7 Trustee.  *See* Docket No. 3

According to the Debtor's schedules, the Debtor held an interest in real property located at 12125 W. Susnet Blvd., Los Angeles, California 90049 ("Property") on the petition date.  *See* Docket No.  12, Schedule A/B.  The Debtor alleges the aggregate secured debt owed on the Property is $6,294,921.73.  The Debtor also claims the secured claims of Mega Holding Group, LLC ("Mega") in the amount of $1,000,000, OSB Investment, LLC ("OSB") in the amount of $477,361.73, and The Blvd. Agency, Inc. ("Agency") in the amount of $262,560, are "disputed." The Trustee has learned some of the secured debt listed in the Debtor's Schedule D is less than scheduled or not owed by the Debtor at all.

The Trustee intends to market and sell the Property if proceeds can be generated for a meaningful distribution to creditors.  In order to ensure the best and highest offer is solicited, the Trustee plans to list the Property for sale at a price of $5,995,000.00.  *See* **Exhibit 2** hereto. Based upon an expected sale price of $5,995,000.00, the Trustee believes a sale of the Property will benefit creditors of the Estate.

**B.**    **The Property and Proposed Employment Of Broker**

The Resume of Mr. Hyland, who will be primarily responsible for marketing the Property for sale is attached hereto as **Exhibit 1**. The Trustee desires to employ the Broker on the terms and

---

[1] The Trustee requests the Court take judicial notice of its docket, the filing date of pleadings on its docket and the admissions of the Debtor made under oath in its schedules.

2

conditions stated in the Listing Agreement attached hereto as **Exhibit 2**.  The Broker has not received and will not receive a retainer in connection with the proposed retention. Pursuant to the Listing Agreement, the Broker's commission will be five percent (5%) of the purchase price for the Property.

This Application requests only that the Court approve the Trustee's employment of the Broker under 11 U.S.C. § 327(a). This Application does not request authorization to sell the Property under 11 U.S.C. §363.  If and when the Trustee is in a position to sell the Property, the Trustee will request authority to do so by filing a separate motion with the Court, which motion will describe the terms and conditions of the proposed sale transaction, etc. Notice of such a motion will be served on creditors and other parties in interest of the Estate.

**II.**

**THE COURT SHOULD AUTHORIZE THE TRUSTEE TO EMPLOY THE BROKER**

**A.**      **The Court Should Approve Employment Pursuant to Bankruptcy Code §327(a)**

11 U.S.C. § 327(a) provides:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. §327(a).

Based upon the Statement of Disinterestedness attached hereto, the Trustee is satisfied the Broker does not hold or represent an interest adverse to the Estate, and that the Broker is disinterested as required by §327(a). Therefore, the Trustee may employ the Broker under §327(a).

Furthermore, as set forth in the Broker resume attached hereto in **Exhibit 1**, Mr. Hyland

3

has experience with selling real property in the area in which the Property is located. *See* **Exhibit 1**. Additionally, the Listing Agreement provides for a broker's commission of five percent (5%) of the sale price on the Property. *See* **Exhibit 2**. The Estate will realize proceeds from a sale of the Property. As such, employment is proper.

**B.**     **The Court Should Approve the Proposed Terms of Compensation Pursuant to §328(a)**

11 U.S.C. § 328(a) provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. §328 (emphasis added).

Pursuant to §328(a), the Trustee may employ the Broker on the specific terms set forth in the Listing Agreement, including those relating to compensation, provided such terms are reasonable. *See* 11 U.S.C. §328(a). This section "provides a specific mechanism for professional persons to obtain prior court approval of the terms of their compensation[,]" subject to possible adjustment if such compensation proves to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions. *See 3* COLLIER ON BANKRUPTCY ¶ 328.01 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.); 11

U.S.C. §328(a).

The Trustee believes that the terms and conditions of the Listing Agreement are reasonable, and for this reason, the Trustee requests that the compensation terms in the Listing Agreement be approved at this time, without the necessity of a separate fee application, notice or hearing. Such approval would be in the best interests of the Estate because it allows the Estate to avoid the expenses of a fee application, and because the Court will retain authority to allow compensation different from the compensation provided under the Listing Agreement after conclusion of the employment "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. §328(a).

## III.

## CONCLUSION

For the foregoing reasons, the Trustee believes that the employment of the Broker is necessary and in the best interests of Estate and its creditors.  Therefore, the Trustee respectfully requests that the Court enter an order:

1.     Authorizing the Trustee to employ the Broker as his real estate broker on the terms and conditions stated herein and each Listing Agreement, and under 11 U.S.C. §§327(a) and 328(a) at the expense of the Estate, without the necessity of a separate fee applications should the Property be sold; and

2.     Granting such other relief as the Court deems just and proper.

Dated: December 23, 2020                     /s/ David M. Goodrich
                                             David M. Goodrich
                                             Chapter 7 Trustee

5

## DECLARATION OF DAVID M. GOODRICH

I, David M. Goodrich:

1.    I am an individual over the age of eighteen, and I am the duly appointed, qualified and acting Chapter 7 Trustee of the bankruptcy estate of OS Susnet, LLC. Except as otherwise indicated, all statements made herein are based on my personal knowledge or my review of relevant documents. If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

2.    The Resume of Mr. Hyland, the broker who will be primarily responsible for marketing the Property for sale, is attached hereto as **Exhibit 1**.  Attached hereto as **Exhibit 2** is a true and correct copy of the proposed Listing Agreement.

3.    The Broker has not received and will not receive a retainer in connection with the proposed retention.  Pursuant to the Listing Agreement, the Broker will seek approval of compensation in the amount of 5% of the sale price for the Property.

4.    This Application requests only that the Court approve the employment of the Broker under 11 U.S.C. §§ 327(a) and 328(a). This Application does not request authorization to sell the Properties under 11 U.S.C. §363.  If and when I am in a position to sell the Property, I will request authority to do so by filing a separate motion with the Court, which motion will describe the terms and conditions of the proposed sale transaction, etc.

5.    I believe employment of the Broker is in the best interest of the Estate and its creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  December 23, 2020          /s/ David M. Goodrich
                                    David M. Goodrich

## STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT OF

## PROFESSIONAL PERSON UNDER BANKRUPTCY RULE 2014

[The following information is supplied in conformity with United States Bankruptcy Court,

Central District of California, Form No. 2014-1]

1.      Name, address and telephone number of the professional ("Professional") submitting this Statement:

> Hilton & Hyland,
> Jeff Hyland
> 257 North Canon Drive, 2nd Floor
> Beverly Hills, California 90210
> (310) 278-3311
> jeff@jeffhyland.com

A true and correct copy of the Professional's resume is attached hereto as **Exhibit 1**.

2.     The services to be rendered by the Professional in this case are (specify):

The Professional will act as the real estate broker for the Trustee for the purpose of

procuring a buyer for the residential real properties located at 12125 W. Sunset Blvd., Los

Angeles, California 90049 ("Property").

3.     The terms and source of the proposed compensation and reimbursement of the Professional

are *(specify)*:

        a.      The terms of the proposed compensation are set forth in the Listing

Agreement attached hereto as **Exhibit 2**.

        b.      As set forth in each agreement, the Professional will be entitled to 5% of the

sale/purchase price at the time of sale, subject to Court approval and closing of the

sale. (The Professional may pay/share a portion of her commission with any broker

for the buyer(s) of the Property.)

        c.      The source of the proposed compensation will be the proceeds from the

closing of and the sale of the Property.

7

4. The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are *(specify)*:

*Not applicable.*

5. The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of *(specify)*:

In answering questions 7, 10, and 11 below (which address whether the Professional is a "disinterested person" in the bankruptcy case of OS Susnet, LLC, as that term is defined by the Bankruptcy Code), the Professional reviewed its files and a list of creditors and other interested parties.

6. The following is a complete description of all of the Professional's connections with the debtor, principals of the debtor, insiders, the debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

a. The Professional is not aware of any connections to interested parties in the bankruptcy case of OS Susnet, LLC.

7. The Professional is not a creditor, an equity security holder or an insider of the debtor, except as follows *(specify, attaching extra pages as necessary)*:

*Not applicable*

8. The Professional is not and was not an investment banker for any outstanding security of the debtor.

9. The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the debtor.

10.    The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the debtor or of any investment banker for any security of the debtor.

11.    The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders with respect to the matter on which the Professional is to be employed, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker for any security of the debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary):

12.    Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

Hilton & Hyland,
Jeff Hyland
257 North Canon Drive, 2nd Floor
Beverly Hills, California 90210
(310) 278-3311
jeff@jeffhyland.com

13.    The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

*Not applicable*

14.    Total number of attached pages supporting documents: 0.

15.    After conducting or supervising the investigation described in Paragraph 5 above, I declare under of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that I declare that Paragraph 6 through 11 are stated on information and belief.

Executed on the December ___, 2020 at Beverly Hills, California.

Hilton & Hyland

Jeff Hyland
_____
Type Name of Professional

DocuSigned by:

*Jeff Hyland*    12/24/20

Jeff Hyland

9

# EXHIBIT 1

# *Curriculum Vitae*

# *Jeffrey Hyland*

B.A. Business Administration United States International University

Licensed Real Estate Broker in California since 1976

President of Alvarez, Hyland & Young, 1976 to 1993

President of Hilton & Hyland, 1993 to present

Past President of Beverly Hills Board of Realtors, Chairman of Professional Standards Committee,
Realtor of The Year

State Director, California Association of Realtors, five years

Past President of the 30,000 member Los Angeles County
Boards of Real Estate

Named by Town & Country Magazine as the "Gatekeeper" to
Holmby Hills and Bel-Air

Robb Report "Best of the Best"

Founding member of Christie's International Real Estate

Co-author of "The Estates of Beverly Hills"

Author and Publisher: "The Legendary Estates of Beverly Hills"

Christie's International Real Estate Large Market
Affiliate of the Year

Beverly Hills Greater Los Angeles Area Association of Realtors
Life Time Achievement Award

Robinson Gardens Recipient, Spirit of Beverly Hills Honoree 2013

Will Rogers Real Estate Lifetime Achievement Award
City of Beverly Hills

Institute of Classical Architecture and Arts Legacy Award 2018

Founding Member of Forbes Global Properties 2020

# EXHIBIT 2

CALIFORNIA
ASSOCIATION
OF REALTORS®

### DISCLOSURE REGARDING
### REAL ESTATE AGENCY RELATIONSHIP
(Seller's Brokerage Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____    Date 12/22/2020
                  *Bankruptcy estate of OS Susnet, LLC.*

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____    Date _____

Agent _____ DocuSigned by: _____ DocuSigned by: _____    DRE Lic. # *01160681*
                                   *Hyland*
By *Jeff Hyland*    *Lisa Optican*    roker (Firm)
       F2C431938EF34ED...    4F683D5C85A6401...    DRE Lic. # *00389584/01960751*    Date 12/24/20
                                   **Jeff Hyland/Lisa Optican**
© 1991-2018, California Association of REALTORS®, Inc.

**AD REVISED 12/18 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

## CIVIL CODE SECTIONS 2079.13 ~ 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions.
**(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm ___DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm ___DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/18 (PAGE 2 OF 2)
## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)



CALIFORNIA
ASSOCIATION
OF REALTORS®

## FAIR HOUSING & DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, 10/20)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§12900-12996,12955; 2 California Code of Regulations ("CCR") §§12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") §51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: Section 504 of Rehabilitation Act of 1973 29 U.S.C. §794; Ralph Civil Rights Act CC §51.7.; California Disabled Persons Act; CC §§54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership to, any of the following classes or categories is prohibited.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Sex | Sexual Orientation | Gender | Gender Identity | Gender Expression |
| Marital Status | Familial Status (family with a child or children under 18) | Source of Income (e.g., Section 8 Voucher) | Disability (Mental & Physical) | Medical Condition |
| Citizenship | Primary Language | Immigration Status | Military/Veteran Status | Age |
| Criminal History (non-relevant convictions) | | | Any arbitrary characteristic | |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") §10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation §2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR §2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. These types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2020, California Association of REALTORS®, Inc.
**FHDA 10/20 (PAGE 1 OF 2)**


EQUAL HOUSING
OPPORTUNITY

## FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)

| Hilton & Hyland, 257 N. Canon Drive Second Floor Beverly Hills CA 90210 | Phone: (310) 278-3311    Fax: (310) 278-8058 | 12125 Sunset Blvd |
| Jeff Hyland | Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com | |



**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

### RESIDENTIAL LISTING AGREEMENT
**(Exclusive Authorization and Right to Sell)**
(C.A.R. Form RLA, Revised 6/20)

Date Prepared: _12/21/2020_

1. **EXCLUSIVE RIGHT TO SELL:** _____ **Bankruptcy estate of OS Susnet, LLC.** _____ ("Seller")
   hereby employs and grants _____ **Hilton & Hyland** _____ ("Broker")
   beginning (date) _**January 1, 2021**_ and ending at 11:59 P.M. on (date) _**January 1, 2022**_ ("Listing Period")
   the exclusive and irrevocable right to sell or exchange the real property described as _**12125 W. Sunset Blvd**_
   _____, situated in _**Los Angeles**_ (City),
   _**Los Angeles**_ (County), California, _**90049**_ (Zip Code), Assessor's Parcel No. _**4402-022-012**_ ("Property").
   ☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
   ☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _**Five Million, Nine Hundred Ninety-Five Thousand**_
      _____ Dollars ($ _**5,995,000.00**_ ).
   B. Listing Terms: _____

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _**5.000**_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
      AND _____ , as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      OR (2) If within _**180**_ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: **(i)** who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or **(ii)** for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
      OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____ .
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ _**2.500**_ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____ .
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      _____ .
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

© 2020, California Association of REALTORS®, Inc.

**RLA REVISED 6/20 (PAGE 1 OF 5)**

Seller's Initials ( ___ ) ( ___ )

### RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)

Property Address: *12125 W. Sunset Blvd, Los Angeles, CA  90049*                    Date: *12/21/2020*

**4.** **A.** **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _____ .
**ADDITIONAL ITEMS INCLUDED:** _____ .
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.** **(1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
☐ Other
**(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
☐ Other
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.** **MULTIPLE LISTING SERVICE:**
   **A.** **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
   **B.** **WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
   **C.** **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____*CLAW*_____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by paragraph 7 or by the MLS, Property will be listed with the MLS(s) specified above.

**6.** **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
   **A.** **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
   **B.** **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
   **C.** **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
   **D.** **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

Seller's Initials ( *A* )( _____ )     Brokers's/Agent's Initials ( *JH* )( *LO* )

**7.** **PUBLIC MARKETING OF PROPERTY:**
   **A.** **CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see 7F) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
   **B.** **PUBLIC MARKETING WITHIN CLEAR COOPERATION: (i) Public marketing** includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
   **C.** **"COMING SOON" STATUS IMPACT ON MARKETING:** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any.

**RLA REVISED 6/20 (PAGE 2 OF 5)**        Seller's Initials ( _____ )   ( _____ )

Property Address: _12125 W. Sunset Blvd, Los Angeles, CA  90049_

D. **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
   (1) Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this
      Agreement or ☒ **_seller request_** (date).
OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing
      will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between
      the brokers and licensees affiliated with the listing brokerage and their respective clients.
E. **Whether 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the
   Property occur, the Property listing will be submitted to the MLS within 1 business day.
F. ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** Paragraphs 7A (other than the language in the
   parenthetical), 7B, 7D and 7E do not apply to this Listing. Broker shall disclose to Seller and obtain Seller's consent
   for any instruction to not market the Property on the MLS or to the public.
8. **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites
   unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as
   permitted by (or in accordance with) the MLS is as follows:
   A. **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the
      Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean
      consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
   B. **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS
      Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below
      (C.A.R. Form SELI). Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS
      Participants and Subscribers who are real estate licensee and agent members of the MLS; (ii) that other Internet sites
      may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to
      control or block such features on other Internet sites.
      (1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the
         ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the
         Property display.
      (2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another
         site containing such an estimate of value if the link is in immediate conjunction with the Property display.
      ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.
9. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice
   of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation
   affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration,
   administrative action, government investigation or other pending or threatened action that affects or may affect the Property or
   Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall
   promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.
10. **BROKER'S AND SELLER'S DUTIES:**
   A. Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless
      Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and
      disclosures including those specified in 10D as necessary, (ii) advertise and market the Property by any method and in
      any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the
      dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry
      the receipt of any offers on the Property and the offering price of such offers.
   B. Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless
      Seller gives Broker written instructions to the contrary.
   C. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by,
      among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring
      to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and
      sell the Property.
   D. Investigations and Reports: Seller agrees, within **5 (or ___ ) Days** of the beginning date of this Agreement, to pay for the following
      pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents
      ☐ Other _____ .
      If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may
      be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include,
      but not limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or
      complications due to late or slow delivery of such documents.
   E. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments,
      attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts
      that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.
11. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.
12. **AGENCY RELATIONSHIPS:**
   A. **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
   C. **POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker

RLA REVISED 6/20 (PAGE 3 OF 5)

Seller's Initials ( ) ( )



Property Address: **12125 W. Sunset Blvd, Los Angeles, CA  90049**

to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**D. CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**E. POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**13. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**14. PHOTOGRAPHS AND INTERNET ADVERTISING:**

**A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to display those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

**B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**15. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**16. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**17. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**18. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 22A.

**19. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)

☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

_____

_____

_____

_____

**RLA REVISED 6/20 (PAGE 4 OF 5)**                    Seller's Initials ( _____ ) ( _____ )



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          12125 Sunset Blvd

Property Address: **_12125 W. Sunset Blvd, Los Angeles, CA  90049_**

**20. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**21. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**22. DISPUTE RESOLUTION:**
   **A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 22B.
   **B. ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: **(i)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; **(ii)** an unlawful detainer action; **(iii)** the filing or enforcement of a mechanic's lien; and **(iv)** any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.
   **C. ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**23. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**24. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

[X] **REPRESENTATIVE CAPACITY:** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller **(i)** represents that the entity for which the individual is signing already exists and **(ii)** shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**



Seller _____    _Bankruptcy estate of OS Susnet, LLC._ Date 12-22-2020
    _Bankruptcy estate of OS Susnet, LLC._
Address _____    City _____ State ____ Zip _____
Telephone _____ Fax _____    E-mail _____

Seller _____    Date _____
Address _____    City _____ State ____ Zip _____
Telephone _____ Fax _____    E-mail _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) _Hilton & Hyland_ _____    DRE Lic. # **_01160681_**
Ac _DocuSigned by:_ _DocuSigned by:_ _Floor_ _____ City **_Beverly Hills_** _____ State **_CA_** Zip **_90210_**
By _Jeff Hyland_  _Lisa Optician_ el. **_(310) 278-3311_**  E-mail _jeff@jeffhyland.com/_ DRE Lic.# **_00389584/01960751_** Date 12/24/20
    F2C431938EF34EC  4F683D5C85A8401...    _lisa@hiltonhyland.com_
By _____ Tel. _____ E-mail _____    DRE Lic.# _____ Date _____

[ ] Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2020 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 6/20 (PAGE 5 OF 5)**



CALIFORNIA
ASSOCIATION
OF REALTORS®

**LISTING AGREEMENT**
**CORONAVIRUS ADDENDUM OR AMENDMENT**
(C.A.R. Form RLA-CAA, 7/13/20)

The following terms and conditions are hereby incorporated in and made a part of the Listing Agreement or ☐ Other _____
("Listing Agreement") dated
__12/21/2020__ on property known as ____12125 W. Sunset Blvd, Los Angeles, CA 90049____ ("Property")
in which _____**Hilton & Hyland**_____ is referred to as Broker
and _____**Bankruptcy estate of OS Susnet, LLC.**_____ is referred to as Seller
OR ☐ This is an amendment to the already existing Listing Agreement between Seller and Broker.

The current worldwide Coronavirus (COVID-19) pandemic has had unprecedented impacts on the real estate industry, affecting: Solicitation and marketing; Pre-contract showings, negotiations and inspections; Contract formation and expectations; Post-acceptance inspections and repairs; Loan applications, appraisals and approvals; and Closings. Local, State and Federal states of emergency, "Stay Home" orders, and Health Official and other Government mandates and recommendations (collectively, "COVID-19 Directives") have changed the way sellers and real estate licensees need to approach otherwise allowable or acceptable business practices. Seller and Broker acknowledge that there are mutual benefits in addressing the effects of the COVID-19 pandemic on the sale of the Property. In consideration for the mutual benefits contained herein, Seller and Broker agree as follows: This Addendum or Amendment shall remain in force until the earlier of either **(i)** the termination of all government orders, including local, State, and Federal, impacting the Property due to the COVID-19 pandemic or **(ii)** the mutual written termination of this Addendum or Amendment by Seller and Broker. **Brokers and Agents (i) will comply with COVID-19 Directives, notwithstanding any Party's instructions and (ii) will obey all Fair Housing laws while pursuing safe COVID-19 practices. Nothing contained in this Addendum or Amendment shall be construed to allow an activity that is otherwise prohibited by any law.**

1. **PROPERTY SHOWINGS:**
   A. Seller agrees (☐ DOES NOT agree - see paragraph 4) to allow prospective purchasers to enter the Property as specified below. Seller has been advised of the potential for visitors to the Property to be carriers of the COVID-19 virus. Broker has provided Seller with a ☒ Coronavirus Property Entry Advisory and Declaration - Seller/Occupant (C.A.R. Form PEAD-S), and ☒ C.A.R. Best Practices Guidelines/Prevention Plan for Showings (C.A.R. Document BPPP), or substantially equivalent forms approved by Broker. Seller and Broker agree to abide by the protocols set forth in those documents and this form.
   B. Prospective purchaser visitors will not be given permission to enter the Property until and unless:
      (1) They sign the Coronavirus Property Entry Advisory and Declaration - Visitor (C.A.R. Form PEAD-V).
      (2) ☐ They provide verification that they are financially able to purchase the Property, such as **(i)** verification of an all-cash purchase or **(ii)** a prequalification or preapproval from a lender or loan broker.
      (3) ☐ They represent that they have previously viewed the Property online.

2. **MARKETING ACTIVITIES:** In furtherance of the goal of selling the Property, and provided Broker and others sign C.A.R. Form PEAD-V, Seller agrees (☐ DOES NOT agree - see paragraph 4) to give permission to Broker and other authorized persons, to access the inside and outside of the Property in order to engage in ALL MARKETING ACTIVITY, including but not limited to those listed below, **OR**, only (see paragraph 4) those checked below:
   ☐ Install signage
   ☐ Provide landscape services
   ☐ Paint
   ☐ _____
   ☐ Prepare and remove staging
   ☐ Prepare an agent's visual inspection and disclosure
   ☐ Prepare a virtual tour or take photographs
   ☐ _____

3. **POST-ACCEPTANCE AND OTHER NECESSARY SALE ACTIVITIES:** In furtherance of the goal of completing the sale of the Property, and provided Broker and others sign C.A.R. Form PEAD-V, Seller agrees (☐ DOES NOT agree - see paragraph 4) to give permission to Broker and other authorized persons, to access the inside and outside of the Property in order to engage in all necessary real estate activities to facilitate the sale of the property, including but not limited to those below:
   ▶ Conduct a Homeowner's Association site inspection
   ▶ Prepare an appraisal or buyer insurance inspection
   ▶ Obtain county or other municipal or government inspections or permit approvals
   ▶ Prepare an agent's visual inspection and disclosure
   ▶ Put up or remove fumigation tents
   ▶ Conduct a final verification (walk-through)
   ▶ Pack and move Seller's furniture or belongings
   ▶ Prepare a home inspection, and necessary follow-up inspections, on behalf of the buyer
   ▶ Perform repairs agreed to in the purchase agreement, or improvements necessary to get the Property ready for sale, or prepare bids or estimates

Broker's Initials ( JH / LO )      Seller's Initials ( CO ) ( _____ )

© 2020, California Association of REALTORS®, Inc.

RLA-CAA 7/13/20 (PAGE 1 OF 2)

**LISTING AGREEMENT CORONAVIRUS ADDENDUM OR AMENDMENT (RLA-CAA PAGE 1 OF 2)**

4. **SELLER PROHIBITING OR LIMITING ACCESS TO PROPERTY:** If, pursuant to paragraph 1, 2 or 3, Seller instructs Broker that no, or limited, access to the Property will be permitted for marketing, showings, inspections or other purposes relating to the Property's sale, Seller understands that:
   A. Broker, other brokers, and prospective buyers may not be able to perform many activities typically conducted in, or in preparation for, a real estate transaction, such as, performing an agent's diligent, visual inspection, or a buyer conducting contractual inspections, including a final verification, of the Property. Any of those restrictions may limit the value or desirability of the Property.
   B. **It may be necessary to modify any real estate agreement entered into between Seller and a buyer to take into account the restricted access to the Property. Seller and Brokers are advised to seek the advice of a qualified California real estate attorney to draft applicable language intended to contractually prohibit or limit access by a buyer, Broker or other brokers as otherwise allowed by contract or law.**
5. **PROPERTY SHOWING AND ACCESS RULES:**
   A. **COVID-19 DIRECTIVES AND SHOWING RULES:** The California Departments of Public Health (CDPH) and Industrial Relations (Cal/OSHA) have issued COVID-19 Directives for real estate transactions that need to be followed. These Directives are available at https://covid19.ca.gov/pdf/guidance-real-estate.pdf;  https://covid19.ca.gov/pdf/checklist-real-estate.pdf;  and  https://www.dir.ca.gov/dosh/coronavirus/General-Industry.html. Broker's Prevention Plan and Showing Rules are located in the PEAD-S form and BPPP document specified in paragraph 1A.
   B. (1) **SHOWING REQUIREMENTS:** (i) Properties must be equipped with proper sanitizing products, including hand sanitizer and disinfecting wipes, and face coverings, at the entrance of the Property; (ii) Purchasers, real estate licensees, inspectors and other entrants must use face covers and wash or sanitize hands upon entry into the Property; (iii) During a showing, introduce fresh outside air, for example by opening doors/windows, weather permitting, and operating ventilation systems. Real estate licensees or sellers must open doorways or other areas of ingress and egress prior to in-person property showings to minimize clients touching surfaces.
   (2) **SHOWING REQUIREMENT COSTS:** ☐ Seller agrees to pay for necessary supplies of face coverings, and sanitizing products for hands and surfaces and _____
   C. (1) **CLEANING AND SANITIZING:** (i) Commonly touched surfaces and areas shall be cleaned and disinfected before and after each showing; (ii) Property showings shall be scheduled so as to allow adequate time for cleaning and disinfecting; and (iii) More information on cleaning and disinfecting can be found in the Mandatory Government Showing Requirements, including Best Practices Guidelines and Prevention Plan (C.A.R. Document BPPP).
   (2) **CLEANING AND SANITIZING COSTS:** ☐ Broker and agent are authorized to hire, in Seller's name, a service to clean and disinfect the Property, as required above. Seller agrees to pay the service directly or reimburse Broker or agent for any such activities directly billed to Broker or agent by the service provider.
6. **BROKER MARKETING PLAN:** If Broker's Listing Agreement included a marketing plan, that plan is modified to comport with safety guidelines and best practices established by Broker or the local Association of REALTORS® or ☐ in the attached addendum.
7. ☐ **TEMPORARY WITHDRAWAL OF PROPERTY FROM MARKET:** Broker agrees to pause marketing of the Property, including changing to an appropriate status on the MLS, and not to conduct any showings of the Property while this Addendum or Amendment is in effect. The Listing Agreement shall remain in effect during the temporary withdrawal and Broker shall immediately begin all appropriate marketing efforts upon termination of this Addendum or Amendment. The termination date of the Listing Agreement shall (☐ shall NOT) be extended by the same amount of time that the temporary withdrawal is in effect but in no event shall the termination date be extended beyond _____ (date).
8. **SCOPE OF BROKER DUTY:** Seller understands and agrees that Broker will abide by the terms of this Addendum or Amendment and use Broker's best efforts to obtain compliance by others. Broker will provide Seller with a copy of all PEAD forms signed by and received from any broker or other person entering the Property. Broker cannot and will not verify the representations of others nor guarantee their compliance with Seller's and Broker's instructions. Broker cannot and will not physically prevent entrance to the Property by others who do not agree to the instructions. If Broker becomes aware of such person's failure to comply with the instructions, Broker will promptly inform Seller and take efforts to prevent such person's future access to the property. Seller wants the potential benefits, and ASSUMES THE RISK, of allowing others to enter the Property. Seller releases Broker and its agents, from any loss, liability, expense, claim or cause of action that may arise from allowing entry upon the Property or are related in any manner to this Addendum or Amendment.
9. **ADDITIONAL TERMS:** _____

By signing below Seller and Broker acknowledge that each has read, understands, has received a copy of, and agrees to the terms of this Listing Agreement Coronavirus Addendum or Amendment.

Seller _____    ***Bankruptcy estate of OS Susnet, LLC.***    Date *12/22/2020*

Seller _____    Date _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real E ┌─ DocuSigned by: ─┐    ┌─ DocuSigned by: ─┐
By     │ *Jeff Hyland*   │ /s │ *Lisa Optican* │    DRE Lic# ***00389584/01960751***    Date 12/24/20
Jef    └─ F2C431938EF34ED... ─┘ └─ 4F683D5C85A6401... ─┘

© 2020, California Association of REALTORS®, Inc. Used with permission. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

R L  Published and Distributed by:
E L  REAL ESTATE BUSINESS SERVICES, LLC.
B s  *a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
S c  525 South Virgil Avenue, Los Angeles, California 90020



**RLA-CAA 7/13/20 (PAGE 2 OF 2)**

**LISTING AGREEMENT CORONAVIRUS ADDENDUM OR AMENDMENT (RLA-CAA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com    12125 Sunset Blvd



## CORONAVIRUS PROPERTY ENTRY
## ADVISORY AND DECLARATION – SELLER/OCCUPANT
(C.A.R. Form PEAD-S, 7/13/20)

**(Seller's Broker shall Deliver to Buyer's Broker a Signed Copy of this form upon request.)**

Property Address(es) _12125 W. Sunset Blvd_

1. **RISKS OF EXPOSURE:** The Coronavirus (COVID-19) pandemic is a worldwide risk to human health. COVID-19 is highly contagious. While people of all ages are at risk of catching COVID-19, persons with compromised immune systems and older persons may be at particular risk.

2. **GOVERNMENT ORDERS:** In order to reduce the spread of COVID-19, elected representatives and health officials from the State of California, as well as many California cities and counties have issued "Stay Home" Orders and other mandates and recommendations (collectively, "COVID-19 Directives"), limiting activities that can be engaged in by businesses and members of the public. Some city and county orders are more restrictive than, and may take precedence over, Federal and State guidelines.

3. **SELLER AND OCCUPANT ADVISORY:** Seller and occupant are advised that if you engage in any activities in violation of any COVID-19 Directives, you are acting against the advice of Broker. Brokers and Agents **(i)** will comply with COVID-19 Directives, notwithstanding any Party's instructions and **(ii)** will obey all Fair Housing laws while pursuing safe COVID-19 practices. Nothing contained in this form shall be construed to allow an activity that is otherwise prohibited by any law. You are required to take all reasonable steps necessary to protect yourself and others.

4. **SELLER OR OCCUPANT ACKNOWLEDGMENTS AND AUTHORIZATIONS: (i)** Seller or the occupant ("Signer") is voluntarily allowing someone to enter the Property; **(ii)** Signer has been advised that the Property shall be cleaned and disinfected before any persons are allowed to enter and after any such persons leave the Property. More information on cleaning and disinfecting can be found in the C.A.R. Best Practices Guidelines/Prevention Plan for Showings (C.A.R. Document BPPP); **(iii)** A set of rules for agents and entrants will be posted at the entrance of the Property and be clearly visible; and **(iv)** No written materials or brochures describing, advertising, or marketing the Property can be available on the Property; and **(v)** Signer authorizes Broker or agent to electronically deliver this form and any updates to it, and the above information, including the BPPP, to all entrants.

5. **SIGNER REPRESENTATIONS:**
   A. You understand that allowing access to the Property **(i)** may be dangerous or unsafe and **(ii)** could expose you or others to COVID-19. You are voluntarily allowing access to the Property;
   B. To the best of your knowledge, you are not currently afflicted with COVID-19;
   C. To the best of your knowledge, you have not knowingly, within the last 14 days, been in contact with someone afflicted with, COVID-19;
   D. You are not experiencing a fever, or signs of respiratory illness such as cough, shortness of breath or difficulty breathing, or other COVID-19 symptoms;
   E. You understand that persons may be afflicted with COVID-19 and: **(i)** not exhibit symptoms, **(ii)** not be aware that they are afflicted or **(iii)** may not voluntarily agree to disclose their condition; and,
   F. **You will inform Broker if, after the date this document is signed, there is a change in your health condition or knowledge that potentially puts others at risk or invalidates the representations made in this document.**

6. **MINOR OCCUPANTS:** Adult Signers acknowledge and agree that all Signer acknowledgments and Signer representations apply equally to any minors occupying the property as they do to Signer. All minors occupying the property shall be identified in paragraph 7.

7. **EXCEPTIONS TO REPRESENTATIONS AND ADDITIONAL TERMS:** _____
_____

8. **AGREEMENT, DECLARATION AND ASSUMPTION OF RISK:** By signing below, you are declaring the foregoing is true, that you agree to take all recommended and reasonable actions to protect yourself and others from exposure to COVID-19, and that you ASSUME THE RISK, of allowing someone to enter the Property. **You understand and agree that no one, including but not limited to real estate brokers and agents, can guarantee that you will not be exposed to or contract COVID-19.**

By signing below, you, the Signer, the person allowing entry to the Property, acknowledge that you have read, understand, voluntarily agree to the foregoing, and have received a copy of this Coronavirus Property Entry Advisory and Declaration.

_____    _____    Date _12/22/2020_
___Bankruptcy estate of OS Susnet, LLC.___                            (signature)
          (print name)
Person allowing entry: **[X]** Seller, ☐ Occupant

_____    _____    Date _____
          (print name)                                                (signature)
Person allowing entry: ☐ Seller, ☐ Occupant

_____    _____    Date _____
          (print name)                                                (signature)
Person allowing entry: ☐ Seller, ☐ Occupant

(For record keeping purposes only)

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS SIGNED PE̶̶̶̶̶̶̶̶̶̶DS   )I̶̶̶̶̶̶̶̶̶̶DS   )** initials below are not required but can be used as evidence
that the initialing party has received the completed form.)

Broker/Agent for Buyer ( _____ )          Broker/Agent for Se ___    Seller ( _____ ) ( _____ )

© 2020, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the *CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**PEAD-S 7/13/20 (PAGE 1 OF 1)**

## CORONAVIRUS PROPERTY ENTRY ADVISORY AND DECLARATION – SELLER/OCCUPANT
(PEAD-S PAGE 1 OF 1)

Hilton & Hyland, 257 N. Canon Drive Second Floor Beverly Hills CA 90210          Phone: (310) 278-3311    Fax: (310) 278-8088        12125 Sunset Blvd
Jeff Hyland                    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

E.  Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);
F.  Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;
G.  Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);
H.  Denying a home loan or homeowner's insurance;
I.  Offering inferior terms, conditions, privileges, facilities or services;
J.  Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;
K.  Harassing a person;
L.  Taking an adverse action based on protected characteristics;
M.  Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheel chair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);
N.  Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
    **(i)**  Failing to allow that person to keep the service animal or emotional support animal in rental property,
    **(ii)**  Charging that person higher rent or increased security deposit, or
    **(iii)**  Refusing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;
O.  Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**
A.  Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.
B.  Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
C.  Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
D.  Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").
E.  Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristic (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES**: If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.
A.  Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**
B.  State: **https://www.dfeh.ca.gov/housing/**
C.  Local: local Fair Housing Council office (non-profit, free service)
D.  DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**
E.  Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster.**
F.  Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**
A.  Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
B.  An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;
C.  An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;
D.  An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and
E.  Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).
F.  Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | | |
|---|---|---|
| Buyer/Tenant _____ | Date _____ |
| Buyer/Tenant _____ | Date _____ |
| Seller/Landlord _____ ***Bankruptcy estate of OS Susnet, LLC.*** | Date 12/22/2020 |
| Seller/Landlord _____ | Date _____ |

© 2020, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**FHDA 10/20 (PAGE 2 OF 2)**

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com    12125 Sunset Blvd



CALIFORNIA
ASSOCIATION
OF REALTORS®

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller _____ | _Bankruptcy estate of OS Susnet, LLC._ Date _12/22/2020_ |
| Seller _____ | Date _____ |
| Buyer _____ | Date _____ |
| Buyer _____ | Date _____ |
| Buyer's Brokerage Firm _____ | DRE Lic # _____ Date _____ |
| By _____ | DRE Lic # _____ Date _____ |
| Selle _Jeff Hyland_  H _Lisa Optican_ pt | DRE Lic # _01160681_  Date _12/21/2020_ |
| By | DRE Lic # _00389584/0196075_ Date _12/24/20_ |

DocuSigned by: Jeff Hyland F2C431938EF34ED...
DocuSigned by: Lisa Optican 4F683D5C85A6401...

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

PRBS REVISED 12/18 (PAGE 1 OF 1)
## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**WIRE FRAUD AND ELECTRONIC FUNDS
TRANSFER ADVISORY**
**(C.A.R. Form WFA, Revised 12/17)**

Property Address: *12125 W. Sunset Blvd, Los Angeles, CA  90049* _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant _____ Date _____

Buyer/Tenant _____ Date _____

Seller/Landlord _____ *Bankruptcy estate of OS Susnet, LLC.* Date |2/22/2020

Seller/Landlord _____ Date _____

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/17 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

**Mandatory Government Showing Requirements, including
Best Practices Guidelines and Prevention Plan**
(C.A.R. Document BPPP, 7/13/20)

All showings must comply with the applicable County COVID-19 Shelter-in-Place Order and the State COVID-19 guidelines published by California Departments of Public Health and Industrial Relations (Cal/OSHA) "COVID-19 INDUSTRY GUIDANCE: Real Estate Transactions" as updated on May 12, 2020.

# ⚠ Check Your City or County for More Restrictive Local Showing Rules

**More restrictive rules regarding showings by a County or City must still be followed.**

---

## Prevention Plan

Brokerages must:
- Establish a written COVID-19 "Prevention Plan" to be followed by agents who show properties.
- Regularly evaluate compliance with the plan and document and correct deficiencies identified.

**Unless otherwise specified, this entire document known as the "Mandatory Government Showing Requirements, including Best Practices Guidelines and Prevention Plan" is hereby adopted as Broker's "Prevention Plan."**

---

## Showing Rules for Listing and Buyer's Agents

1. Utilize virtual tours instead of in-person property showings whenever possible.
2. Do not hold "traditional" open houses or showings which are open to the general public on a walk-in basis. For all in-person visits, **(i)** agents must use an appointment or digital sign-in process to control the number of people in the house or property and **(ii)** the cleaning, social distancing and other government guidelines and best practices in the sections below shall be followed.
3. If you are going to hold a non-traditional "Open House" in compliance with government guidelines and these best practices, then any Open House signs and advertisements shall include a rider or express condition indicating that appointments or digital sign-in are required before entry.
4. Only one listing agent and one "buying party" are to be in a dwelling at the same time during a showing. A "buying party" may be more than one individual buyer and may include one agent for that party.
5. Show houses with occupants not present when possible. Sellers and tenants, in accordance with their legal rights, are to be advised that they should not be present within a dwelling at the same time as other individuals.
6. Agents conducting the showing should meet clients at the property and not drive the client to the property.
7. The listing agent must post the Posted Rules for Entry (C.A.R. Document PRE) at the entrance of the property. These Posted Rules for Entry or a link to them should be part of any online public and MLS listings.
8. Even though the client may have already been informed, real estate licensees should remind clients to maintain physical distancing during showings and to refrain from touching handles, switches, pulls, etc.
9. Real estate licensees or sellers/renters must open doorways or other areas of ingress and egress prior to in-person property showings to minimize clients touching surfaces. During a showing, introduce fresh outside air, for example by opening doors/windows, weather permitting, and operating ventilation systems.
10. All information must be delivered electronically. Discontinue providing handouts or other types of promotional or informational materials.

© 2020, California Association of REALTORS®, Inc.

BPPP 7/13/20 (PAGE 1 OF 2)

🏠 EQUAL HOUSING OPPORTUNITY

**BEST PRACTICES GUIDELINES AND PREVENTION PLAN (BPPP PAGE 1 OF 2)**

## Cleaning and Disinfecting the Property and Sanitation Products

1. The agent who shows the property shall follow cleaning and disinfecting protocols and provide sanitation products unless otherwise agreed. Where possible, do not clean floors by sweeping or other methods that can disperse pathogens into the air. Use a vacuum with a HEPA filter wherever possible.

2. Real estate licensees should ensure shown properties have proper sanitation products, including hand sanitizer, face coverings and disinfecting wipes, for use by visitors as needed. No showing should take place if these products are not available to those entering the property.

3. Shown properties should have commonly used surface areas cleaned and disinfected before and after each showing. Examples of commonly used surface areas are counters, door and cabinet handles, key lock boxes, keypads, toilets, sinks, light switches, etc. Disinfect mobility and safety fixtures on the property such as handrails and banisters, door knobs and locks.

4. No showing may occur unless the property is cleaned and disinfected before and after each showing. Sanitizers must be recognized by the CDC as effective in combatting COVID-19 (e.g., at least 60% ethanol or 70% isopropanol).

## Rules for Every Visitor

1. Prior to entering a property, all persons must have already signed a Coronavirus Property Entry Advisory and Declaration - Visitor form (C.A.R. Form PEAD-V) and delivered a copy of that signed form to the listing agent.

2. By signing the PEAD-V, the visitor is agreeing to both the Posted Rules of Entry (C.A.R. Document PRE) and this Prevention Plan or other plan adopted by the Broker. This is required of everyone entering the property including prospective buyers, agents, inspectors, appraisers, contractors, etc.

3. All visitors must maintain six feet of physical distance between unrelated persons.

4. All visitors must wear face coverings. For individuals with disabilities who cannot wear a face covering or face shield, the showing agent will engage in the interactive process with the individual to discuss any available reasonable accommodations.

5. All visitors must use hand sanitizer or wash their hands immediately upon entry.

6. All visitors must avoid touching knobs, faucets, toilets and toilet handles, light switches, garage door opener buttons, handles and pulls, alarm system controls, fan pulls, remotes, thermostats, switchboxes, gates and gate latches, window locks and sashes, pool coverings, and other such items.

## Rules for Sellers

If current occupants are present and/or participate during the showings, in accordance with their legal rights, they should adhere to the same standards regarding physical distancing and property cleaning and disinfecting protocols and promote a safe environment for all persons present.

© 2020, California Association of REALTORS®, Inc. Not subject to the C.A.R. User Protection Agreement.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**BPPP 7/13/20 (PAGE 2 OF 2)**



**BEST PRACTICES GUIDELINES AND PREVENTION PLAN (BPPP PAGE 2 OF 2)**



CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: **12125 W. Sunset Blvd, Los Angeles, CA  90049**_____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.

Seller's Initials ( X___ ) ( ___ )

**SA REVISED 12/15 (PAGE 1 OF 2)**

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

Hilton & Hyland, 257 N. Canon Drive Second Floor Beverly Hills CA 90210         Phone: (310) 278-3311         Fax: (310) 278-8088        12125 Sunset Blvd
Jeff Hyland                                    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Property Address: **12125 W. Sunset Blvd, Los Angeles, CA 90049**_____ Date: **12/21/2020**___

B. **Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

C. **Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

D. **Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do not have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

E. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

F. **Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

4. **MARKETING CONSIDERATIONS:**

A. **Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

B. **Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

C. **Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

D. **Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

5. **OTHER ITEMS:** _____

_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____ Date **12/22/2020**
Print Name **Bankruptcy estate of OS Susnet, LLC.**

Seller _____ Date _____
Print Name _____

| | | | |
|---|---|---|---|
| Real _DocuSigned by:_    _DocuSigned by:_ | **and** | | DRE Lic.#: **01160681** |
| By _Jeff Hyland_   _Lisa Optican_ | **Jeff Hyland/Lisa Optican** DRE Lic.# **00389584/01960751** | Date | **12/24/20** |
| By _F2C431938EF34ED_   _4F683D5C85A6401_ | | DRE Lic.# _____ | Date _____ |

Address **257 N. Canon Drive Second Floor**    City **Beverly Hills**    State **CA**    Zip **90210**
Telephone **(310) 278-3311**    Fax **(310) 278-8088**    E-mail **jeff@jeffhyland.com /lisa@hiltonhyland.com**

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



SA REVISED 12/15 (PAGE 2 OF 2)



**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY**
(C.A.R. Form CCPA, 12/19)

As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep your listing off the MLS. However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.**

Buyer/Seller/Landlord/Tenant _____ Date 12/22/2020
*Bankruptcy estate of OS Sunset, LLC.*

Buyer/Seller/Landlord/Tenant _____ Date _____

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA 12/19 (PAGE 1 OF 1)**



**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

| Hilton & Hyland, 257 N. Canon Drive Second Floor Beverly Hills CA 90210 | Phone: (310) 278-3311 | Fax: (310) 278-8088 | 12125 Sunset Blvd |
|---|---|---|---|
| Jeff Hyland | Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com | | |



CALIFORNIA
ASSOCIATION
OF REALTORS®

**MARKET CONDITIONS ADVISORY**
(C.A.R. Form MCA, Revised 11/11)

**1. MARKET CONDITIONS:** Real estate markets are cyclical and can change over time. It is impossible to predict future market conditions with accuracy. In a competitive or "hot" real estate market, there are generally more Buyers than Sellers. This will often lead to multiple buyers competing for the same property. As a result, in order to make their offers more attractive, some Buyers may offer more than originally planned or eliminate certain contingencies in their offers. In a less competitive or "cool" market there are generally more Sellers than Buyers, often causing real estate prices to level off or drop, sometimes precipitously. The sales price of homes being sold as foreclosures and short sales is difficult to anticipate and can affect the value of other homes in the area. Brokers, appraisers, Sellers and Buyers take these "distressed" property sales and listings into consideration when valuing property. In light of the real estate market's cyclical nature it is important that Buyers understand the potential for little or no appreciation in value, or an actual loss in value, of the property they purchase. This Advisory discusses some of the potential risks inherent in changing market conditions.

**2. BUYER CONSIDERATIONS:**
- **A. OFFERING PRICE:** AS A BUYER, YOU ARE RESPONSIBLE FOR DETERMINING THE PRICE YOU WANT TO OFFER FOR A PROPERTY. Although Brokers may provide you with comparable sales data, generally from information published in the local multiple listing service, you should know that the reporting of this data is often delayed and prices may change, up or down, faster than reported sales indicate. All buyers should be sure they are comfortable with the price they are offering or the price they are accepting in a counter offer. You should be aware of and think about the following: **(i)** If your offer is accepted, the property's value may not increase and may even decrease. **(ii)** If your offer is accepted, you may have "Buyer's remorse" that you paid too much. **(iii)** If your offer is rejected there can be no guarantee that you will find a similar property at the same price. **(iv)** If your offer is rejected, you may not be satisfied that the amount you offered was right for you. Only you can determine that your offer was reasonable and prudent in light of the property and your circumstances.

- **B. NON-CONTINGENT OFFERS:** Most residential purchase agreements contain contingencies allowing a Buyer within a specified period of time to cancel a purchase if: **(i)** the Buyer cannot obtain a loan; **(ii)** is dissatisfied with the property's condition after an inspection; or **(iii)** if the property does not appraise at a certain value. To make their offers more attractive, Buyers will sometimes write offers with few or no contingencies or offer to remove contingencies within a short period of time. In a "hot" market, sellers will sometimes insist that Buyers write offers with no contingencies. Broker recommends that Buyers do not write non-contingent offers and if you do so, you are acting against Broker's advice. However, if you do write a non-contingent offer these are some of the contractual rights you may be giving up:

  **(1)** LOAN CONTINGENCY: If you give up your loan contingency, and you cannot obtain a loan, whether through your fault or the fault of your lender, and as a result, you do not or cannot purchase the property, you may legally be in default under the contract and required to pay damages or forfeit your deposit to the seller.

  **(2)** APPRAISAL CONTINGENCY: If your lender's (or your own) appraiser does not believe the property is worth what you have agreed to pay for it, your lender may not loan the full amount needed for the purchase or may not loan any amount at all because of a low appraisal. As a result, if you do not purchase the property, and you have removed your appraisal contingency, you may legally be in default under the contract and could be required to pay damages to, or forfeit your deposit to, the Seller. The Seller is not obligated to reduce the purchase price to match the appraised value.

Buyer's Initials ( _____ ) ( _____ )          Seller's Initials ( _____ ) ( _____ )

© 2008-2011, California Association of REALTORS®, Inc.

**MCA REVISED 11/11 (PAGE 1 OF 2)**

MARKET CONDITIONS ADVISORY (MCA PAGE 1 OF 2)

Hilton & Hyland, 257 N. Canon Drive Second Floor Beverly Hills CA 90210          Phone: (310) 278-3311          Fax: (310) 278-8088          12125 Sunset Blvd
Jeff Hyland          Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Property Address: *12125 W. Sunset Blvd, Los Angeles, CA  90049* _____ Date: *December 21, 2020*

**(3)** INSPECTION CONTINGENCY: If you disapprove of the condition of the property and as a result, you do not purchase the property, you may legally be in default under the contract and required to pay damages to, or forfeit your deposit to, the Seller if you have removed your inspection contingency. However, even if you make an offer without an inspection contingency or you remove that contingency, the Seller may still be obligated to disclose to you material facts about the property. In some cases, once you receive that information the law gives you an independent right to cancel for a limited period of time.

There is inherent risk in writing a non-contingent offer. Only you, after careful consultation and deliberation with your attorney, accountant, or financial advisor can decide how much risk you are willing to take. IT IS YOUR DECISION ALONE AND CANNOT BE MADE BY YOUR BROKER OR REAL ESTATE AGENT.

**C. BROKER RECOMMENDATIONS.** Broker recommends that you do not write a non-contingent offer, even if you are planning on paying all cash for the property. If you intend to write a non-contingent offer, Broker recommends that, prior to writing the offer, you: **(i)** review all available Seller reports, disclosures, information and documents; **(ii)** have an appropriate professional inspect the property (even if it is being sold "as is" in its present condition); and **(iii)** carefully assess your financial position and risk with your attorney, accountant or financial advisor.

**D. MULTIPLE OFFERS:** At times Buyers may write offers on more than one property even though the Buyer intends to purchase only one. This may occur in a short sale when the approval process can take a considerable amount of time. While it is not illegal to make offers on multiple properties with intent to purchase only one, the Buyer can be obligated to many Sellers if more than one accepts the Buyer's offers. If the Buyer has not disclosed that the Buyer is writing multiple offers with the intent to purchase only one and the Buyer subsequently cancels without using a contingency, the Seller may claim the Buyer is in breach of contract because the Buyer fraudulently induced the Seller to enter into a contract.

**3. SELLER CONSIDERATIONS:**

As a Seller, you are responsible for determining the asking price for your property. Although Brokers may provide you with comparable sales data, generally from information published in the local multiple listing service, you should know that the reporting of this data is often delayed and prices may change, up or down, faster than reported sales indicate. All Sellers should be sure they are comfortable with the asking price they are setting and the price they are accepting. There is not, and cannot be, any guarantee that the price you decide to ask for your property, or the price at which you agree to sell your property is the highest available price obtainable for the property. It is solely your decision as to how much to ask for your property and at which price to sell your property.

**Buyer/Seller acknowledges each has read, understands and has received a copy of this Market Conditions Advisory.**

Buyer _____    Date _____

Buyer _____    Date _____

Seller _____    Date *12/22/2020*
**Bankruptcy estate of OS Susnet, LLC.**

Seller _____    Date _____

© 2008-2011, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® . NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**MCA 11/11 (PAGE 2 OF 2)**



**MARKET CONDITIONS ADVISORY (MCA PAGE 2 OF 2)**



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## DISCLOSURE INFORMATION ADVISORY
(FOR SELLERS)
(C.A.R. Form DIA, 6/20)

1. **INTRODUCTION:** All sellers in California are required to provide various disclosures in real property transactions. Among the disclosure requirements, sellers have an affirmative duty to disclose to buyers all material conditions, defects and/or issues known to them that might impact the value or desirability of the Property. Failing to provide those disclosures may lead to a claim or a lawsuit against you which can be very costly and time consuming. As a seller, you may be required to fill out one or more of the following: Real Estate Transfer Disclosure Statement ("TDS"); Seller Property Questionnaire ("SPQ"); Exempt Seller Disclosure ("ESD"). (Collectively, or individually, "Disclosure Forms"). Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **PREPARING TO COMPLETE YOUR DISCLOSURE OBLIGATIONS:**
   A. Read and carefully review all questions in the Disclosure Form(s) to make sure that you understand the full extent of the information that is being requested in each question.
   B. While a seller does not have the duty to investigate or discover unknown issues, you may have been given disclosures either from the previous owner at the time of purchase or from a previous buyer who cancelled. Information about the Property may have been revealed if you may have posted or recorded information and material facts about the Property online (social media, blogs, personal websites, Facebook, advertisements, etc.) or received documents or correspondence from an Homeowners' Association ("HOA").
   C. Use any known and available documentation to refresh your memory of past and current issues, condition and/or problems and then provide a copy of that paperwork with your fully completed Disclosure Forms. A seller does not have to find lost documents or to speculate about what was in the documents that they cannot remember, but if the documents are known and available to you, they should be used to assist you in completing the Disclosures forms.
   D. Allow plenty of time to fully complete the Disclosure Forms.
   E. Your knowledge may be based upon what you have been told orally (e.g., in a conversation with a neighbor) or received in writing (such as a repair estimate, report, invoice, an appraisal, or sources as informal as neighborhood or HOA newsletters). Keep in mind that if a neighbor told you something, they are likely to tell the new owner the same information after the transaction.
   F. If you are unsure about whether something is important enough to be disclosed, you should probably disclose it. If you don't want to disclose a piece of information about the Property, think about your reasoning for why you do not want to disclose this information. If the answer is because you think a buyer will not want to buy the Property or will want to purchase at a lower price, that is exactly the reason why the fact ought to be disclosed; it materially affects the value or desirability of the Property.

3. **INSTRUCTIONS FOR COMPLETING ALL DISCLOSURE FORMS:**
   A. **DO NOT** leave any questions blank or unanswered unless the section is not applicable. Answer all questions and provide all documents, information and explanations to every "Yes" response in the blank lines or in an addendum to the Disclosure Form.
   B. Many questions on the Disclosure Forms ask if you "are aware" of a particular condition, fact or item. If you do not know the answer to any question, then you are "not aware" and should answer that question "No."
   C. The Disclosure Forms are designed to get sellers to provide buyers with as much information as possible, and thus many of the questions on these forms may list multiple issues, conditions or problems and/or have subparts. It is important to address each aspect of each question and provide precise details so that Buyers will understand the "who, what, where, when and how."
   D. The Disclosure Forms are written using very broad language. You should not limit the information, documents, and/or explanations that you provide Buyers.
   E. Be specific and provide facts for each response; you should not let subjective beliefs limit, qualify or downplay your disclosures. Avoid words such as "never," "minor," "insignificant," "small" or "infrequent" as these terms may reflect your opinion but that opinion may not be shared by Buyers, professionals or others. Do not speculate as to what you guess the issue is, or assume something is true without actual knowledge. State your disclosures only to the extent of what you actually know.
   F. Consider all issues, conditions or problems that impact your Property, even those that are not necessarily on your Property but are related to a neighbor's property (such as shared fences, lot-line debates) or exist in the neighborhood (such as noise, smells, disputes with neighbors, or other nuisances).

© 2020, California Association of REALTORS®, Inc.



### DISCLOSURE INFORMATION ADVISORY (DIA PAGE 1 OF 3)

Hilton & Hyland, 257 N. Canon Drive Second Floor Beverly Hills CA 90210          Phone: (310) 278-3311          Fax: (310) 278-8088          12125 Sunset Blvd
Jeff Hyland                    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

G. Even if you have learned to live with an issue, condition or problem, disclose it.
H. Even if you believe that an issue, condition or problem has been repaired, resolved or stopped, disclose the issue and what has been done, but do not speculate, predict or guarantee the quality or effectiveness of the repair or resolution.
I. If there is conflicting information, data, and/or documents regarding any issue, condition or problem, disclose and identify everything.
J. Do not assume that you know the answer to all questions; for example, unless you personally obtained or received copies of permits do not assume that anyone who did work on the Property obtained permits.
K. If you are relying on written or oral information you received from someone else, even if you disagree with that information or are unsure as to its truth, disclose and identify the source of that information.

## 4. COMPLETING SPECIFIC TYPES OF DISCLOSURE DOCUMENTS:

### REAL ESTATE TRANSFER DISCLOSURE STATEMENT ("TDS") (Civil Code Section 1102.6)

**Section I** allows sellers to incorporate and provide reports and disclosures that relate to the information requested in that Disclosure Form. Providing those "Substituted Disclosures" does not eliminate your responsibility to fully and completely disclose all information known by you that is requested in the TDS. **For the TDS to be complete, one of the three boxes provided in Section I must be checked. If no Substituted Disclosures are being provided, Seller should check the box that indicates *"No substituted disclosures for this transfer."***

**Section I** allows sellers to incorporate and provide reports and disclosures that relate to the information requested in that Disclosure Form. Providing those "Substituted Disclosures" does not eliminate your responsibility to fully and completely disclose all information known by you that is requested in the TDS.

**Section II A** asks you to check a series of boxes to indicate what appliances, fixtures and other items exist on the property and asks whether any of those existing items are "not in operating condition", a term which is not defined. Consider whether the checked appliances, fixtures and items fully function as if they were new and if not, disclose any issues, limitations or problems. The TDS is not a contract and it does not control which items must remain with the property after close of escrow; the purchase agreement determines which items must remain. However, you should be careful not to represent an amenity that the property does not have, so do not assume that feature is there (i.e. sewer or central air conditioning), and only check the box if you know it is a part of the property.

**Section II B** asks if you are <u>aware</u> of any significant defects/malfunctions in certain identified areas of the property. There is no definition for "significant defects/malfunctions"; do not assume this terminology places any limits on what you need to disclose. If you check any of the boxes, please provide as much information as possible regarding the issues, conditions or problems that you know about the checked areas.

**Section II C** asks sixteen questions regarding the Property and the surrounding areas. These questions are written very broadly and contain multiple issues, conditions and/or problems. Make sure that you respond as to each issue, condition or problem. If you respond "Yes" to any question, you should provide as much information as possible about the issue.
If you are answering any of these questions "No" because you lack familiarity with the Property or the topic of any question, then you can explain the reasons, such as that you have not seen the Property in a long time or at all. This may help the buyers to understand that your "No" answer reflects the lack of awareness of the item, not that you are representing that the problem, condition or issue does not exist.

Question 16 in section II C refers to various code sections which part of a law are concerning construction defects that is widely known as SB 800 or Title 7. This law (Civil Code Sections 895-945.5) applies to residential real property built by a "Builder" and sold for the first time on or after January 1, 2003. If you have any questions about the applicability to the Property of any of the laws referenced in Question 16, or how you should answer this question, your Listing Agent recommends that you consult with a qualified California real estate attorney for advice. Your Listing Agent cannot and will not give you legal advice on these matters.

### SELLER PROPERTY QUESTIONNAIRE

The C.A.R. Residential Purchase Agreement requires Sellers to complete an SPQ for any transaction that requires a TDS because the TDS does not include questions regarding everything that sellers need to disclose to buyers. One example of a question not covered in the TDS but that is on the SPQ is whether there has been a death on the Property within the last 3 years (Civil Code Section 1710.2). Another example of a legally required disclosure that is not in the TDS, is the requirement that sellers of single family residences built prior to January 1, 1994 (and other properties built before that date) must disclose if the Property has any noncompliant plumbing fixtures (Civil Code Sections 1101.4 and 1101.5). 1. Any toilet that uses more than 1.6 GPF; 2. Any showerhead that has a flow capacity of more than 2.5 GPM and 3. Any interior faucet that emits more than 2.2 GPM. The SPQ should be used in conjunction with the TDS to help the seller carry out the obligation to disclose known material facts about the Property.

DIA 6/20 (PAGE 2 OF 3)

**DISCLOSURE INFORMATION ADVISORY (DIA PAGE 2 OF 3)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com          12125 Sunset Blvd

## EXEMPT SELLER DISCLOSURE ("ESD")

Some sellers of real property may be legally exempt from completing the TDS. For example, probate and bankruptcy court sales and sales by governmental entities are exempt from the obligation to provide a TDS. Some property that is owned by a trust which has trustee(s) acting in the capacity of a seller may also be exempt; but not all trustee(s) are exempt. If a qualified California real estate attorney has advised you that you are exempt from completing the TDS, then you may choose not to complete that form or any supplement to the TDS, but you may still be required to complete the ESD. Being exempt from completing certain Disclosure Forms does not completely eliminate those disclosure obligations that apply to all sellers under federal, state or local laws, ordinances or regulations and/or by contractual agreement with the buyer. The seller is still obligated to disclose all known material facts that may affect the value of the property. Further, the C.A.R. Residential Purchase Agreement requires those sellers who are exempt from the TDS to fill out the ESD. Pay particular attention to the "catch all" question, which asks you to disclose your awareness of any other material facts or defects affecting the property.

5. **FINAL RECOMMENDATIONS:**

It is important that you fully complete any legally or contractually required Disclosure Forms. To that end, the real estate Broker, and, if different, the real estate licensee, who listed the property for sale ("Listing Broker") strongly recommend that you consider the following points when completing your Disclosure Forms:

- If you are aware of any planned or possible changes to your neighbor's property (such as an addition), changes in the neighborhood (such as new construction or road changes) that may affect traffic, views, noise levels or other issues, conditions or problems, disclose those plans or proposed changes even if you are not certain whether the change(s) will ever occur.
- Disclose any lawsuits, whether filed in the past, presently filed or that will be filed regarding the property or the neighborhood (such as an HOA dispute) even if you believe that the case has been resolved. Provide as much detail as possible about any lawsuit, including the name of the case and the County where the case was filed.
- If any disclosure that you have made becomes inadequate, incomplete, inaccurate or changes over time, including right up until the close of escrow, you should update and correct your Disclosure Forms in a timely fashion.
- **If you have any questions about the applicability of any law to the Property, your Listing Broker recommends that you consult with a qualified California real estate attorney for advice. Your Listing Broker cannot and will not tell you if any law is applicable to the Property.**
- **If you need help regarding what to disclose, how to disclose it or what changes need to be made to your Disclosure Forms, the best advice is to consult with a qualified California real estate attorney for advice. Your Listing Broker cannot and will not tell you what to disclose, how to disclose it or what changes need to be made to your answers.**
- While limited exceptions may exist, such as questions that may impact fair housing and discrimination laws, generally speaking, **when in doubt, the best answer to the question: "Do I need to disclose ...?" is almost always "YES, disclose it."**

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this Advisory.

Seller _____    Date   12/22/2020
**Bankruptcy estate of OS Susnet, LLC.**

Seller _____    Date _____

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**DIA 6/20 (PAGE 3 OF 3)**

### DISCLOSURE INFORMATION ADVISORY (DIA PAGE 3 OF 3)

**CALIFORNIA ASSOCIATION OF REALTORS®**

## SELLER INSTRUCTION TO EXCLUDE LISTING FROM THE MULTIPLE LISTING SERVICE AND DAYS ON MARKET
(C.A.R. Form SELM, Revised 6/20)

This is an addendum ("Addendum") to the Listing Agreement or ☐ Other _____ ("Agreement")
dated __12/21/2020__ on property known as _____ 12125 W. Sunset Blvd, Los Angeles, CA 90049 ____ ("Property"),
in which _____ Bankruptcy estate of OS Susnet, LLC. _____ is referred to as Seller
and _____ Hilton & Hyland _____ is referred to as Broker.

1. **MULTIPLE LISTING SERVICE:** Broker is a participant/subscriber to the _____ CLAW _____ Multiple Listing Service (MLS). The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate licensees who are participants or subscribers to the MLS or a reciprocal MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's Property is offered for sale.
2. **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
   A. **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
   B. **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
   C. **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
3. **MANDATORY SUBMISSION TO MLS/CLEAR COOPERATION POLICY:**
   A. The MLS requires (☐ Does NOT require − see paragraph D below) brokers participating in the service to submit all exclusive right to sell and exclusive agency listings for residential real property with one-to-four units or vacant lots to the MLS within 1 business day of any public marketing of the Property.
   B. Public marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
   C. Excluding the Property from the MLS means that Seller is authorizing limited exposure of the Property and **(i)** no public marketing will occur and **(ii)** the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.
   D. ☐ **MLS HAS NOT ADOPTED THE NATIONAL ASSOCIATION OF REALTORS® CLEAR COOPERATION POLICY:** Broker's MLS rules govern the submission of listings differently than those set forth in paragraphs 3A, B, and C. With Seller's written consent, Broker may keep the Property out of the MLS. Seller certifies that Seller understands the implications of not submitting Property to the MLS and instructs Broker as follows. **DO NOT** submit Listing to the MLS (Check one):
      (1) ☐ For a period of _____ calendar days from the commencement of the listing
      (2) ☐ Until _____ (date).
      (3) ☐ During the entire listing period provided for in the Agreement.
4. **SELLER INSTRUCTION TO BROKER TO EXCLUDE PROPERTY FROM THE MLS:** (This paragraph 4 applies, unless 3D is checked.)
   A. ☒ Do NOT market the Property immediately. Begin marketing to the public on __seller request__ (date).
   OR B. ☐ Do NOT market the Property to the public during the entire listing period.
   C. Whether **A or B is selected**, Seller understands and agrees that should any public marketing of the property occur, the Property listing will be submitted to the MLS for cooperation with other brokers within 1 business day.

**Seller acknowledges that Seller has read, understands, accepts and has received a copy of this Addendum.**

Seller _____ Bankruptcy estate of OS Susnet, LLC. Date _12/22/2020_
Seller _____ Date _____

Real Estate Broker (Firm) _____ Hilton & Hyland ____ Lic. # _01160681_
By (Broker or Office Manager) _Jeff Hyland_ (DocuSigned by: F2C431938EF34ED...) Jeff Hyland Lic. # _00389584_ Date 12/24/20

© 2020, California Association of REALT... copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**SELM REVISED 6/20 (PAGE 1 OF 1)**

**SELLER INSTRUCTION TO EXCLUDE LISTING FROM MLS (SELM PAGE 1 OF 1)**



## STATEWIDE BUYER AND SELLER ADVISORY
**(This Form Does Not Replace Local Condition Disclosures.**
**Additional Advisories or Disclosures May Be Attached)**
(C.A.R. Form SBSA, Revised 6/18)

**BUYER RIGHTS AND DUTIES:**
- The physical condition of the land and improvements being purchased are not guaranteed by Seller or Brokers.
- You should conduct thorough investigations of the Property both personally and with appropriate professionals.
- If professionals recommend further inspections, you should contact qualified experts to conduct such inspections.
- You should retain your own professional even if Seller or Broker has provided you with existing reports.
- You should read all written reports given to you and discuss those reports with the persons who prepared them. It is possible that different reports provided to you contain conflicting information. If there are discrepancies between reports, disclosures or other information, you are responsible for contacting appropriate professionals to confirm the accuracy of correctness of the reports, disclosures or information.
- You have the right to request that the Seller make repairs or corrections or take other actions based on inspections or disclosures, but the Seller is not obligated to respond to you or make any such repairs, corrections or other requested actions.
- If the Seller is unwilling or unable to satisfy your requests, and you act within certain time periods, you may have the right to cancel the Agreement (the Purchase Agreement and any Counter Offer and Addenda together are the "Agreement"). If you cancel outside of these periods, you may be in breach of the Agreement and your deposit might be at risk.
- You are advised to seek legal, tax, and other assistance from appropriate professionals in order to fully understand the implications of any documents or actions during the transaction. If you are doing a 1031 exchange, you are advised to contact an exchange accommodator to discuss the proper method and timing of the exchange.
- The terms of the Agreement and any counter offers and addenda establish your rights and responsibilities.

**YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**SELLER RIGHTS AND DUTIES:**
- You have a duty to disclose material facts known to you that affect the value or desirability of the Property.
- You are obligated to make the Property available to the Buyer and have utilities on for inspections as allowed by the Agreement.
- This form is not a substitute for completing a Real Estate Transfer Disclosure Statement, if required, and any other property-specific questionnaires or disclosures.
- The terms of the Agreement establish your rights and responsibilities.
- You are advised to seek legal, tax, and other assistance from appropriate professionals in order to fully understand the implications of any documents or actions during the transaction. If you are doing a 1031 exchange, you are advised to contact an exchange accommodator to discuss the proper method and timing of the exchange.

**BROKER RIGHTS AND DUTIES:**
- Brokers do not have expertise in all areas and matters affecting the Property or your evaluation of it.
- For most sales of residential properties with no more than four units, Brokers have a duty to make a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose to you material facts or defects that the inspection reveals.
- Many defects and conditions may not be discoverable by a Broker's visual inspection.
- If Brokers give a referral to another professional, Brokers do not guarantee that person's performance. You may select any professional of your own choosing.
- If a Broker gives you reports or other documents, unless otherwise specified, it is possible that different reports provided to you contain conflicting information. Broker has not and will not verify or otherwise investigate the information contained therein.
- Any written agreement between a Broker and either Buyer or Seller or both establishes the rights and responsibilities of those parties.

©2018-2019, California Association of REALTORS®, Inc.



Hilton & Hyland, 257 N. Canon Drive Second Floor Beverly Hills CA 90210          Phone: (310) 278-3311          Fax: (310) 278-8088          12125 Sunset Blvd
Jeff Hyland          Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

DocuSign Envelope ID: D9330FF3-A785-4662-84B0-441C6A9E05FE

**Table of Contents**

**Notice: This Statewide Buyer and Seller Advisory is 14 pages and addresses the following topics. All paragraphs are important. Buyer and Seller are encouraged to read each one carefully.**

| | |
|---|---|
| **A. Investigation of Physical Conditions**<br><br>**(Pages 2-5)** | 1. Easements, Access and Encroachments,  2. Environmental Hazards, 3. Formaldehyde,  4. Geologic Hazards,  5. Inspections,  6. Mold, 7. Pets and Animals,  8. Septic Systems,  9. Soil and Geologic Conditions,  10. Square Footage, Lot Size, Boundaries and Surveys, 11. Water Intrusion,  12. Well and Water System(s),  13. Wood Destroying Pests |
| **B. Property Use and Ownership**<br><br>**(Pages 5-8)** | 1. Accessory Dwelling Units,  2. Building Permits, Zoning and Code Compliance, 3. Buyer Intended Future Use,  4. California Fair Plan,  5. Future Repairs, Replacements and Remodels,  6. Heating Ventilating and Air Conditioning Systems,  7. Historical Designation, Coastal Commission, Architectural, Landscape, Agricultural or Open Space and Other Restrictions on Buildings or Improvements,  8. Insurance, Title Insurance and Title Insurance After Foreclosure,  9. Land Lease,  10. Marijuana and Methamphetamine Labs,  11. Owner's Title Insurance,  12. Rent and Eviction Control Laws and Ordinances,  13. Retrofit, Building Requirements, and Point of Sale Requirements,  14. Short Term Rentals and Restrictions,  15. Views, 16. Swimming Pool, Security and Safety,  17. Water Shortages and Conservation,  18. 1915 Improvement Bond Mello-Roos Community District, and Other Assessment Districts |
| **C. Off-Site and Neighborhood Conditions**<br><br>**(Pages 8-9)** | 1. Golf Course Disclosures,  2. Neighborhood, Area, Personal Factors, Buyer Intended Use, High Speed Rails, and Smoking Restrictions, 3. Neighborhood Noise Sources,  4. Schools,  5. Underground Pipelines and Utilities |
| **D. Legal Requirements (Federal, State and Local)**<br><br>**(Pages 9-11)** | 1. Death on the Property,   2. Earthquake Fault Zones and Seismic Hazard Zones,  3. EPA's Lead-Based Paint Renovation, Repair and Painting Rule, 4. Fire Hazards,  5. FIRPTA/California Withholding,  6. Flood Hazards 7. Megan's Law Database Disclosure,  8. Property Tax Bill Supplemental Notice; Accurate Sales Price Reporting,  9. Zone Maps May Change |
| **E. Contract Related Issues and Terms**<br><br>**(Pages 11-12)** | 1. Arbitration,  2. Electronic Signatures,  3. Escrow Funds,  4. Home Warranty 5. Identification of Natural Persons Behind Shell Companies in All-Cash Transactions,  6. Liquidated Damages,  7. Mediation,  8. Non-Confidentiality of Offers,  9. Online or Wire Funds Transfers |
| **F. Other Factors Affecting Property**<br><br>**(Pages 12-14)** | 1. Community Enhancement and Private Transfer Fees,  2. General Recall/Defective Product/Class Action Information,  3. Homeowner Associations and Covenants, Conditions and Restrictions ("CC&Rs"); Charging Stations; FHA/VA Approval,  4. Legal Action,  5. Marketing; Internet Advertising; Internet Blogs; Social Media,  6. PACE Loans and Liens, 7. Re-Keying,  8. Solar Panel Leases  9. Recording Devices |
| **G. Local Disclosures and Advisories**<br><br>**(Page 14)** | As may be attached. |

# A. Investigation of Physical Conditions

1. **EASEMENTS, ACCESS AND ENCROACHMENTS:** Buyer and Seller are advised that confirming the exact location of easements, shared or private driveways or roadways, and encroachments on or to the Property may be possible only by conducting a survey. There may be unrecorded easements, access rights, encroachments and other agreements affecting the Property that may not be disclosed by a survey. Representations regarding these items that are made in a Multiple Listing Service or advertisements, or plotted by a title company are often approximations, or based upon inaccurate or incomplete records. Unless otherwise specified by Broker in writing, Brokers have not verified any such matters or any representations made by Seller(s) or others. If Buyer wants further information, Buyer is advised and Broker(s) recommend that Buyer hire a licensed surveyor during Buyer's inspection contingency period. Brokers do not have expertise in this area.

2. **ENVIRONMENTAL HAZARDS:** Buyer and Seller are advised that the presence of certain kinds of organisms, toxins and contaminants, including, but not limited to, mold (airborne, toxic or otherwise), fungi, mildew, lead-based paint and other lead contamination, asbestos, formaldehyde, radon, pcb's, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources,

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 2 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com   12125 Sunset Blvd   

urea formaldehyde, or other materials may adversely affect the Property and the health of individuals who live on or work at the property as well as pets. Some municipalities may impose additional requirements regarding underground storage tanks, which may be more common in certain areas and cities throughout the State, especially where there are larger, older homes built before 1935. It is possible that these tanks, either now or in the future, may require inspections or abatement. If Buyer wants further information, Buyer is advised, and Broker(s) recommends, that Buyer have the Property inspected for the existence of such conditions and organisms, and conditions that may lead to their formation. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Buyer is also advised to consult with appropriate experts regarding this topic during Buyer's inspection contingency period. Broker recommends that Buyer and Seller read the booklets titled, "Residential Environmental Hazards: A Guide for Homeowners, Homebuyers, Landlords and Tenants," and "Protect Your Family From Lead In Your Home." Brokers do not have expertise in this area.

3. **FORMALDEHYDE:** Formaldehyde is a substance known to the State of California to cause cancer. Exposure to formaldehyde may be caused by materials used in the construction of homes. The United States Environmental Protection Agency, the California Air Resources Board, and other agencies have measured the presence of formaldehyde in the indoor air of select homes in California. Levels of formaldehyde that present a significant cancer risk have been measured in most homes that were tested. Formaldehyde is present in the air because it is emitted by a variety of building materials and home products used in construction. The materials include carpeting, pressed wood products, insulation, plastics, and glues. Most homes that have been tested elsewhere do contain formaldehyde, although the concentrations vary from home to home with no obvious explanation for the differences. One of the problems is that many suppliers of building materials and home products do not provide information on chemical ingredients to builders. Buyers may have further questions about these issues. Buyer is advised to consult with appropriate experts regarding this topic during Buyer's inspection contingency period. Broker(s) recommend that Buyer and Seller read the booklet titled "Residential Environmental Hazards: A Guide for Homeowners, Homebuyers, Landlords and Tenants." Brokers do not have expertise in this area.

4. **GEOLOGIC HAZARDS:** Buyer and Seller are advised that California has experienced earthquakes in the past, and there is always a potential of future earthquakes. Damage caused by an earthquake may not be discoverable by a visual inspection of Buyer(s) or Broker(s). Inspection by a licensed, qualified professional is strongly recommended to determine the structural integrity and safety of all structures and improvements on the Property. If the Property is a condominium, or located in a planned unit development or in a common interest subdivision, Buyer is advised to contact the homeowners association about earthquake repairs and retrofit work and the possibility of an increased or special assessment to defray the costs of earthquake repairs or retrofit work. Buyer is encouraged to obtain and read the booklet entitled, "The Homeowner's Guide to Earthquake Safety." In most cases a questionnaire within the booklet must be completed by Seller and the entire booklet given to the Buyer if the Property was built prior to 1960. If the Property was built before 1975, and contains structures constructed of masonry or precast (tilt up) concrete walls, with wood frame floors or roof, or if the building has unreinforced masonry walls, then Seller must provide Buyer a pamphlet entitled "The Commercial Property Owner's Guide to Earthquake Safety." Many areas have a wide range of geologic problems and numerous studies have been made of these conditions. Some of this information is available for public review at city and county planning departments. Buyer is encouraged to review the public maps and reports and/or obtain a geologist's inspection report. Buyer may be able to obtain earthquake insurance to protect their interest in the Property. Sellers who agree to provide financing should also consider requiring Buyers to obtain such insurance naming Seller(s) as insured lien holder(s). Brokers do not have expertise in this area.

5. **INSPECTIONS:** Buyer and Seller are advised that Buyer has the right to obtain various inspections of the Property under most residential purchase agreements. Buyer is advised to have the Property inspected by a professional property inspection service within Buyer's inspection contingency period. A licensed building contractor or other professional may perform these services. The inspector generally does not look behind walls or under carpets, or take equipment apart. Certain items on the Property, such as chimneys and spark arresters, plumbing, heating, air conditioning, electrical wiring, pool and spa, septic system, well, roof, foundation and structural items may need to be inspected by another professional, such as a chimney sweep, plumber, electrician, pool and spa service, septic or well company or roofer. A general physical inspection typically will not test for mold, wood destroying pests, lead-based paint, radon, asbestos and other environmental hazards, geologic conditions, age, remaining useful life or water-tightness of roof, cracks, leaks or operational problems associated with a pool or spa or connection of the Property to a sewer system. If Buyer wants further information on any aspect of the Property, Broker recommends that Buyer have a discussion with the professional property inspector and that Buyer hire an appropriate professional for the area of concern to Buyer. Brokers do not verify the results of any such inspection or guarantee the performance of any such inspector or service. Any election by Buyer to waive the right to a physical inspection of the Property or to rely on somebody other than an appropriate professional is against the advice of Brokers. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Brokers do not have expertise in these area.

6. **MOLD:** Buyer and Seller are advised that the presence of certain kinds of mold, fungi, mildew and other organisms, sometimes referred to as "toxic mold" (collectively "Mold"), may adversely affect the Property and the health of individuals who live on or work at the Property as well as pets. Mold does not affect all people the same way, and may

SBSA REVISED 6/18 (PAGE 3 OF 14)

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 3 OF 14)**



not affect some people at all. Mold may be caused by water leaks or other sources of moisture such as, but not limited to, flooding, and leaks in windows, pipes and roof. Seller is advised to disclose the existence of any such conditions of which he or she is aware. Buyer should carefully review all of Seller's disclosures for any indication that any of these conditions exist. It is, however, possible that Mold may be hidden and that Seller is completely unaware of its existence. In addition, Mold is often undetectable from a visual inspection, a professional general property inspection and even a structural pest control inspection. Brokers do not have expertise in this area. If Buyer wants further information, Broker recommends that Buyer have the Property tested for Mold by an environmental hygienist or other appropriate professional during Buyer's inspection contingency period. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Brokers do not have expertise in this area.

7.  **PETS AND ANIMALS:** Buyer and Seller are advised that the current or previous owner(s) may have had domesticated or other pets and animals at the Property. Odors from animal urine or other contamination may be dormant for long periods of time and then become active because of heat, humidity or other factors and might not be eliminated by cleaning or replacing carpets or other cleaning methods. Pet urine and feces can also damage hardwood floors and other floor coverings. Additionally, an animal may have had fleas, ticks and other pests that remain on the Property after the animal has been removed. If Buyer wants further information, Broker(s) recommend that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

8.  **SEPTIC SYSTEMS:** Buyer and Seller are advised that a property may be served by one or more septic systems even though adjoining properties are connected to a sewer line. Buyer and Seller are also advised that some septic tanks and systems may have been abandoned or have leaked into ground water sources. Buyer is advised to contact the appropriate government agency to verify that the Property is connected to a sewer or served by a septic system. If the Property is served by a septic system, it may consist of a septic tank, cesspool, pits, leach lines or a combination of such mechanisms ("collectively, System"). No representation or warranty is made by Seller or Broker concerning the condition, operability, size, capacity or future expansion of a System, nor whether a System is adequate for use by the intended occupants of the Property. A change in the number of occupants or the quantity, composition or methods of depositing waste may affect the efficiency of the System. In addition, the amount of rainfall and ground water table may also affect the efficiency of the System. Many factors including, but not limited to, natural forces, age, deterioration of materials and the load imposed on a System can cause the System to fail at any time. Broker recommends that Buyer obtain an independent evaluation of any System by a qualified sanitation professional during Buyer's inspection contingency period. Buyer should consult with their sanitation professional to determine if their report includes the tank only, or other additional components of the System such as pits and leach fields. Not all inspectors are licensed and licenses are not available for all types of inspection activities. In some cases, Buyer's lender as well as local government agencies may require System inspection. System-related maintenance costs may include, but not be limited to, locating, pumping or providing outlets to ground level. Brokers are unable to advise Buyer or Seller regarding System-related issues or associated costs, which may be significant. If Buyer and Seller agree to obtain a System inspection, Buyer and Seller are cautioned that the inspection cost may include, but not be limited to, the costs of locating, pumping or providing outlets to ground level. Brokers do not have expertise in this area.

9.  **SOIL AND GEOLOGIC CONDITIONS:** Buyer and Seller are advised that real estate in California is subject to settling, slippage, contraction, expansion erosion, subsidence, earthquakes and other land movement. The Property may be constructed on fill or improperly compacted soil and may have inadequate drainage capability. Any of these matters can cause structural problems to improvements on the Property. Civil or geo-technical engineers are best suited to evaluate soil stability, grading, drainage and other soil conditions. Additionally, the Property may contain known or unknown mines, mills, caves or wells. If Buyer wants further information, Broker recommends that Buyer hire an appropriate professional. Not all inspectors are licensed and licenses are not available for all types of inspections. Brokers do not have expertise in this area.

10.  **SQUARE FOOTAGE, LOT SIZE, BOUNDARIES AND SURVEYS:** Buyer and Seller are advised that only an appraiser or land surveyor, as applicable, can reliably confirm square footage, lot size, Property corners and exact boundaries of the Property. Representations regarding these items that are made in a Multiple Listing Service, advertisements, and from property tax assessor records are often approximations, or based upon inaccurate or incomplete records. Fences, hedges, walls or other barriers may not represent actual boundary lines. Unless otherwise specified by Broker in writing, Brokers have not verified any such boundary lines or any representations made by Seller or others concerning square footage, lot size, Property corners or exact boundaries. Standard title insurance does not insure the boundaries of the Property. If the exact square footage or lot size or location of Property corners or boundaries is an important consideration in Buyer's decision to purchase the Property and/or how much Buyer is willing to pay for the Property, then Buyer must independently conduct Buyer's own investigation through appropriate professionals, appraisers, or licensed surveyors and rely solely on their data, recognizing that all measurements may not be consistent and that different sources may have different size assessments. Brokers do not have expertise in this area.

11.  **WATER INTRUSION:** Buyer and Seller are advised that many homes suffer from water intrusion or leakage. The causes of water intrusion are varied, and can include defective construction, faulty grading, deterioration of building materials and absence of waterproof barriers. Water intrusion can cause serious damage to the Property. This damage

SBSA REVISED 6/18 (PAGE 4 OF 14)

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 4 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com    12125 Sunset Blvd

can consist of wood rot, mold, mildew and even damage to the structural integrity of the Property. The cost of repairing and remediating water intrusion damage and its causes can be very significant. The existence and cause of water intrusion is often difficult to detect. Because you, your Broker or a general home inspector cannot visually observe any effects of water intrusion, Buyer and Seller should not assume that such intrusion does not exist. Broker recommends that Buyer have the Property inspected for water intrusion by an appropriate professional. Brokers do not have expertise in this area.

12. **WELL AND WATER SYSTEM(S):** Buyer and Seller are advised that the Property may be served by one or more water wells, springs, or private community or public water systems. Any of these private or public water systems may contain bacteria, chemicals, minerals and metals, such as chromium. Well(s) may have been abandoned on the Property. Buyer is advised to have both the quality and the quantity of water evaluated, and to obtain an analysis of the quality of any domestic and agricultural water in use, or to be used at the Property, from whatever source. Water quality tests can include not only tests for bacteria, such as coliform, but also tests for organic and inorganic chemicals, metals, mineral content and gross alpha testing for radioactivity. Broker recommends that Buyer consult with a licensed, qualified well and pump company and local government agency to determine whether any well/spring or water system will adequately serve Buyer's intended use and that Buyer have a well consultant perform an extended well output test for this purpose. Water well or spring capacity, quantity output and quality may change at any time. There are no guarantees as to the future water quality, quantity or duration of any well or spring. If Buyer wants further information, Broker(s) recommend that Buyer obtain an inspection of the condition, age, adequacy and performance of all components of the well/spring and any water system during Buyer's inspection contingency period. Brokers do not have expertise in this area.

13. **WOOD DESTROYING PESTS:** Buyer and Seller are advised that the presence of, or conditions likely to lead to the presence of infestation or infection of wood destroying pests and organisms may adversely affect the Property. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. If Buyer wants further information, Buyer is advised and Broker recommends that Buyer have the Property inspected for the existence of such conditions and organisms, and conditions that may lead to their formation, by a registered structural pest control company during Buyer's inspection contingency period. Brokers do not have expertise in this area.

# B. Property Use and Ownership

1. **ACCESSORY DWELLING UNITS:** Accessory Dwelling Units (ADUs) are known by many names: granny flats, in-law units, backyard cottages, secondary units and more. California has passed laws to promote the development of ADUs. Additional information about ADUs can be found at http://hcd.ca.gov/policy-research/AccessoryDwellingUnits.shtml. Buyer is advised to check with appropriate government agencies or third party professionals to verify permits and legal requirements and the effect of such requirements on current and future use and rentability of the Property, its development and size. Brokers do not have expertise in this area.

2. **BUILDING PERMITS, ZONING AND CODE COMPLIANCE:** Buyer and Seller are advised that any structure on the Property, including the original structure and any addition, modification, remodel or improvement may have been built without permits, not according to building codes, or in violation of zoning laws. Further, even if such structure was built according to the then-existing code or zoning requirement, it may not be in compliance with current building standards or local zoning. It is also possible that local law may not permit structures that now exist to be rebuilt in the event of damage or destruction. Certain governmental agencies may require periodic inspections to occur in the future. If Buyer wants further information, Broker(s) recommend that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

3. **BUYER INTENDED FUTURE USE OF, AND MODIFICATIONS TO, THE PROPERTY:** Buyer and Seller are advised that Seller's existing use of the property may not be consistent with Buyer's intended use or any future use that Buyer makes of the property, whether or not Buyer has any current plans to change the use. Buyer is advised to check with appropriate government agencies or third party professionals to verify what legal requirements are needed to accommodate any change in use. In addition, neither Seller nor Broker make any representations as to what modifications Buyer can make to the Property after close of escrow as well as any cost factors associated with any such modifications. Buyer is advised to check with his own licensed contractor and other such professionals as well as with the appropriate government agencies to determine what modifications Buyer will be allowed to make after close of escrow. Brokers do not have expertise in this area.

4. **CALIFORNIA FAIR PLAN:** Buyer and Seller are advised that insurance for certain hillside, oceanfront and brush properties may be available only from the California Fair Plan. This may increase the cost of insurance for such properties and coverage may be limited. Broker(s) recommend that Buyer consult with Buyer's own insurance agent during Buyer's inspection contingency period regarding the availability of coverage under the California Fair Plan and the length of time it may take for processing of a California Fair Plan application. Brokers do not have expertise in this area.

SBSA REVISED 6/18 (PAGE 5 OF 14)

STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 5 OF 14)
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com        12125 Sunset Blvd

5. **FUTURE REPAIRS, REPLACEMENTS AND REMODELS:** Buyer and Seller are advised that replacement or repairs of certain systems or rebuilding or remodeling of all or a portion of the Property may trigger requirements that homeowners comply with laws and regulations that either come into effect after Close of Escrow or are not required to be complied with until the replacement, repair, rebuild or remodel has occurred. Permit or code requirements or building standards may change after Close of Escrow, resulting in increasing costs to repair existing features. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

6. **HEATING VENTILATING AND AIR CONDITIONING SYSTEMS:** Changes to state and federal energy efficiency regulations impact the installation, replacement and some repairs of heating and air conditioning units (HVAC): **(i)** Federal regulations now require manufacturers of HVAC units to produce only units meeting a new higher Seasonal Energy Efficiency Rating (SEER). This will likely impact repairs and replacements of existing HVAC units. State regulations now require that when installing or replacing HVAC units, with some exceptions, duct work must be tested for leaks. Duct work leaking more than 15 percent must be repaired to reduce leaks. The average existing duct work typically leaks 30 percent. More information is available at the California Energy Commission's website http://www.energy.ca.gov/title24/changeout. Home warranty policies may not cover such inspections or repairs, **(ii)** the phase out of the use of HCFC-22 (R-22 Freon) will have an impact on repairs and replacement of existing air conditioning units and heat pumps. The production and import of HCFC-22 ended January 1, 2020. Existing systems may continue to be used and HCFC-22 recovered and reclaimed or that was produced prior to 2020 can help meet the needs of existing systems, however, costs may rise. More information is available from the Environmental Protection Agency at https://www.epa.gov/sites/production/files/2018-08/documents/residential_air_conditioning_and_the_phaseout_of_hcfc-22_what_you_need_to_know.pdf and http://www.epa.gov/ozone/title6/phaseout/22phaseout.html, and **(iii)** New efficiency standards are also in place for water heaters. As a consequence, replacement water heaters will generally be larger than existing units and may not fit in the existing space. Additional venting and other modifications may be required as well. More information is available from the U.S. Department of Energy at http://www.eere.energy.gov/buildings/appliance_standards/product.aspx/productid/27. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

7. **HISTORICAL DESIGNATION, COASTAL COMMISSION, ARCHITECTURAL, LANDSCAPE, AGRICULTURAL OR OPEN SPACE AND OTHER RESTRICTIONS ON BUILDINGS OR IMPROVEMENTS:** Buyer and Seller are advised that the Property may be: **(i)** designated as a historical landmark, **(ii)** protected by a historical conservancy, **(iii)** subject to an architectural or landscaping review process, **(iv)** within the jurisdiction of the California Coastal Commission or other government agency, or **(v)** subject to a contract preserving use of all or part of the Property for agriculture or open space. If the Property is so designated or within the jurisdiction of any such, or similar, government agency, then there may be restrictions or requirements regarding Buyer's ability to develop, remove or trim trees or other landscaping, remodel, make improvements to and build on or rebuild the Property. Broker(s) recommend that Buyer satisfy him/herself during Buyer's inspection contingency period if any of these issues are of concern to Buyer. Brokers do not have expertise in this area.

8. **INSURANCE, TITLE INSURANCE AND TITLE INSURANCE AFTER FORECLOSURE:** Buyer and Seller are advised that Buyer may have difficulty obtaining insurance regarding the Property if there has been a prior insurance claim affecting the Property or made by Buyer but unrelated to the Property. Seller is required by C.A.R. Form RPA to disclose known insurance claims made during the past five years (C.A.R. Form SPQ or ESD). Sellers may not be aware of claims prior to their ownership. If Buyer wants further information, Broker(s) recommend that, during Buyer's inspection contingency period, Buyer conduct his or her own investigation for past claims. Buyer may need to obtain Seller's consent in order to have access to certain investigation reports. If the Property is a condominium, or is located in a planned unit development or other common interest subdivision, Buyer and Seller are advised to determine if the individual unit is covered by the Homeowner's Association Insurance and the type of insurance coverage that Buyer may purchase. Broker(s) recommend that Buyer consult Buyer's insurance agents during Buyer's inspection contingency period to determine the need, availability and possibility of securing any and all forms of other insurance or coverage or any conditions imposed by insurer as a requirement of issuing insurance. If Buyer does any repairs to the property during the escrow period or Buyer takes possession prior to Close of Escrow or Seller remains in possession after Close of Escrow, whether for a limited or extended period of time, Broker(s) recommend that Buyer and Seller each consult with their own insurance agent regarding insurance or coverage that could protect them in the transaction (including but not limited to: personal property, flood, earthquake, umbrella and renter's). Buyer and Seller are advised that traditional title insurance generally protects Buyer's title acquired through the sale of the property. While all title insurance policies, as do all insurance policies, contain some exclusions, some title insurance policies contain exclusions for any liability arising from a previous foreclosure. This can occur when a short sale has occurred but the lender mistakenly has also proceeded with a foreclosure. Buyer is strongly advised to consult with a title insurer to satisfy themselves that the policy to be provided adequately protects their title to the property against other possible claimants. Brokers do not have expertise in this area.

9. **LAND LEASE:** Buyer and Seller are advised that certain developments are built on leased land. This means that: **(i)** Buyer does not own the land, **(ii)** the right to occupy the land will terminate at some point in time, **(iii)** the cost to lease the land may increase at some point in the future, and **(iv)** Buyer may not be able to obtain title insurance or may have to obtain a different type of title insurance. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an attorney or other appropriate professional. Brokers do not have expertise in this area.

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 6 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com    12125 Sunset Blvd

10. **MARIJUANA, CANNABIS, AND METHAMPHETAMINE LABS:** Buyer and Seller are advised that California law permits individual patients to cultivate, possess and use marijuana for medical purposes. Furthermore, California law permits primary caregivers, lawfully organized cooperatives, and collectives to cultivate, distribute and possess marijuana for medicinal purposes. California law also allows recreational use of marijuana for adults, as well as limited rights for individuals to grow and cultivate marijuana, and rights of others, subject to a licensing process, to grow, cultivate and distribute marijuana for recreational use. California's medical and recreational marijuana laws are in direct conflict with federal law which recognizes no lawful use for marijuana and has no exemptions for medical use. Federal criminal penalties, some of which mandate prison time, remain in effect for the possession, cultivation and distribution of marijuana. Buyer and Seller are strongly advised to seek legal counsel as to the legal risks and issues surrounding owning or purchasing a property where medical or any other marijuana activity is taking place. Marijuana storage, cultivation and processing carry the risk of causing mold, fungus or moisture damage to a property, additionally, some properties where marijuana has been cultivated have had alterations to the structure or the electrical system which may not have been done to code or with permits and may affect the safety of the structure or the safe operation of the electrical system. Buyer is strongly advised to retain an environmental hygienist contractor and other appropriate professionals to inspect a property where medical or any other marijuana activity has taken place. Broker recommends that Buyer and Seller involved with a property where there is medical marijuana activity or where it may take place review the California Attorney General's Guidelines for the "Security and Non-Diversion of Marijuana Grown for Medical Use" https://oag.ca.gov/system/files/attachments/press-docs/MEDICINAL%20CANNABIS%20Guidelines.pdf and the U.S. Department of Justice memo regarding marijuana prosecutions at https://www.justice.gov/opa/press-release/file/1022196/download. Brokers do not have expertise in this area. While no state law permits the private production of methamphetamine, some properties have been the site of an illegal methamphetamine laboratory. State law imposes an obligation to notify occupants, a ban on occupying the property and clean up requirements when authorities identify a property as being contaminated by methamphetamine. Buyer is advised that a property where methamphetamine has been produced may pose a very serious health risk to occupants. Buyer is strongly advised to retain an environmental hygienist contractor or other appropriate professionals to inspect the property if methamphetamine production is suspected to have taken place. Brokers do not have expertise in this area.

11. **OWNER'S TITLE INSURANCE:** The Truth in Lending/RESPA integrated disclosure (TRID) established by the Consumer Financial Protection Bureau (CFPB) requires that lenders must tell borrowers that title insurance is "optional." While obtaining an owner's policy of title insurance may be "optional", it may be a contractual requirement as between Buyer and Seller. Furthermore, California Civil Code § 1057.6 requires that Buyers be provided with the following notice: "IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING."

Additionally, even the CFPB on its "ask CFPB" "What is owner's title insurance?" page advises "You may want to buy an owner's title insurance policy, which can help protect your financial interest in the home." Moreover, not obtaining an owner's policy may increase the cost of the lender's policy (required by most lenders), possibly require the separate purchase of a preliminary title report, and may have an impact on the sale of the Property in the future.

Buyers who decide to opt out of obtaining an owner's title insurance policy are acting against the advice of Brokers as well as the advice provided in the California Civil Code 1057.6 and by the CFPB. Brokers do not have expertise in this area.

12. **RENT AND EVICTION CONTROL LAWS AND ORDINANCES:** Buyer and Seller are advised that California and some cities and counties impose or may impose restrictions that limit the rent that can be charged to a tenant, the maximum number of tenants who can occupy the property, the right of a landlord to terminate a tenancy and the costs to do so. If Buyer wants further information, Broker(s) recommend that Buyer investigate the issue with an appropriate government authority or HOA during Buyer's inspection contingency period. Brokers do not have expertise in this area.

13. **RETROFIT, BUILDING REQUIREMENTS, AND POINT OF SALE REQUIREMENTS:** Buyer and Seller are advised that state and local Law may require **(i)** the installation of operable smoke detectors, **(ii)** bracing or strapping of water heaters, and **(iii)** upon sale completion of a corresponding written statement of compliance that is delivered to Buyer. Although not a point of sale or retrofit obligation, state law may require the property to have operable carbon monoxide detection devices. Additionally, some city and county governments may impose additional retrofit standards at time of sale including, but not limited to, installing or retrofitting low-flow toilets and showerheads, gas shut-off valves, fireplaces, and tempered glass. Further, there may be potential health impacts from air pollution caused from burning wood. Exposure to particulate matter from the smoke may cause short-term and long-term health effects. Buyers should consult with licensed professional to inspect, properly maintain, and operate a wood burning stove or fireplace. Broker(s) recommend that Buyer and Seller consult with the appropriate government agencies, inspectors, and other professionals to determine the retrofit standards for the Property, the extent to which the Property complies with such standards, and the costs, if any, of compliance. Brokers do not have expertise in this area.

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 7 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com    12125 Sunset Blvd

**14. SHORT TERM RENTALS AND RESTRICTIONS:** Buyer and Seller are advised that some cities, counties and Homeowner Associations (HOAs) do impose or may impose restrictions that limit or prohibit the right of the owner or occupant to rent-out the Property for short periods of time (usually 30 Days or less). In short term rentals, as well as all rentals, Buyer and Seller are advised to seek assistance to ensure compliance with all fair housing laws and regulations. If Buyer wants further information, Broker(s) recommend that Buyer investigate the issue with an appropriate government authority or HOA during Buyer's inspection contingency period. Brokers do not have expertise in this area.

**15. VIEWS:** Buyer and Seller are advised that present views from the Property may be affected by future development or growth of trees and vegetation on adjacent properties and any other property within the line of sight of the Property. Brokers make no representation regarding the preservation of existing views. If Buyer wants further information, Broker(s) recommend that Buyer review covenants, conditions and restrictions, if any, and contact neighboring property owners, government agencies and homeowner associations, if any, during Buyer's inspection contingency period. Brokers do not have expertise in this area.

**16. SWIMMING POOL, SECURITY AND SAFETY:** Buyer and Seller are advised that state and local Law may require the installation of barriers, anti-entrapment grates, access alarms, self-latching mechanisms, pool covers, exit alarms and/ or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. If Buyer wants further information, Broker(s) recommend that Buyer contact local government agencies about these restrictions and other requirements. State law requires that new pools and spas be equipped with at least two of seven specified drowning prevention safety features. Home inspectors have a statutory obligation to perform a noninvasive physical examination of the pool area to identify which safety features are present. Brokers do not have expertise in this area.

**17. WATER SHORTAGES AND CONSERVATION:** Buyer and Seller are advised that the Property may be located in an area that could experience water shortages. The policies of local water districts and the city or county in which the Property is located can result in the occurrence of any or all of the following: **(i)** limitations on the amount of water available to the Property, **(ii)** restrictions on the use of water, and **(iii)** an increasingly graduated cost per unit of water use, including, but not limited to, penalties for excess usage. For further information, Broker recommends that Buyer contact the supplier of water to the Property regarding the supplier's current or anticipated policies on water usage and to determine the extent to which those policies may affect Buyer's intended use of the Property. If the Property is serviced by a private well, Buyer is advised that drought conditions and/or a low water table may make it necessary to arrange, through a private supplier, for delivery of water to the Property. Buyers should contact water truck companies for the costs involved. Brokers do not have expertise in this area.

**18. 1915 IMPROVEMENT BOND MELLO-ROOS COMMUNITY DISTRICT, AND OTHER ASSESSMENT DISTRICTS:** Buyer and Seller are advised that the Property may be subject to an improvement bond assessment under the Improvement Bond Act of 1915, a levy of a special tax pursuant to a Mello-Roos Community Facilities district, and/or a contractual assessment as provided in Section 5898.24 of the Streets And Highways Code or other assessment districts. Seller is generally required to make a good faith effort to obtain a disclosure notice from any local agency collecting such taxes and deliver such notice to Buyers. If there is a question as to whether an existing bond or assessment will be prorated as of the close of escrow, or whether Seller will pay off the bond or assessment at close of escrow, Buyers are advised to discuss the matter with the appropriate entity and address the responsibility for payment in negotiations for the purchase agreement or amendment prior to removing contingencies. Some cities and other localities have begun, or have the intention to begin, the process of requiring the replacement of utility poles by requiring that utility lines be buried underground. These projects can result in special tax assessments and set-up costs that are imposed on individual property owners. Brokers do not have expertise in this area.

# C. Off-Site and Neighborhood Conditions

**1. GOLF COURSE DISCLOSURES:** Buyer and Seller are advised that if the Property is located adjacent to or near a golf course the following may apply: **(i)** Stray golf balls − Any residence near a golf course may be affected by errant golf balls, resulting in personal injury or destruction to property. Golfers may attempt to trespass on adjacent property to retrieve golf balls even though the project restrictions may expressly prohibit such retrieval. **(ii)** Noise and lighting − The noise of lawn mowers irrigation systems and utility vehicles may create disturbances to homeowners. Maintenance operations may occur in the early morning hours. Residents living near the clubhouse may be affected by extra lighting, noise, and traffic. **(iii)** Pesticides and fertilizer use − A golf course may be heavily fertilized, as well as subjected to other chemicals during certain periods of the year. **(iv)** Irrigation system − Golf course sprinkler systems may cause water overspray upon adjacent property and structures. Also the irrigation system of a golf course may use reclaimed and retreated wastewater. **(v)** Golf carts − Certain lots may be affected more than others by the use of golf carts. Lots adjacent to a tee or putting green may be subject to noise disturbances and loss of privacy. **(vi)** Access to golf course from residences − It is likely that most residences will not have direct access from their lots to the golf course. The project restrictions may disclaim any right of access or other easements from a resident's lot onto the golf course. **(vii)** View obstruction − Residents living near a golf course may have their views over the golf course impacted by maturing trees and landscaping or by changes to the course's configuration. **(viii)** Water restrictions − As some municipalities face water shortages, the continued



**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 8 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com    12125 Sunset Blvd

availability of water to the golf course may be restricted or otherwise reduced by the local water agency. If Buyer wants further information, Broker(s) recommend that Buyer contact the local water agency regarding this matter. Brokers do not have expertise in this area.

2. **NEIGHBORHOOD, AREA, PERSONAL FACTORS, BUYER INTENDED USE, HIGH SPEED RAILS, AND SMOKING RESTRICTIONS:** Buyer and Seller are advised that the following may affect the Property or Buyer's intended use of it: neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to medical marijuana growing or distribution locations, cell phone towers, manufacturing, commercial, industrial, airport or agricultural activities or military ordnance locations, existing and proposed transportation, construction, and development, any other source that may affect noise, view, traffic, or odor, wild and domestic animals, susceptibility to tsunami and adequacy of tsunami warnings, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally-protected sites or improvements, cemeteries, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer and FAA requirements for recreational and non-recreational use of Unmanned Aircraft Systems (UAS) (drones) (see UAS frequently asked questions http://www.faa.gov/uas/faqs/). California is potentially moving toward high speed rail service between Northern and Southern California. This rail line could have an impact on the Property if it is located nearby. More information on the timing of the project and routes is available from the California High-Speed Rail Authority at www.cahighspeedrail.ca.gov/. The State of California has long-standing no smoking laws in place restricting smoking in most business and some public spaces. Local jurisdictions may enact laws that are more restrictive than state law. Many California cities have enacted restrictions on smoking in parks, public sidewalks, beaches and shopping areas. Some jurisdictions have restrictions entirely banning smoking inside privately owned apartments and condominiums as well as in the common areas of such structures, or limiting smoking to certain designated areas. If Buyer wants further information, Broker(s) recommend that Buyer contact local government agencies about these restrictions. Brokers do not have expertise in this area.

3. **NEIGHBORHOOD NOISE SOURCES:** Buyer and Seller are advised that even if the Property is not in an identified airport noise influence area, the Property may still be subject to noise and air disturbances resulting from airplanes and other aircraft, commercial or military or both, flying overhead. Other common sources of noise include nearby commercial districts, schools, traffic on streets, highways and freeways, trains and general neighborhood noise from people, dogs and other animals. Noise levels and types of noise that bother one person may be acceptable to others. Buyer is advised to satisfy him/herself with regard to any sources of and amounts of noise at different times of day and night. Brokers do not have expertise in this area.

4. **SCHOOLS:** Buyer and Seller are advised that children living in the Property may not, for numerous reasons, be permitted to attend the school nearest the Property. Various factors including, but not limited to, open enrollment policies, busing, overcrowding and class size reductions may affect which public school serves the Property. School district boundaries are subject to change. Buyer is advised to verify whether the Property is now, and at the Close of Escrow will be, in the school district Buyer understands it to be in and whether residing in the Property entitles a person to attend any specific school in which that Buyer is interested. Broker(s) recommend that Buyer contact the local school or school district for additional information during Buyer's inspection contingency period. Brokers do not have expertise in this area.

5. **UNDERGROUND PIPELINES AND UTILITIES:** Throughout California underground pipelines transport natural gas, liquid fuel and other potentially hazardous materials. These pipelines may or may not provide utility services to the Property. Information about the location of some of the pipelines may be available from a company that also provides disclosures of natural and other hazards or from other sources of public maps or records. Proximity to underground pipelines, in and of itself, does not affirmatively establish the risk or safety of the property. If Buyer wants further information about these underground pipelines and utilities, Buyer is advised to consult with appropriate experts during Buyer's inspection contingency period. Brokers do not have expertise in this area.

# D. Legal Requirements (Federal, State and Local)

1. **DEATH ON THE PROPERTY:** California Civil Code Section 1710.2 protects a seller from: **(i)** failing to disclose a death on the property that occurred more than 3 years before a buyer has made an offer on a property; and **(ii)** failing to disclose if an occupant of a property was afflicted with HIV/AIDS, regardless of whether a death occurred or if so, when. Section 1710.2 does not protect a seller from making a misrepresentation in response to a direct inquiry. If the Buyer has any concerns about whether a death occurred on the Property or the manner, location, details or timing of a death, the buyer should direct any specific questions to the Seller in writing. Brokers do not have expertise in this area.

2. **EARTHQUAKE FAULT ZONES AND SEISMIC HAZARD ZONES:** Buyer and Seller are advised that California Public Resources Code Sections 2622 and 2696 require the delineation and mapping of "Earthquake Fault Zones" along known active faults and "Seismic Hazard Zones" in California. Affected cities and counties must regulate certain development projects within these zones. Construction or development on affected properties may be subject to the findings of a geological report prepared by a registered California geologist. Generally, Seller must disclose if the Property is in such a zone and can use a research company to aid in the process. If Buyer wants further information, Broker recommends that, during Buyer's inspection contingency period, Buyer make independent inquiries with such research companies or



**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 9 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com    12125 Sunset Blvd

with appropriate government agencies concerning the use and improvement of the Property. Buyer is advised that there is a potential for earthquakes and seismic hazards even outside designated zones. Brokers do not have expertise in this area.

3. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at http://www.epa.gov/lead for more information. Buyer and Seller are advised to consult an appropriate professional. Brokers do not have expertise in this area.

4. **FIRE HAZARDS:** Buyer and Seller are advised that fires annually cause the destruction of thousands of homes. Due to varied climate and topography, certain areas have higher risks of fires than others. Certain types of materials used in home construction create a greater risk of fire than others. If the Property is located within a State Fire Responsibility Area or a Very High Fire Hazard Zone, generally Seller must disclose that fact to Buyer under California Public Resources Code Section 4136 and California Government Code Sections 51178 and 51183.5, and may use a research company to aid in the process. Owners of property may be assessed a fire prevention fee on each structure on each parcel in such zones. The fee may be adjusted annually commencing July 1, 2013. If Buyer wants further information, Broker recommends that, during Buyer's inspection contingency period, Buyer contact the local fire department and Buyer's insurance agent regarding the risk of fire. Buyer is advised that there is a potential for fires even outside designated zones. Brokers do not have expertise in this area.

5. **FIRPTA/CALIFORNIA WITHHOLDING:** Buyer and Seller are advised that: (i) Internal Revenue Code Section 1445, as of February 17, 2016, requires a Buyer to withhold and to remit to the Internal Revenue Service 15% of the purchase price of the property if the Seller is a non-resident alien, unless an express exemption applies. Only 10% needs to be withheld if the Buyer acquires the property as Buyer's residence and the price does not exceed $1,000,000. Seller may avoid withholding by providing Buyer a statement of non-foreign status. The statement must be signed by Seller under penalty of perjury and must include Seller's tax identification number. Buyer can also avoid having to withhold Federal taxes from Seller's Proceeds if the property price is $300,000 or less, and the Buyer signs an affidavit stating Buyer intends to occupy the property as a principal residence. (ii) California Revenue and Taxation Code Section 18662 requires that a Buyer withhold and remit to the California Franchise Tax Board 3 1/3% of the purchase price of the property unless the Seller signs an affidavit that the property was the Seller's (or the decedent's, if a trust or probate sale) principal residence or that the sales price is $100,000 or less or another express exemption applies. Exemptions from withholding also apply to legal entities such as corporations, LLCs, and partnerships. Brokers cannot give tax or legal advice. Broker recommends that Buyer and Seller seek advice from a CPA, attorney or taxing authority. Brokers do not have expertise in this area.

6. **FLOOD HAZARDS:** Buyer and Seller are advised that if the Property is located within a Special Flood Hazard Area, as designated by the Federal Emergency Management Agency (FEMA), or an area of Potential Flooding pursuant to California Government Code Section 8589.3, generally Seller must disclose this fact to Buyer and may use a research company to aid in the process. The National Flood Insurance Program was established to identify all flood plain areas and establish flood-risk zones within those areas. The program mandates flood insurance for properties with high-risk zones if loans are obtained from a federally-regulated financial institution or are insured by any agency of the United States Government. The extent of coverage and costs may vary. If Buyer wants further information, Broker(s) recommend that Buyer consult his or her lender and/or insurance agent during Buyer's inspection contingency period. Buyer is advised that there is a potential for flooding even outside designated zones. Brokers do not have expertise in this area.

7. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specific registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at http://www.meganslaw.ca.gov/. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers, in any, are required to check this website. If Buyer wants further information, Buyer should obtain information directly from this website.) Brokers do not have expertise in this area.

8. **NOTICE OF YOUR SUPPLEMENTAL PROPERTY TAX BILL; ACCURATE SALES PRICE REPORTING:** Buyer and Seller are advised that pursuant to Civil Code § 1102.6(c), Seller, or his or her agent, is required to provide the following notice to the Buyer:

"California property tax law requires the Assessor to revalue real property at the time the ownership of property changes. Because of this law, you may receive one or two supplemental tax bills, depending on when your loan closes.

The supplemental tax bills are not mailed to your lender. Even if you have arranged for your property tax payments to be paid through an impound account, the supplemental tax bills will not be paid by your lender. It is your responsibility to pay these supplemental bills directly to the Tax Collector. If you have any questions concerning this matter, please call your Tax Collector's Office."

SBSA REVISED 6/18 (PAGE 10 OF 14)

STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 10 OF 14)
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com      12125 Sunset Blvd

Although the notice refers to loan closing as a trigger, it is actually the change of ownership which triggers this reassessment of property taxes. Therefore, the Property can be reassessed even if there is no loan involved in the purchase of the Property. The Purchase Agreement may allocate supplemental tax bills received after the Close of Escrow to the Buyer. A change (preliminary change) of ownership form is generally required to be filed by the Buyer with the local taxing agency. The form identifies the sales price of the Property. An assessor may value the Property at its fair market value regardless of the sales price declared by the Buyer. If Buyer wants further information concerning these matters, Broker(s) recommend that Buyer discuss the issue with the County Assessor or Tax Collector or their own tax or legal advisor. Brokers do not have expertise in this area.

9. **ZONE MAPS MAY CHANGE:** Maps that designate, among other things, Earthquake Fault Zones, Seismic Hazard Zones, State Fire Responsibility Areas, Very High Fire Hazard Zones, Special Flood Hazard Areas, and Potential Flooding Areas are occasionally redrawn by the applicable Government Agency. Properties that are currently designated in a specified zone or area could be removed and properties that are not now designated in a specified zone or area could be placed in one or more such zones or areas in the future. A property owner may dispute a FEMA flood hazard location by submitting an application to FEMA. Brokers do not have expertise in this area.

# E. Contract Related Issues and Terms

1. **ARBITRATION:** Buyer and Seller are advised that arbitration is a process by which the disputing parties hire a neutral person to render a binding decision. Generally, arbitration is faster and less expensive than resolving disputes by litigating in court. The rules are usually less formal than in court, and it is a private process not a matter of public record. By agreeing to arbitration, the parties give up the right to a jury trial and to appeal the arbitrator's decision. Arbitration decisions have been upheld even when arbitrators have made a mistake as to the law or the facts. If the parties agree to arbitration, then after first attempting to settle the dispute through mediation, any dispute arising out of their agreement (with a few limited exceptions) must be submitted to binding arbitration. Buyer and Seller must weigh the benefits of a potentially quicker and less expensive arbitration against giving up the right to a jury trial and the right to appeal. Brokers cannot give legal advice regarding these matters. Buyers and Sellers must decide on their own, or with the advice of legal counsel, whether to agree to arbitration. Brokers do not have expertise in this area.

2. **ELECTRONIC SIGNATURES:** The ability to use electronic signatures to sign legal documents is a great convenience, facilitating the ability to send and receive documents and reach agreement in a real estate transaction. However, Buyers and Sellers are cautioned to carefully read each provision. Arrows indicating "sign here" are merely there for the convenience of finding the next signature line. Only sign if you have taken the time necessary to read each document thoroughly, have full knowledge, and consent to the terms provided in the document. Brokers strongly advise Buyers and Sellers to read the entire document before signing even if they have reviewed an earlier draft. Do not just scroll through or skip to the next signature line. You are signing a legally binding agreement. Read it carefully. Ask your Broker, Agent or legal advisor if you have questions or do not understand a provision, and sign only if you agree to be bound by the terms. Brokers do not have expertise in this area.

3. **ESCROW FUNDS:** Buyer and Seller are advised that California Insurance Code Section 12413.1 provides that escrow companies cannot disburse funds unless there are sufficient "good funds" to cover the disbursement. "Good funds" are defined as cash, wire transfers and cashiers' or certified checks drawn on California depositories. Escrow companies vary in their own definitions of "good funds." Broker(s) recommend that Buyer and Seller ask the escrow company regarding its treatment of "good funds." All samples and out-of-state checks are subject to waiting periods and do not constitute "good funds" until the money is physically transferred to and received by the escrow holder. Brokers do not have expertise in this area.

4. **HOME WARRANTY:** Buyer and Seller are advised that Buyer and Seller can purchase home warranty plans covering certain standard systems of the Property both before and after Close of Escrow. Seller can obtain coverage for the Property during the listing period. For an additional premium, an upgraded policy providing additional coverage for air conditioning, pool and spa and other features can be purchased. Home warranties do not cover every aspect of the Property and may not cover inspections or upgrades for repairs required by state or federal laws or pre-existing conditions. Broker(s) recommend that Buyer review the policy for details. Brokers do not have expertise in this area.

5. **IDENTIFICATION OF NATURAL PERSONS BEHIND SHELL COMPANIES IN ALL-CASH TRANSACTIONS:** The U.S. Treasury Department's Financial Crimes Enforcement Network (FinCEN) has issued Geographic Targeting Orders (GTOs) targeting alleged money laundering risk in the real estate sector. The GTOs will temporarily require U.S. title insurance companies to identify the natural persons behind shell companies used to pay "all cash" for high-end residential real estate in certain major metropolitan areas. FinCEN explained that it remains concerned that all-cash purchases (i.e., those without bank financing) may be conducted by individuals attempting to hide their assets and identity by purchasing residential properties through limited liability companies or other similar structures. Since the original issuance, the GTOs have been renewed and may continue to be renewed. The GTOs cover the following areas in California: Los Angeles, San Francisco, San Mateo, Santa Clara and San Diego Counties. The monetary thresholds for each county is $300,000. GTOs have helped law enforcement identify possible illicit activity. FinCEN reported that a significant portion of covered transactions have dictated possible criminal activity associated with the individuals reported to be the beneficial owners behind shell company purchasers. Brokers do not have expertise in this area.

6. **LIQUIDATED DAMAGES:** Buyer and Seller are advised that a liquidated damages clause is a provision Buyer and Seller can use to agree in advance to the amount of damages that a seller will receive if a buyer breaches the Agreement. The clause usually provides that a seller will retain a buyer's initial deposit paid if a buyer breaches the agreement, and generally must be separately initialed by both parties and meet other statutory requirements to be enforceable. For any additional deposits to be covered by the liquidated damages clause, there generally must be another separately signed or initialed agreement (see C.A.R. Form RID). However, if the Property contains from 1 to 4 units, one of which a buyer intends to occupy, California Civil Code Section 1675 limits the amount of the deposit subject to liquidated damages to 3% of the purchase price. Even though both parties have agreed to a liquidated damages clause, an escrow company will usually require either a judge's or arbitrator's decision or instructions signed by both parties in order to release a buyer's deposit to a seller. Buyers and Sellers must decide on their own, or with the advice of legal counsel, whether to agree to a liquidated damages clause. Brokers do not have expertise in this area.

7. **MEDIATION:** Buyer and Seller are advised that mediation is a process by which the parties hire a neutral person to facilitate discussion and negotiation between the parties with the goal of helping them reach a settlement of their dispute. The parties generally share in the cost of this confidential, non-binding negotiation. If no agreement is reached, either party can pursue further legal action. Under C.A.R. Form RPA-CA: **(i)** the parties must mediate any dispute arising out of their agreement (with a few limited exceptions, such as matters within the jurisdiction of a small claims court) before they resort to arbitration or court, and **(ii)** if a party proceeds to arbitration or court without having first attempted to mediate the dispute, that party risks losing the right to recover attorney fees and costs even if he or she prevails. Brokers do not have expertise in this area.

8. **NON CONFIDENTIALITY OF OFFERS:** Buyer is advised that Seller or Listing Agent may disclose the existence, terms, or conditions of Buyer's offer, unless all parties and their agent have signed a written confidentiality agreement (such as C.A.R. Form CND). Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the Listing Agent's marketing strategy and the instructions of the Seller. Brokers do not have expertise in this area.

9. **ONLINE OR WIRE FUNDS TRANSFERS:** Instructions for the online or wire transfer of escrow deposits have been known to be intercepted by hackers who alter them so that Buyer's funds are actually wired to accounts controlled by criminals rather than the escrow company. Buyers should exercise extreme caution in making electronic funds transfers, verifying that the organization they are transferring funds to is, in fact, the escrow company and that their own bank account information is not being exposed. See C.A.R. Form WFA for further information. Brokers do not have expertise in this area.

# F. Other Factors Affecting Property

1. **COMMUNITY ENHANCEMENT AND PRIVATE TRANSFER FEES:** Buyer and Seller are advised that some areas or communities may have enhancement fees or user-type fees, or private transfer taxes and fees, over and above any stated fees. The Federal Housing Finance Agency has issued a rule that prohibits Fannie Mae and Freddie Mac from purchasing loans made on properties with private transfer fees if those fees were established on or after February 8, 2011. See title 12 Code of Federal Regulations Section 1228 for more information and exceptions. Private transfer fees: **(i)** may last for a fixed period of time or in perpetuity, **(ii)** are typically calculated as a percentage of the sales price, and **(iii)** may have private parties, charitable organizations or interest-based groups as their recipients who may use the funds for social issues unrelated to the property. Brokers do not have expertise in this area.

2. **GENERAL RECALL/DEFECTIVE PRODUCT/CLASS ACTION INFORMATION:** Buyer and Seller are advised that government entities and manufacturers may at any time issue recall notices and/or warnings about products that may be present in the Property, and that these notices or warnings can change. The following nonexclusive, non-exhaustive list contains examples of recalled/defective products/class action information: horizontal furnaces, Whirlpool Microwave Hood Combination; RE-ConBuilding products roof tiles; Central Sprinkler Company Fire Sprinklers; Robert Shaw Water Heater Gas Control Valves; Trex Decking; water heaters; aluminum wiring; galvanized, abs, polybutylene PEX, KITEC® and copper pipe; and dry wall manufactured in China. There is no single, all-inclusive source of information on product recalls, defective products or class actions; however, the U.S. Consumer Product Safety Commission (CPSC) maintains a website that contains useful information. If Buyer wants further information regarding the items listed above, Broker(s) recommend that Buyer review the CPSC website at http://www.cpsc.gov/ during Buyer's inspection contingency period. Another source affiliated with the CPSC is http://saferproducts.gov/ which allows a Buyer to search by product type or product name. Buyer may also search using the various search engines on the Internet for the specified product or products in question. Brokers recommend that Buyer satisfy themselves regarding recalled or defective products. Brokers will not determine if any aspect of the Property is subject to a recall or is affected by a class action lawsuit. Brokers do not have expertise in this area.

**SBSA REVISED 6/18 (PAGE 12 OF 14)**



**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 12 OF 14)**

3. **HOMEOWNER ASSOCIATIONS AND COVENANTS, CONDITIONS AND RESTRICTIONS ("CC&Rs"); CHARGING STATIONS; FHA/VA APPROVAL:** Buyer and Seller are advised that if the Property is a condominium, or located in a planned unit development, or in a common interest subdivision, there are typically restrictions on use of the Property and rules that must be followed. Restrictions and rules are commonly found in Declarations and other governing documents. Further there is likely to be a homeowner association (HOA) that has the authority to affect the Property and its use. Whether or not there is a HOA, the Property may still be subject to CC&Rs restricting use of the Property. The HOA typically has the authority to enforce the rules of the association, assess monetary payments (both regular monthly dues and special assessments) to provide for the upkeep and maintenance of the common areas, and enforce the rules and assessment obligations. If you fail to abide by the rules or pay monies owed to the HOA, the HOA may put a lien against your Property. Additionally, if an electric vehicle charging station is installed in a common area or an exclusive use common area, each Seller whose parking space is on or near that charging station must disclose its existence and that the Buyer will have the responsibilities set forth in California Civil Code §4745. The law requires the Seller to provide the Buyer with the CC&Rs and other governing documents, as well as a copy of the HOA's current financial statement and operating budget, among other documents. Effective July 1, 2016, a Common Interest Development (CID) will be required to include in its annual budget report a separate statement describing the status of the CID as a Federal Housing Administration or Department of Veterans Affairs approved Development. While the purchase agreement and the law require that the annual budget be provided by Seller to Buyer, Brokers will not and cannot verify the accuracy of information provided by the CID. Buyer is advised to carefully review all HOA documents provided by Seller and the CC&Rs, if any, and satisfy him/herself regarding the use and restrictions of the Property, the amount of monthly dues and/or assessments, the adequacy of reserves, current and past insurance coverage and claims, and the possibility of any legal action that may be taken by or against the HOA. The HOA may not have insurance or may not cover personal property belonging to the owner of the unit in the condominium, common interest or planned unit development. For more information Buyer may request from Broker the C.A.R. Legal Q&A titled: "Homeowners' Associations: A Guide for REALTORS®". Brokers do not have expertise in this area.

4. **LEGAL ACTION:** Buyer and Seller are advised that if Seller or a previous owner was involved in a legal action (litigation or arbitration) affecting the Property, Buyer should obtain and review public and other available records regarding the legal action to determine: (i) whether the legal action or any resolution of it affects Buyer and the Property, (ii) if any rights against any parties involved in the legal action survive the legal action or have been terminated or waived as a result of the legal action, whether or not involving the same issue as in the legal action, and (iii) if any recommendations or requirements resulting from the legal action have been fulfilled and, if so, that Buyer is satisfied with any such action. Buyer should seek legal advice regarding these matters. Brokers do not have expertise in this area.

5. **MARKETING; INTERNET ADVERTISING; INTERNET BLOGS; SOCIAL MEDIA:** Buyer and Seller are advised that Broker may employ a "staging" company to assist in the presentation of the Property. The furnishings and decorations in the staging are generally not included in the sale unless specifically noted in the Agreement. Statements and inclusion in the MLS entry, flyers, and other marketing materials are NOT part of the Agreement. In addition, Broker may employ a service to provide a "virtual tour" or "virtual staging" or Internet marketing of the Property, permitting potential buyers to view the Property over the Internet. While they are supposed to be an accurate representation of the property, the photos may be enhanced and not fully representative of the actual condition of the property. Further, neither the service provider nor Broker have total control over who will obtain access to materials placed on the internet or what action such persons might take. Additionally, some Internet sites and other social media provide formats for comments or opinions of value of properties that are for sale. Information on the Property, or its owner, neighborhood, or any homeowner association having governance over the Property may be found on the internet on individual or commercial web sites, blogs, Facebook pages, or other social media. Any such information may be accurate, speculative, truthful or lies, and it may or may not reflect the opinions or representations by the Broker. Broker will not investigate any such sites, blogs, social media or other internet sites or the representations contained therein. Buyer is advised to make an independent search of electronic media and online sources prior to removing any investigation contingency. Buyer and Seller are advised that Broker has no control over how long the information or photos concerning the Property will be available on the Internet or through social media, and Broker will not be responsible for removing any such content from the internet or MLS. Brokers do not have expertise in this area.

6. **PACE LOANS AND LIENS:** The acronym PACE stands for Property Assessed Clean Energy. PACE programs allow property owners to finance energy and water conservation improvements and pay for them through an assessment on the owner's property. PACE programs are available in most areas for both residential one to four unit properties and commercial properties. PACE programs may be referred to by different names such as HERO or SCEIP, among others. If a PACE loan is approved, an assessment lien is placed on a property for the amount owed plus interest. A property owner repays the entity for the improvements as a special tax assessment on the property tax bill over a period of years. A PACE lien is similar to a property tax lien in that it has "super priority." Sellers are obligated to disclose, pursuant to the C.A.R. Residential Purchase Agreement (C.A.R. Form RPA), whether any improvement is subject to a lien such as a PACE lien. Properties that are subject to PACE liens made on or after July 6, 2010 may not be eligible for financing. For more information, Buyer may request from Broker the C.A.R. Legal Q&A titled: "PACE Programs and Solar Leases". Brokers do not have expertise in this area.

SBSA REVISED 6/18 (PAGE 13 OF 14)

7. **RE-KEYING:** All locks should be re-keyed immediately upon close of escrow so as to ensure the Buyer's safety and security of their persons as well as their personal belongings. Alarms, if any, should be serviced by professionals and codes should be changed. Garage door openers and remotes should be re-coded. In the event of a lease back to Seller after the close of escrow, Seller is advised that the Buyer is entitled to the keys as the Owner of the Property even though the Seller stays in possession of the Property as provided in the RPA.

8. **SOLAR PANEL LEASES:** Solar panel or power systems may be owned or leased. Although leased systems are probably personal property, they are included in the sale by the C.A.R. purchase agreement which also obligates the Seller to make a disclosure to the Buyer and provide the Buyer with documentation concerning the lease and system. Leasing companies generally secure payments by filing a UCC-1 (a Uniform Commercial Code form giving notice of a creditor's security interest) against the property. Buyers are given a contingency right to investigate the solar related system and documentation and assume any lease. Assumption of the lease may require Buyer to provide financial information to the leasing company who may require a credit report be obtained on the Buyer. Should a solar panel or power system be on the Property, Buyers should determine if the system is leased or owned. Buyers willingness to assume any such lease is a contingency in favor of Seller. For more information, Buyer may request from Broker the C.A.R. Legal Q&A titled: "PACE Programs and Solar Leases". Brokers do not have expertise in this area.

9. **RECORDING DEVICES:** Audio or video recording devices or both may be present on the Property, whether or not notice of any such devices has been posted. Seller may or may not even be aware of the capability of such devices.

# G. Local Disclosures and Advisories

1. **LOCAL ADVISORIES OR DISCLOSURES (IF CHECKED):**
The following disclosures or advisories are attached:
A. ☐ _____
B. ☐ _____
C. ☐ _____
D. ☐ _____

**Buyer and Seller are encouraged to read all 14 pages of this Advisory carefully. By signing below, Buyer and Seller acknowledge that each has read, understands and received a copy of all 14 pages of this Advisory.**

BUYER _____ Date _____

BUYER _____ Date _____

(Address) _____

SELLER _____ *Bankruptcy estate of OS Susnet, LLC.* Date 12/22/2020

SELLER _____ Date _____

(Address) _____

Real Estate Broker (Selling Firm) _____ DRE Lic. # _____

By _____ DRE Lic.# _____ Date _____

Address _____ City _____ State ___ Zip _____

Telephone _____ Fax _____ Email _____

Real ___ Jeff Hyland ___ Lisa Optican ___ und ___ DRE Lic. # *01160681*

By ___ Jeff ___F2C431938EF34ED...___ 4F683D5C85A6401...___ DRE Lic.# *00389584/01960751* Date 12/24/20

Address *257 N. Canon Drive Second Floor* ___ City *Beverly Hills* ___ State *CA* ___ Zip *90210*

Telephone *(310) 278-3311* ___ Fax *(310) 278-8088* ___ Email *jeff@jeffhyland.com /lisa@hiltonhyland.com*

© 2018-2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
SBSA REVISED 6/18 (PAGE 14 OF 14)



**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 14 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com    12125 Sunset Blvd



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE
### (FOR SELLER REPRESENTATIVES)
(C.A.R. Form RCSD-S, Revised 6/19)

This form is not an assignment. It should not be used to add new parties after a contract has been formed. The purpose of this form is to identify who the principal is in the transaction and who has authority to sign documents on behalf of the principal.

This is a disclosure to one or more of the following: Listing Agreement, Purchase Agreement, or Other Agreement, specified below in which _____ ***Bankruptcy estate of OS Susnet, LLC.*** _____ is identified as ("Seller").

If a trust, identify Seller as the trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust 3). Full name of trust should be identified in 1A below. If power of attorney, insert principal's name as Seller.

1.  **A.** ☐ **TRUST:** (1) The Property is held in trust pursuant to a trust document, titled (full name of trust): _____
    _____
    (2) The person(s) signing below is/are Sole/Co/Successor Trustee(s) of the Trust.
    **B.** ☒ **ENTITY:** Seller is a ☐ Corporation, ☒ Limited Liability Company, ☐ Partnership ☒ Other: *Bankruptcy Estate*
    which has authorized the officer(s), managing member(s), partner(s) or person(s) signing below to act on its behalf. An authorizing resolution of the applicable body of the entity described above ☐ is ☒ is not attached.
    **C.** ☐ **POWER OF ATTORNEY:** Seller ("Principal") has authorized the person(s) signing below ("Attorney-In-Fact", "Power of Attorney" or "POA") to act on his/her behalf pursuant to a General Power of Attorney ( ☐ Specific Power of Attorney for the Property), dated _____. **This form is not a Power of Attorney. A Power of Attorney must have already been executed before this form is used.**
    **D.** ☒ **ESTATE:** (1) Seller is an ☒ estate, ☐ conservatorship, ☐ guardianship, or ☐ _____
    identified by Superior Court Case name as _____, Case # _____. (2) The person(s) signing below is/are court approved representatives (whether designated as Sole or Co-Executor, Administrator, Conservator, Guardian) of the estate, conservatorship or guardianship identified above.

2.  Seller's Representative represents that the trust, entity or power of attorney for which that Party is acting already exists.

**Seller:**
By _____ *Trustee* _____ Date: 12/22/2020
(Sign Name of Trustee, Officer, Managing Member, Partner, Attorney-in-Fact or Administrator/Executor)

(Print Representative Name) ___David M. Goodrich___ Title: Chapter 7 Trustee

By _____ Date: _____
(Sign Name of Trustee, Officer, Managing Member, Partner, Attorney-in-Fact or Administrator/Executor)

(Print Representative Name) _____ Title: _____

**Acknowledgement of Receipt:**

| |
|---|
| **AT TIME OF LISTING** |
| Seller and ___*Hilton & Hyland*___ ("Seller's Broker") are parties to a |
| Listing Agreement dated ___*12/21/2020*___ for property known as ___*12125 W. Sunset Blvd, Los Angeles, CA 90049*___ . |
| Rea~~l Estate Broker (Firm)~~ on & |
| By _Jeff Hyland_ _Lisa Optican_ _____ Date _12/24/20_ |
| ~~Jeff Hyland Lisa Optican~~ |
| DocuSigned by: Jeff Hyland F2C431938EF34ED... |
| DocuSigned by: Lisa Optican 4F683D5C85A8401... |

© 2019, California Association of REALTORS®, Inc.

**RCSD-S REVISED 6/19 (PAGE 1 OF 2)**

| Hilton & Hyland, 257 N. Canon Drive Second Floor Beverly Hills CA 90210 | Phone: (310) 278-3311 | Fax: (310) 278-8088 | 12125 Sunset Blvd |
| Jeff Hyland | Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com | | |

**AT TIME OF SALE**

Seller and _____ ("Buyer") are parties to a

Purchase Agreement dated _____ for property known as *12125 W. Sunset Blvd, Los Angeles, CA  90049* .

Buyer _____ Date _____

Buyer _____ Date _____

---

**AT TIME OF OTHER AGREEMENT**

Seller and _____ ("Other Party") are

parties to an _____ Agreement

dated _____, if applicable, for property known as *12125 W. Sunset Blvd, Los Angeles, CA  90049* .

Other Party _____

By _____ Date _____

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RCSD-S REVISED 6/19 (PAGE 2 OF 2)**

**REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE (RCSD-S PAGE 2 OF 2)**

DocuSign Envelope ID: D233DEF3-A785-4662-94B0-441C6A9605FE

# HILTON & HYLAND

### DISCLOSURE ADVISORY

*This Advisory contains important information regarding the purchase of real property in California. This Advisory is not meant to be a complete source of information on all matters which can become issues in real property purchase and sale contracts. Buyers are urged to investigate, without limitation, the items in the following paragraphs of this Advisory as well as the condition of the foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, energy efficiency, security, appliances/personal property, pool/spa, and all other systems and components. The real estate licensees involved in the transaction do not warrant or guarantee the accuracy of the information contained in this Advisory or the adequacy of the information contained herein as it relates to a specific real property transaction.*

## GENERAL ADVISORIES

1. **SQUARE FOOTAGE ADVISORY:** Measurements of a property tend to vary from source to source and often conflict. There is no "official" source or "standard" method of calculation. For instance, appraisers may include the thickness of exterior walls; whereas, surveyors of condominium units typically measure the space between interior walls and around obstructions, such as fireplace flues; and floor-plan designers employ a wide variety of methods. The measurements may or may not include some "finished" or "unfinished" space, and may not make a determination of the "legality" of the space, although under lending guidelines appraisers should not include "illegal" space. Factors or amenities, such as light and views, can have a significant impact on price per square foot and value. Square footage figures from tax records are distinctly unreliable, often out of date, and among other things may fail to reflect various structural modifications. Different sources of building or interior square feet can include the following: tax assessor records, developer/builder plans, architectural drawings, condominium map or plan, floor plans by graphic artist, and appraisal diagrams.

   Buyer may perform their own measurement prior to entering into a contract or during their due diligence contingency period. Any figures which quote a "price per square foot" for this or comparable properties are broad estimates only, should not be relied upon and the accuracy of any such figures should be independently verified by Buyer.

   **LOT DIMENSIONS AND SIZES:** Fences, retaining walls, hedges and other landscaping, or other natural or man-made structures may not correspond with the defined property boundaries. There are public sources available which refer to lot dimensions, but they may be inaccurate and should not be relied upon by Buyer. Only a licensed surveyor can provide reliable lot dimensions and sizes for a property.

   **Seller and Broker/Agents have not and will not verify the accuracy of any lot dimensions or sizes, square footage numbers, or price per square foot estimates. If the lot size or dimensions, building square footage, and/or price per square foot are important to Buyer's decision to purchase, or the price Buyer will pay, Buyer should conduct and rely solely upon Buyer's own independent investigation by engaging a licensed surveyor for lot size and dimensions and a licensed appraiser for building square footage and price per square foot.**

2. **VIEWS AND VIEW ORDINANCES:** Views from the Property may be affected by weather conditions, future development, growth of trees and vegetation on other properties, current location and/or future construction of cellular antennas and the use of any property within the line of sight of the Property. Buyers should review any Covenants, Conditions and Restrictions, government ordinances or regulations, or any other documentation which may impact views. Brokers have not verified the ability to preserve existing views. Some cities and counties have view ordinances to protect existing views which may limit the planting of new trees, restrict the height of trees and limit future construction. Properties that are subject to a view easement may be required to maintain their landscaping so as to prevent any unreasonable obstructions to the views of other property owners. Certain trees that are part of the natural habitat may be exempt from these local ordinances. Often a view property will have recently trimmed trees and shrubs revealing the view; maintaining that view could entail not only trimming foliage on the Property, but may also involve enlisting the cooperation of their neighbors to keep their foliage trimmed, possibly at Buyers' expense. Cities and counties do not often take an active role in these issues; rather they tend to encourage private resolution of such disputes. Each municipality has a slightly different mechanism for handling these situations, and Buyers should review the applicable Municipal or County Code/Ordinance during Buyer's inspection period, if any.

3. **BEDROOM DEFINITIONS:** The number of bedrooms a property features is subject to different, and occasionally contradictory, definitions. County tax records often indicate the number of bedrooms that are recorded in the county's tax Assessor's Office; owners and residents of a property may describe a room as a bedroom according to how the room is used or could be used. Buyer is encouraged to review all files relative to permits of the subject property at the appropriate City, County, or State agency during Buyer's inspection period.

4. **FLOORS AND WALLS:** Seller's personal property may make a visual inspection of floors and walls difficult. The existence of certain types of flooring (such as carpeting and rugs), wall coverings (such as wallpaper and paneling) and the presence of furniture may prevent Buyer, inspectors and Brokers from fully inspecting the condition of floors and walls. When exposed, these areas may have a different pattern of wear or shade of color. If Buyer is informed that "hardwood floors" exist at Property, Buyer understands that this is NOT a representation or guarantee that all flooring underneath existing carpeting is hardwood and is not a representation or guarantee as to the condition of said hardwood. In order for Buyer to determine the actual condition of the floors and walls beneath such coverings, Buyer will need to secure the written authorization of Seller to conduct investigations with licensed professionals during Buyer's inspection period, if any, since destructive testing may be required.

DocuSign Envelope ID: D3330FF3-A785-4662-84B0-441C6A9605FE

5. **PERMITS ISSUES:** Some improvements to Property such as repairs, remodels and additions may have been done without a required permit. An improvement that is made without the required permit can, among other things, have a negative impact on value, lending, appraisals, require a retrofit, impact habitability, preclude insurance coverage and result in fees, penalties, government and/or civil enforcement actions. Buyer is advised that Buyer may be required to incur expenses after the close of escrow to bring the Property up to current codes and other applicable laws or to demolish the subject additions. Broker and Agent make no representations as to any permits or certificates of occupancy for the Property, regardless of whether provided by the Department of Building and Safety (or similar entity) or any other source. Broker and Agent are not qualified to interpret or explain permits, building codes, uses or certificates of occupancy. Buyer should consult with his/her own inspectors or other professional advisors and appropriate governmental authorities regarding permits, building code compliance, and/or zoning clearances.

6. **FUTURE DEVELOPMENT:** Buyer is aware that the Property may be affected by future development in the neighborhood or surrounding areas and the Property may be subject to building and development restrictions and conditions. Buyer is advised to consult with appropriate governmental agencies and shall rely solely upon Buyer's own investigations to determine future development or planning and its potential impact on the property.

7. **PROTECTED TREE ORDINANCE:** Several municipalities have enacted ordinances to regulate and control the removal of trees in any given area. Some cities have identified Heritage or other significant trees that must be protected or preserved in certain areas. Permits may be required to cut down, destroy, remove or relocate designated trees. Buyers should read any applicable tree preservation ordinances, check with relevant governmental entities and consult with an arborist during their inspection period, if any, to determine the health of trees and whether or not any special action can or must be taken with respect to any trees on the Property. Brokers cannot determine the health of trees and/or whether or not any tree is subject to any particular tree preservation ordinance.

8. **TITLE INSURANCE AND PRELIMINARY REPORT:** Buyers will receive a Preliminary Report ("Prelim") from a title company as a part of Buyer's investigation and due diligence regarding the Property. A Prelim is only an offer of title insurance and may not contain every item affecting title. Title companies today will provide an electronic Prelim that has hyperlinks to those underlying documents, many of which are important for full review of conditions. Buyers should be aware that a Prelim on paper may not have the underlying documents attached and any hyperlink may not be highlighted. Real estate brokers and agents strongly encourage Buyers to review all matters affecting title and to purchase title insurance at the close of escrow.

9. **INSURANCE:** During the inspection contingency, Buyer should consult with an insurance broker to determine the cost of homeowners' insurance as well as the types of coverage that may be available and any conditions that the insurance company is going to impose. For example, many insurance companies refuse to provide homeowners' insurance coverage unless certain retrofit requirements are met, such as installation of safety glass and/or fireplace spark arresters and a gas shut-off valve. The fact that an insurance company may require these repairs does not necessarily mean that the Seller is obligated to pay for and/or make the repairs requested by the insurer. In addition, prior claims submitted by Buyer on other properties may affect the final cost of the homeowners' insurance on the property being purchased by Buyer. Buyer should investigate these matters thoroughly prior to removing their inspection contingency.

10. **C.L.U.E. REPORTS OF INSURANCE CLAIMS:** Standard real estate disclosure forms specify that Sellers must provide Buyers with insurance claims history for the property for a period of five years preceding the sale. Sellers do not always know (or remember) the insurance claims history. Thus for many years the Natural Hazards Disclosure Statement ("NHDS") Reports included a report used by insurance companies called Comprehensive Loss Underwriting Exchange ("C.L.U.E.") The NHDS Reports no longer include the C.L.U.E. report. Because a C.L.U.E. report itself is not required, Sellers may disclose the insurance information themselves as part of the disclosure process. If Sellers want to rely on C.L.U.E. for the most accurate information regarding past insurance claims, Sellers may be able to either: (a) go online to: https://personalreports.lexisnexis.com/homesellers_disclosure_report/landing.jsp and create an account that will enable the Sellers to order a C.L.U.E. report; or (b) contact their homeowner insurance policy broker who may be able to provide a copy. Buyers can also add to their contract offer the obligation for Sellers to provide a C.L.U.E. report.

11. **CELL PHONE RECEPTION DEAD ZONES:** Some areas have limited or no cell phone or wireless data reception. Buyer is advised to contact their wireless providers or personally conduct their own on-site investigations of the availability and strength of cell phone and wireless data reception at and near the Property and in all other areas where such services are important to Buyer. Brokers cannot and will not verify the availability or strength of cell phone and wireless data reception.

12. **LOCKS, ALARMS AND GARAGE DOOR OPENERS:** Buyer is advised that the Seller may have given spare keys, remotes or alarm codes to other individuals during the course of the time they owned and/or have lived at the property. Buyer is advised, immediately after escrow closes, to have all locks re-keyed or changed, and all alarms and remote device codes, such as a garage door opener, changed in order to ensure the safety and security of Buyer and all his/her possessions.

13. **PERSONAL PROPERTY AND STAGING ITEMS:** Sellers and Listing Brokers/Agents often engage the services of "Staging" companies to assist in presenting the Property in its best light. The furnishings and accessories provided by the staging company are removed prior to close of escrow and do not transfer to the Buyers. Standard Purchase Agreement forms specify that NO personal property is included in the sale unless specifically designated in the Agreement or an Addendum. The MLS entry, flyers and other marketing materials are NOT part of the Purchase Agreement. NONE of the staged furniture or other items (e.g. rugs, lamps, plants, etc.) is included in the sale. Buyers who wish to purchase any staged items should enter into a separate written agreement with the staging company.

14. **WILDLIFE:** Buyer has been informed that various types of wildlife appear in residential neighborhoods throughout the Westside, San Fernando Valley and surrounding areas. Coyotes, skunks, undomesticated cats, snakes, owls and other birds of prey as well as other such wildlife may be injurious to small children, pets and property.

15. **CRIME:** Crime statistics for various areas and municipalities may rise and fall over time and the incidence of various types of criminal activity may also increase or decrease. Because of the ever changing nature of the statistics and information regarding crimes, neither Seller nor brokers will independently investigate crime or criminal activity in the area of any property being purchased by any means including but not limited to contacting the police or reviewing any internet databases. If criminal activity is a factor in the decision to purchase a particular property, or in a particular neighborhood, Buyer is urged to check with the local law enforcement agencies and online information, prior to removing their inspection contingency.

16. **ONLINE INFORMATION:** Information regarding the Property, or the neighborhood, may exist online in various blogs, discussion boards, Facebook pages, etc. For example, some neighborhood associations and homeowner associations (HOA's) have official sites; whereas other unofficial sites written by third parties may exist with postings about the community. Some of the online sites offer viewers the opportunity to express opinions and air complaints. The information contained on those sites may consist of opinion, speculation, unfounded assertions or rumor, making it difficult to determine what is factual and what is not. **Neither Seller nor any of the real estate licensees may be aware of, nor will they conduct a search of, such online information and they are not obligated to verify or explain the posted issues and/or commentary of third parties.**

17. **ONLINE PHOTOS/VIDEOS:** Advertising photographs/videos of property that is included in the Multiple Listing Service and/or in a Listing Broker's websites are commonly uploaded into other brokers' websites and various national listing aggregation sites such as Realtor.com, Zillow, and others. From there, photographs/videos may be copied to other websites with or without the permission of the host site. After the close of escrow, or termination of a listing, Sellers and Buyers are advised that it is not possible for either the Listing or Selling Broker to remove these images from websites that they do not control.

18. **SELLER OCCUPANCY AFTER CLOSE OF ESCROW:** Under some Rental Ordinances, a Seller of real property who continues to occupy the property after the close of escrow may acquire tenants' rights, which may make it difficult for the Buyer to recover possession of the newly purchased property if a dispute arises before the Seller vacates. If Buyer is considering whether to allow Seller to occupy the Property after the close of escrow, Buyer is urged to consult with a qualified California real estate attorney who specializes in landlord/tenant issues in Los Angeles to assess the risks and benefits of such an arrangement.

19. **RECOMMENDED SERVICES:** Buyer and Seller acknowledge that although the Broker may refer to Buyer and/or Seller firms offering products and services required in the course of the transaction, including but not limited to escrow, title insurance, pest control, physical and geological inspections, contractors, home protection plans, lenders, loan brokers, and others, the selection of any particular provider shall be at the sole discretion of the Buyer and/or Seller. Broker cannot verify inspection reports or representations of others. Buyer and Seller further acknowledge and agree that Broker does not guarantee or warrant the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller, Buyer or others. Buyer is free to select inspectors and service providers other than those referred to by Broker.

20. **WAIVER OF INSPECTION:** In the event Buyer elects to purchase the Property without the benefit of a professional property inspection, Buyer is acting against the advice and recommendation of Broker, and hereby acknowledges that physical and/or geological conditions may exist relating to the Property which are presently unknown or concealed, but which could have been discovered or disclosed by such inspections. Buyer is strongly advised to retain Buyer's own contractors and other experts to investigate the condition and suitability of all aspects of the Property and all matters affecting the value and desirability of the Property. Thus, if Buyer elects to proceed without any such inspection, Buyer hereby agrees to waive any claim against Broker and hold Broker harmless from any loss or damage suffered by Buyer as a result of latent or concealed conditions or defects affecting the Property, which are unknown to the Buyer at the time of purchase.

21. **RECOMMENDATION TO RETAIN AN ATTORNEY AND ACCOUNTANT:** In addition to the professional service providers you will retain to inspect and analyze the property you are purchasing or selling, a situation may arise during the course of your purchase transaction that requires you to either make an important decision, or select a plan of action that could result in significant legal consequences and substantial impact on your personal finances. The most prudent and best plan is for you to identify a certified public accountant and real estate attorney in advance of entering into an agreement for the sale or purchase of the Property so that you can quickly contact and seek the proper financial and/or legal advice and guidance if needed during the transaction.

## FEDERAL, STATE & REGIONAL CONDITIONS ADVISORIES

1. **TRANSFER DISCLOSURE STATEMENT (TDS):** Unless exempt, Sellers of residential property of 1 to 4 units must complete the Real Estate Transfer Disclosure Statement even if the property is being sold "AS IS". The parties cannot waive this statutory requirement. Effective July 1, 2014, the TDS includes Question IIC-16 which asks about a number of legal issues including whether or not there are any lawsuits affecting the Property and/or disputes regarding construction defects with references to various Civil Code Sections. If Sellers have any questions regarding how to respond to any of the questions in the TDS, Sellers should consult with their own California real estate attorney. If Sellers become aware of new information that affects the value or desirability of the Property that has not already been disclosed to the Buyers, Sellers may be required to amend the TDS and give the Buyer a right to rescind the purchase contract within three days of personal delivery (or five days of mailing) of the amended TDS.

2. **PRIVATE ROADS:** If the property is accessed, or affected, by a private road that is shared with one or more other properties, Buyers need to determine the existence of a recorded private road maintenance agreement and compliance with that document. If no such agreement exists, Civil Code Section 845(s) provides that "the cost shall be shared proportionate to the use made of the easement by each owner." Buyers should contact city/county officials and/or their attorney to evaluate their potential responsibilities.

3. **WATER HEATERS:** Under California State law, all water heaters must be braced, anchored or strapped to resist falling or horizontal displacement due to earthquake motion and Sellers of Property must certify to Buyers that the bracing requirement has been satisfied. In addition, water heaters which are newly installed or moved must be raised so their ignition point is 18 inches off the ground. Many other plumbing code requirements may also apply, e.g. gas venting, pipe wrapping, temperature and pressure relief valves, drain valves and/or bollard protection in garages.

4. **SMOKE ALARMS AND CARBON MONOXIDE DETECTORS:** California Health and Safety Code §13113.8 requires installation of smoke alarms in residential property. If a TDS is required, the Sellers certify in the TDS that the Property has (or will have prior to Close of Escrow) operable smoke alarms which are approved and installed in compliance with the State Fire Marshal's regulations and applicable local standards, including installation of alarms with 10-year batteries in all bedrooms before finalizing any permitted contracting work costing $1,000 or more. State law requires carbon monoxide detectors in living areas of residential properties that have fossil fuel burning appliances, even if those appliance are several floors below, for example, furnaces in the basement of a condominium building. Additional fire extinguishing systems, such as interior sprinklers, may be required for apartments.

5. **WATER-CONSERVING PLUMBING FIXTURES:** Existing law calls for installation of water-conserving plumbing fixtures when the existing plumbing fixtures are "noncompliant" by certain dates, as discussed here. <u>Commencing January 1, 2017, Sellers will need to disclose to Buyers, in either the Seller Property Questionnaire (SPQ) or the Exempt Seller Disclosure (ESD) form, if Sellers are aware of whether the Property has any noncompliant plumbing fixtures.</u> If a Seller answers "No" to that question, Buyers should not assume that the Property is fully compliant since the "No" response may merely mean that Seller is unaware or is uncertain as to whether or not any such fixtures are noncompliant. For this reason, as a part of their property inspection of Properties subject to this law, Buyers are urged to have all plumbing fixtures inspected by a qualified professional to determine whether all plumbing fixtures are actually compliant with this law. Buyers and Sellers are advised to address any concerns relating to allocating the cost of compliance with all retrofit requirements as part of their negotiations for the Purchase Agreement.

6. **LOS ANGELES / WEST HOLLYWOOD - AUTOMATIC GAS SHUT OFF VALVE ORDINANCE:** All parties in this transaction acknowledge that on February 5, 1998, the seismic gas shut-off valve ordinance became effective in the City of Los Angeles. Additionally, the City of West Hollywood has enacted a Seismic Safety Gas Shut-off Valve Ordinance. The Los Angeles ordinance requires that the shut-off valve as the Property be retrofitted prior to close of escrow, while the City of West Hollywood requires that the retrofit be completed within one year of sale.

7. **IMPACT HAZARD GLAZING (CITY OF LOS ANGELES):** Buyer and Seller are aware of City of Los Angeles Ordinance No. 161.136 requiring that all external sliding glass doors (the sliding part only) must be tempered glass or "impact hazard glazed" with a safety film approved by the City of Los Angeles prior to the close of escrow.

8. **NEW CONSTRUCTION WARRANTIES, DEFECTS AND LAWSUITS:** Sellers are required to disclose if there are any lawsuits by or against the Sellers threatening or affecting the real property along with questions related to construction defects, citing Civil Code Sections 900, 903, 910 and 914. These codes are part of a law that is often referred to as SB800 or Title 7, which generally applies to residential real property built by a "Builder" (as defined in Section 911) and sold for the first time after January 1, 2003. Section 900 provides for a limited one-year warranty from the Builder and Builders may provide "enhanced protection agreements" which may extend the warranty period. Homeowners are required to follow all reasonable maintenance obligations and schedules communicated in writing by the Builder and product manufacturers, as well as commonly accepted maintenance practices. Failure to do so may provide a defense against a homeowner claim and Builders often require specific pre-litigation procedures and remedies in the event of a claim against the Builder. Sellers who have questions about how to answer this TDS question should consult with a California real estate attorney for advice. If the Sellers disclose any lawsuits or claims, Buyers should investigate such disclosures with a California real estate attorney. Brokers are not qualified to provide advice on these matters.

## LOCAL ADVISORIES

1. **BASELINE MANSIONIZATION ORDINANCE AND INTERIM CONTROL ORDINANCE (ICO):** Buyer is advised that the City of Los Angeles has adopted a Baseline Mansionization Ordinance (Los Angeles City Ordinance #179883) which may affect Buyer's intended use of the subject property. For those properties subject to the Ordinance (generally all single-family residentially zoned properties not located in a Hillside area or Coastal Zone), the Ordinance imposes restrictions on the square footage allowable for both new construction and additions to existing structures on the property. Buyer is advised to obtain a copy of this ordinance and to contact the appropriate City agency directly to determine its impact, if any, on the subject property.

   In addition, the city of Los Angeles has approved numerous Interim Control Ordinances (ICOs) which either prohibit the demolition and/or substantial alterations of homes in the various Historic Preservation Overlay Zones (HPOZs), or Residential Floor Area Districts (RFAs) or limit the scale of new construction. Further, the City is considering the expansion of these ordinances.

   Buyer is advised to contact the City of Los Angeles Planning Department and the City Council office having jurisdiction over the subject property in question as well as any other appropriate City Department to investigate whether these HPOZs, RFAs or ICOs will impact Buyer's ability to make alterations to the Property. Buyer may also visit the following website: http://zimas.lacity.org.

   **If Buyer is planning to expand or remodel the Subject Property, Buyer is strongly advised to contact the appropriate agencies of the City of Los Angeles during Buyer's physical inspection contingency period to determine how these ordinances may impact Buyer's future plans. Real estate Brokers and their agents do not have expertise in this area and recommend that Buyer verify, prior to removing inspection contingencies, whether these ordinances will have any effect on the Buyer's intended use of the Subject Property.**

2. **LOS ANGELES / BEVERLY HILLS HILLSIDE ORDINANCE:** Buyer is advised that hillside property in the cities of Beverly Hills, Los Angeles and others may be impacted by local ordinances. If the Property is a hillside property, Buyer is advised to check with the applicable city to obtain a copy of any appropriate ordinances in order to determine their impact, if any, on the Property. Information regarding the City of Los Angeles Hillside Property Ordinances can be obtained from the City of Los Angeles, Dept. of Building & Safety, 1828 Sawtelle Blvd., Los Angeles, CA 90025, (310) 575-8181; and information regarding the Beverly Hills Hillside Ordinance can be obtained from the City of Beverly Hills, Dept. of Building & Safety, 455 N. Rexford Drive, Room 010, Beverly Hills, CA 90210, (310) 285-1141.

3. **RESIDENTIAL PROPERTY RECORDS AND PENDING SPECIAL ASSESSMENT LIENS REPORT (RPR):** If the Property is residential and located in the City of Los Angeles, L.A.M.C. Section 96.300 requires that the Seller provide an RPR (commonly called the "9A Report") to the Buyer before entering into an agreement of sale or exchange of residential property or prior to the close of escrow in connection therewith. No ordinance contains a provision which states or implies that a signed waiver or other such document can be accepted in lieu of an RPR issued by the City. Seller is advised to order a RPR, as soon as the Listing Agreement is signed. Buyer and Seller acknowledge that Broker is NOT responsible for the timely delivery of this report.

4. **CALIFORNIA COASTAL COMMISSION:** Buyer and Seller are advised that development or construction on properties within the coastal zone maybe subject to the jurisdiction and regulations of the California Coastal Commission, or local regulations approved by the Coastal Commission. The coastal zone extends a great distance inland in various areas of Los Angeles County, depending upon the location of coastal habitat, sloughs, and other waterways affected by ocean tides. The development of beachfront property may also be impacted by the determination of "mean high tide lines" in relation to the boundary lines for beachfront property. For further information, contact the Coastal Commission at (562) 590-5071 or www.coastal.ca.gov.

5. **MALIBU ADVISORY:** Buyer and Seller are advised that property located within Malibu and surrounding areas, including surrounding canyons, is subject to conditions, private development agreements, governmental regulations, and property classifications, such as geological hazard abatement districts (such as Big Rock and Malibu Road), special study and seismic hazard zones, ancient landslide or community standards districts (such as the Topanga area), and the Malibu "sphere of influence" whereby the City of Malibu intends to influence the development of property located outside its boundaries through the General Plan, which may impact the development of or construction (including remodeling existing structures) on the Property. The development of or construction (including remodeling of existing structures) on the Property located within the City of Malibu may be subject to review and regulation by numerous entities within the Malibu city government, including the Site Plan Review Committee, Archaeological Review, Environmental Review Board, City Biologist and Landscape Control. Buyer is advised to contact the City of Malibu, the County of Los Angeles, the County of Ventura, the California Coastal Commission, the Office of the California State Geologist and the California Land Commission to determine whether any governmental conditions affect the Property.

6. **MULHOLLAND SCENIC PARKWAY SPECIFIC PLAN:** Buyer is aware that all property situated in the City of Los Angeles bounded on the East by the Hollywood Freeway, on the West by the Los Angeles City/County boundary line, and within approximately one-half mile North or South of Mulholland Drive is subject to the Mulholland Scenic Parkway Specific Plan (City of Los Angeles Ordinance No. 167943). If the Property lies within this Specific Plan area, Buyer is strongly advised to obtain a copy of the ordinance and to investigate the impact the Specific Plan may have on subject Property. Buyer may obtain an official copy of the ordinance by contacting the Los Angeles City Ordinance Division at (213) 978-1133.

7. **PACIFIC PALISADES TRACT 9300:** Buyer is aware that a provision of the deed of conveyance for certain properties located in Pacific Palisades reads, in part, as follows: "No building or other structure shall be erected or the erection thereof be done on said premises (land in tract 9300) until the plans and specifications thereof shall have first been presented to, and approved in writing by the Palisades Corporation, its successors or assignees (The Pacific Palisades Civic League) as to outward appearance and design." This language is all-inclusive and governs even minor additions or alterations that affect the property. Requests for approval of any changes of the outward appearance and design for buildings, signs, fences, satellite dishes, or other structures must be considered by the reversionary rights committee of the Civic League. Broker recommends that Buyer review the deed for the property to determine if these restrictions apply and contact the Civic League if Buyer so desires.

8. **SANTA MONICA REAL ESTATE TRANSFER DISCLOSURE:** If real property has been designated by the City of Santa Monica as a landmark, structure of merit, or a contributor to a historic district, or has been identified in the City's Historic Resource Inventory or any update thereto, the Seller or the Selling Agent of the real property shall, in any real property transaction, provide the Buyer of the real property with notice informing the Buyer of the property's historic status. The Seller or the Selling Agent shall provide the notice to the Buyer as soon as practicable before transfer of title. The Buyer shall execute a receipt therefore as furnished by the City and said receipt shall be delivered to the City Clerk as evidence of compliance with the provisions of this Chapter.

9. **BEVERLY HILLS / LOS ANGELES / SANTA MONICA / WEST HOLLYWOOD RENT CONTROL:** Buyer is aware that the Property may be subject to a Rent Stabilization Ordinance. Information regarding the impact of such an ordinance on the property, including, but not limited to, relocation fees and ability to evict tenants, registration of units and compliance with the Ordinance may be obtained from: Los Angeles City Rent Stabilization Board, (213) 367-9909, City of West Hollywood Rent Stabilization Board, (323) 848-6450, City of Santa Monica Rent Control Board, (310) 458-8751, Beverly Hills Rent Stabilization Board, (310) 285-1031.

10. **MOUNTAIN GATE / BEL-AIR CREST:** Buyer acknowledges that properties located in these areas are known to have methane gas, subject to the Los Angeles Methane Gas Ordinance. Buyer is advised to contact the homeowners association of each development for more specific and accurate information regarding this condition.

11. **HISTORICAL PRESERVATION OVERLAY ZONES (HPOZ) / SPECIFIC PLAN AREAS:** Properties located in designated HPOZ districts in the City of Los Angeles and/or Specific Plan Areas of the City of Los Angeles may be subject to HPOZ and/or Specific Plan Area ordinances. Buyer is strongly advised to investigate whether the property is in a HPOZ district or subject to Specific Plan when considering future development of the Property.

12. **HISTORICAL CONSERVANCY:** Properties located in Beverly Hills, Santa Monica, Los Angeles and surrounding communities may be subject to a historical preservation ordinance, designated as a historical landmark or be located in a protected historical conservancy area which could limit or restrict Buyer's ability to demolish, remodel or develop the property. Buyer is strongly advised to investigate whether the property is subject to any restrictions or encumbrances, prior to removing inspection contingencies in the purchase agreement.

13. **BRUSH CLEARANCE:** Property owners are responsible for keeping the brush on their property cleared in accordance with Fire Department regulations. If the property owner does not clear the brush prior to the deadline (usually May or June) the City or County Weed Abatement Department will clear it after the deadline and lien the property. If Seller owns the property after it is cleared by Weed Abatement, Seller will be held responsible for paying the Weed Abatement lien. Buyers and Sellers should ascertain lien status from the Weed Abatement Department.

14. **LOCAL AREA DISCLOSURES**: The following local disclosures or addenda are attached:

    ☐  Malibu/Topanga Disclosure Addendum
    ☐  San Fernando Valley Disclosure Addendum (SRAR)
    ☐  Other: _____

## ELECTRONIC SIGNATURES

Buyers and Sellers may be able to sign transaction documents electronically making it possible to skip from one signature line to the next and thus it is easier to ignore the terms and conditions to which a signature or initial applies. If Buyers and Sellers choose to sign documents electronically, they must be certain to take the time necessary to read each document thoroughly and only sign or initial those documents with full knowledge and consent of that which they intend to sign.

## WIRE FRAUD SCAM ALERT

Recently there is a small but growing scheme in which Buyers and Sellers have received e-mails from their agent or an escrow company providing wire transfer information for money from Buyers to Escrow, or to Seller for proceeds from Escrow. Hackers intercept these emails and then alter the wire transfer instructions to redirect the funds to the hacker's account with an off-shore bank. **DO NOT EVER WIRE FUNDS PRIOR TO CALLING THE ESCROW OFFICER AT THE NUMBER PREVIOUSLY PROVIDED TO YOU** and confirming verbal wire transfer instructions before taking steps to have the funds transferred. If you have received questionable wiring instructions, notify your bank, real estate agent and the Escrow Holder, as well as the FBI at: https://www.fbi.gov/ and the Internet Crime Complaint Center at: http://www.ic3.gov/

**In these and all other matters referred to in this addendum, Buyer is specifically advised to investigate and evaluate each and all of the matters described above, during the contingency time periods provided for in the Purchase Agreement. Buyer and Seller are advised to seek any desired assistance from appropriate qualified professionals.**

THE UNDERSIGNED ACCEPT AND ACKNOWLEDGE RECEIPT OF ALL SIX (6) PAGES OF THE DOCUMENT.

_____        12/22/2020
Seller's Signature                     Date

_____        _____
Seller's Signature                     Date

_____        _____
Buyer's Signature                      Date

_____        _____
Buyer's Signature                      Date

Form HHDA Rev. 4.30.2017

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

David M. Goodrich, the duly appointed and acting Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of  OS Susnet LLC ("Debtor"), the debtor in the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Case No. 2:20-bk-16399-BR, and Hilton & Hyland ("Broker"), enter into this Addendum of the real property located at 12125 W. Sunset Blvd., Los Angeles, California 90049, APN 4402-022-012 ("Property").

1.    Addendum.  This Addendum amends certain terms and conditions in the Listing Agreement.  Notwithstanding any contrary terms and conditions in the Listing Agreement, the terms and conditions set forth in this Addendum shall apply.

2.    Bankruptcy Court Approval.  The Trustee shall not be under any obligation to perform under the Listing Agreement or this Addendum until and unless the Bankruptcy Court has approved the employment of the Broker and the terms of the Listing Agreement and the Addendum.

3.    Commission.  The total commission paid to the Broker and the successful buyer's broker shall be 5%.

4.    No Liability.  The Trustee is listing the Property for sale with the Broker in his capacity as the Chapter 7 Trustee of the Estate, and not in his personal capacity, and no liability or obligations shall accrue to him personally as a result of such listing.

5.    Termination.  The Trustee may terminate the Listing Agreement at his option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in his capacity as Trustee, as a result of any such termination.

6.    Abandonment.  The Trustee reserves the right, in his sole discretion, to determine not to sell the Property and to abandon the Property.  In the event of any such abandonment, the Listing Agreement and this Addendum shall terminate and no liability or obligations shall accrue to the Estate or to the Trustee, either personally or in his capacity as Trustee, as a result of any such abandonment and termination.

7.    Conditions of Sale.  The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

a.    The Trustee is selling the Property in his capacity, as the Chapter 7 Trustee of the Estate, and not in his personal capacity, and no liability or obligations shall accrue to him personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.      The Trustee is selling the Property on an "AS IS" condition or basis by quitclaim or bankruptcy trustee's deed without any representations or warranties whatsoever, express or implied, including, without limitation, representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with California, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdivisibility of the Property.

d.      The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, all creditors, the United States Trustee, and other parties in interest, as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.      The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property.  The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

f.      The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

g.      All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

h.      The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law.  The Trustee is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

i.      The purchaser shall, at purchaser's sole expense, obtain all pest control inspections and repairs that purchaser deems appropriate.

j.      If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

k.      Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)      The Trustee must prevail with respect to any objections to the proposed sale; and

(2)      All sales are subject to overbid unless the Bankruptcy Court orders otherwise, and

(3)      The Trustee reserves the right to reject any and all offers which in his judgment are insufficient; and

(4)      The Bankruptcy Court must approve the sale.

l.      The Property is being sold subject to:

(1)     All general and special taxes that are presently due, or may become due, regarding the Property, other than real property taxes, which shall be prorated as of the close of escrow;

(2)     The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the California Revenue and Taxation Code; and

(3)     Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.  Title, however, is to be transferred free and clear of secured claims of record.

8.      <u>Payment of Commission</u>. The commissions to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.  If a sale is not consummated for any or no reason whatsoever, the Broker shall not be entitled to a commission. The Broker's commission may only be paid after the Bankruptcy Court approve the payment of the Broker's commission.

9.      <u>Entire Agreement</u>. This Addendum and the Listing Agreement, to the extent that such Listing Agreement is not contrary to the terms and conditions herein, constitute the entire contract between the parties.  All prior agreements between the parties are incorporated into this contract.  Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this agreement constitutes the complete, final and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this agreement.

10.     <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court shall have exclusive jurisdiction to resolve any and all disputes relating to the Listing Agreement and this Addendum.

DATED: December 23, 2020

/s/ David M. Goodrich
David M. Goodrich
Chapter 7 Trustee of the Bankruptcy Estate of
OS Susnet LLC

DATED: December 23, 2020            Hilton & Hyland

DocuSigned by:
*Jeff Hyland*            12/23/20
F2C431938EF34ED...

DocuSigned by:
*Lisa Optican*
4F683D5C85A6401...      12/23/20
Lisa Optican

DocuSign Envelope ID: D9339EE8-A785-4662-94B0-441C6A9605FE

# HILTON & HYLAND

## AFFILIATED BUSINESS DISCLOSURE ADDENDUM

We appreciate that you have selected Hilton & Hyland Real Estate, Inc., a California corporation (*"Hilton & Hyland"*) to assist in the purchase or sale of your home or other real estate matter.  It is our privilege to provide you with professional real estate brokerage services.

This is to give you notice that Hilton & Hyland has a business relationship with Secured Escrow, Inc. (*"Company"*), a settlement service provider.

Because of this business relationship, this referral may provide Hilton & Hyland a financial or other benefit from your use of the Company's services.  The following chart sets forth the description of the services provided by the Company, along with the estimated charge or range of charges. You are NOT required to use the listed provider as a condition for the transaction concerning the property.

**THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

| COMPANY | SERVICES | HUD-1 DESCRIPTION / LINE DESIGNATION | ESTIMATE OF RANGE OF CHARGES GENERALLY MADE BY PROVIDER |
|---|---|---|---|
| Secured Escrow, Inc. Owned by: Arte Canon Drive, LLC. (owned by Hilton & Hyland, Inc.), FNF Escrow Holdings, LLC and Hyland Real Estate, Inc. holding a majority interest. | Provides Escrow Settlement services in all details of transacting your matter according to your real estate contract. | Escrow Fees for Purchase and Sale (Line 1101), Escrow Fees for Loan (Line 1101), Document preparation fees (Line 1105). | Escrow fees are typically calculated with a $150.00 to $600.00 base fee per side plus $1.50 to $2.25 per $1,000.00 of sales price. Mortgage tie-in fees are usually $1.00 per thousand and document fees run from $200.00 to $1,200.00. |

I/we have read this disclosure form, and understand that Hilton & Hyland is referring me/us to purchase the above described settlement services and may receive a financial or other benefit as the result of this referral.

_____    12/22/2020
Seller's Signature                               Date

_____    _____
Seller's Signature                               Date

_____    _____
Buyer's Signature                               Date

_____    _____
Buyer's Signature                               Date

Form HHABA Rev. 8.20.2017

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

650 Town Center Drive, Suite 600, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): APPLICATION BY CHAPTER 7 TRUSTEE TO EMPLOY HILTON & HYLAND AS REAL ESTATE BROKER TO MARKET AND SELL REAL PROPERTY; DECLARTION OF DAVID M. GOODRICH; STATEMENT OF DISINTERESTEDNESS IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 29, 2020 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Eric Bensamochan    eric@eblawfirm.us, G63723@notify.cincompass.com

- David M Goodrich (TR)    dgoodrich@wgllp.com, c143@ecfcbis.com;dgoodrich11@ecf.axosfs.com;lrobles@wgllp.com

- Jerome Kaplan    office@3klaw.com, dskadin@3klaw.com

- Kelly M Kaufmann    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com

- Harris M Madnick    hmmadnick@kramarmadnick.com

- Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

- JaVonne M Phillips    bknotice@mccarthyholthus.com, jphillips@ecf.courtdrive.com

- Daren M Schlecter    daren@schlecterlaw.com, assistant@schlecterlaw.com

- Bryan K Theis    bryan@theislaw.com

- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

- David Wood    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

**2.  SERVED BY UNITED STATES MAIL**:
On   December 29, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

      Hilton & Hyland,
      Jeff Hyland
      257 North Canon Drive, 2nd Floor
      Beverly Hills, California 90210

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 29, 2020 | Lorraine Robles | /s/ Lorraine Robles |
| --- | --- | --- |
| Date | Printed Name | Signature |